**LAW OFFICES OF JAMES C. DEZAO, P.A.**
322 Route 46 West
Suite 120
Parsippany, New Jersey 07054
(973) 808-8900
James C. DeZao, Esq. ID 019511985
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| PHILIP READ, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | DOCKET NO: |
| | : | CIVIL ACTION |
| PAUL PROFETA; PAUL V. PROFETA | : | |
| & ASSOCIATES, RADIUS: BRICK | : | |
| CITY & BEYOND, STEVEN COLEMAN, | : | |
| and WILLIAM KOHN, | : | |
| | : | |
| Defendants(s) | : | |
| | : | |

**COMPLAINT AND JURY DEMAND**

This is an action for theft of intellectual property, fraud, and other claims related to the Defendants' conversion of the Plaintiff's ideas and work to launch a magazine that the Plaintiff brought to the Defendants and that the Defendants agreed to develop with the Plaintiff as a joint venture. The Plaintiff seeks monetary damages flowing from the Defendants' conversion of his ideas and work, together with punitive damages and specific performance.

**Parties**

1.     The Plaintiff, Philip Read ("the Plaintiff"), is a professional writer and resident of North Carolina.

2.     The Defendant, Paul Profeta ("Profeta") is, upon information and belief, a resident of Essex County, New Jersey, and a wealthy business man.

3.     The Defendant, Paul V. Profeta & Associates ("Associates"), was, at all relevant times, a business owned and/or operated by Profeta, with a principal place of business in West Orange, New Jersey.

4.     The Defendant, Radius: Brick City & Beyond ("Radius"), is, upon information and belief, a corporation created and existing in the State of New Jersey.

5.     The Defendant, Steven Coleman ("Coleman"), was, at all relevant times, the Chief Financial Officer ("CFO") of Associates and resident of New Jersey.

6.     The Defendant, William Kohn ("Kohn"), was, at all relevant times, legal counsel for Associates and resident of New Jersey.

7.     Jane Doe, Jack Doe and/or Doe Corporation 1-5 ("the Doe Defendants"), are individuals and/or entities, whose identities are presently unknown to the Plaintiff, responsible for some or all of the acts or omissions alleged herein.

**JURISDICTION AND VENUE**

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.  There is complete diversity of citizenship between the Parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.     Venue is proper in this district under 28 U.S.C. §§1391(c) and 1400(b) because the Defendant(s) is/are incorporated, reside, is/are registered to do business in, and/or engage in significant business activities in this District, and the acts complained of happened in the District.

## FACTS

10.    On or about October 31, 2010, an article written by the Plaintiff appeared in the *The Star-Ledger* of Newark titled "Stimulus Benefits Upstart Businesses Along Newark's Halsey Street" covering downtown redevelopment in Newark.

11.    As part of his work on the article, the Plaintiff interviewed Profeta, who owned and/or operated an Urban Development Institute that was providing no-interest loans to minority businesses in the area via a $1,000,000 endowment.

12.    In or about November 2010, the Plaintiff met with Profeta, at his request, at his West Orange office, to discuss another article.

13.    The Plaintiff told Profeta that he was in the midst of taking a buyout, effective Thanksgiving 2010, and had doubts about pulling the story together in short order.

14.    The Plaintiff also mentioned a vision he had for a magazine called *"The Downtowner"* that would fill a void given the circulation and coverage collapse of *The Star-Ledger*.

15.    The Plaintiff's pitch was this:  *The Star-Ledger's* diminished resources would mean that its small staff would be occupied largely on topics centered on crime in the city and push the city's reputation backward just as economic gains were starting to take hold.

16.    Profeta expressed great interest in and approval of the pitch and indicated that he would be interested in pursuing the matter.

17.    On or about December 7, 2010, the Plaintiff emailed Profeta a 2-page outline titled "The Newark Downtowner," specifying the "mission," "groundwork," "initial staffing requirements," and "recommendations."

18.    On or about December 12, 2010, Profeta emailed the Plaintiff asking for particulars on the cost of the project, noting that he had "absolutely no print experience."

19.   On or about December 15, 2010, the Plaintiff responded with cost estimates, noting a
monthly expense of $40,000 a month, covered entirely if 25 stakeholders committed to
purchasing full-page ads at below-market ad rates.

20.   On or about December 19, 2010, Profeta emailed the Plaintiff – copying Coleman –
stating, "My problem is never having run a newspaper or having any familiarity at all
with the economics.  I would not know where to start or what questions to ask."

21.   In or about 2011, without Profeta's involvement, the Plaintiff began a year-long lobbying
effort to gain advertising and other support for the *Downtowner*, finding a warm
reception given his reputation for covering redevelopment for *The Star-Ledger*.

22.   Among other things, the Plaintiff met with representatives of NJPAC; the Newark
Alliance; the Newark Regional Business Partnership; Stefan Pryor, Newark's Deputy
Mayor and the staff of the Brick City Development Corporation he headed; Gottesman
Real Estate Partners; Rutgers University; Rutgers Business School; and Ray Chamber's
Amelior Foundation.

23.   In 2011, the Plaintiff met with Frank Giantomasi ("Giantomasi") of Genova Burns &
Giantomasi, a law firm in Newark, and was warmly received because of his reporting of
the principal's fund-raising efforts.

24.   On or about August 8, 2011, at Giantomasi's urging, the Plaintiff met with Marc Berson
("Berson") of Fidelco, who told the Plaintiff that they would be "taking [the *Downtownr*]
to the next level."

25.   Thereafter, the Plaintiff met with Giantomasi several times about moving forward with
Berson.  Finally, in or about November 2011, Giantomasi told the Plaintiff that he had

been unable to get Berson to "focus" on the magazine but offered the Plaintiff his former law office and a secretary to get started.

26.   The Plaintiff told Giantomasi that the startup capital was key to proceeding. Giantomasi indicated that he might have money in the future to assist.

27.   Giantomasi encouraged the Plaintiff to go to the 1-year anniversary party of 494 Martini Bistro, a Newark restaurant, on his invitation to speak to Berson.  The Plaintiff did so.

28.   In or about 2012, the Plaintiff continued to pitch the magazine to interest groups, including Lucky VII Films.

29.   In or about July 2012, the Plaintiff emailed Profeta that it had been some time since they last spoke about the *Downtowner* and that the venture had taken some interesting turns with various high-profile stakeholders.

30.   The next day, Profeta responded that he would love to see the Plaintiff again.

31.   On or about July 18, 2012, Profeta, Coleman, Kohn and the Plaintiff all met at Associates offices about the *Downtowner*.

32.   On or about August 9, 2012, Profeta wrote to the Plaintiff regarding his prospectus for the magazine, which he wanted details on.

33.   On or about that date, the Plaintiff provided the requested details to Profeta, who recommended that he line up a firm for outsourcing advertising sales.

34.   The Plaintiff located an outsourcing firm and arranged for a meeting with Profeta.

35.   On or about September 10, 2012, Profeta emailed the Plaintiff to tell Berson and Giantomasi that he was considering funding all the startup money and wanted them to offer space and assist with advertising support – items the Plaintiff had already told Profeta were on the table from his previous contacts with Berson and Giantomasi.

36.   On or about September 27, 2012, the Plaintiff met with the outsourcing company along with Profeta, Kohn, and Coleman in West Orange.

37.   Thereafter, the Parties continued to make adjustment to the business plan, settling on six (6) issues a year and adjusting ad rates and salaries to accommodate the ad sales contract. The Plaintiff also planned for a Profeta meeting with Berson and Giantomasi.

38.   On or about October 9, 2012, the Plaintiff met with Berson, Profeta, and Giantomasi. Berson offered street-level office space for free at 494 Broad Street, Newark. Profeta ran down a list of big-name companies and stakeholders in Newark for advertising commitments, almost all of which Giantomasi reported as being "in."

39.   In or after the meeting, Profeta told the Plaintiff, *inter alia*, "Looks like you have your magazine" and acknowledged the Plaintiff's statement that he wanted to retain a minority stake in the magazine.

40.   On or about October 22, 2012, Profeta requested and the Plaintiff provided an exhaustive breakdown of what competitors in other markets charged for ads.

41.   On or about November 7, 2012, Profeta said he was of the mind to "get started" and told the Plaintiff that he should be able to tell his staff by Thanksgiving that they would be on payroll by January 1, 2013.

42.   On or about November 19, 2012, Profeta emailed an invitation to the Plaintiff to attend his "36th Annual Company Christmas Party" on December 14, 2012, in South Orange.

43.   On or about December 14, 2012, Coleman told the Plaintiff's staff members that he was looking forward to working with him.

44.     On or about December 16, 2012, the Plaintiff emailed Profeta accounts of conversations from the party, noting that they would finalize the prototype Profeta wanted to show potential advertisers and send to the printer.

45.     On or about December 17, 2012, Profeta emailed the Plaintiff that they should move forward and take their "best shot."  The Plaintiff wrapped up the prototype.

46.     On or about December 31, 2012, the Plaintiff sent the "mockup finale" to Coleman, proposing to get it to the printer as soon as possible.

47.     On or about January 16, 2013, Profeta emailed the Plaintiff concerned about deadlines he had been getting from the Plaintiff.  He asked the Plaintiff if he could wait until summer and was interested in more of a freelance attachment to the magazine.

48.     On or about January 18, 2013, Profeta emailed the Plaintiff stating that he was having a "hard time" with the business model and was not comfortable risking $500,000.

49.     The Defendants ceased all communications with the Plaintiff.

50.     In or about August 2013, to the Plaintiff's shock, Profeta published his first issue of *Radius:  Brick City & Beyond* ("Radius"), a 96-page Newark-based publication mirrored largely off the business model, contacts, and footwork the Plaintiff created and performed.

51.     On the "Founders" page, Profeta listed Genova Burns Giantomasi and Marc Webster; Marc Berson's Fedelco; Brick City Development Corp.; MCJ Amelier Foundation; and Rutgers Business School – all persons and/or entities with whom the Plaintiff had made connection for purposes of the magazine – as members.

52.     The *Radius* staff box revealed 23 persons, including Coleman and Kohn.

53.   The *Radius* offices are on Broad Street, in a Berson-owned mid-rise that Giantomasi's
      office was also in.

54.   Upon information and belief, the Defendants utilized numerous ideas and work efforts of
      the Plaintiff in assembling, creating, and marketing *Radius*, all of which were worth in
      excess of $200,000.

**Causes of Action**

Count I:
Theft of Intellectual Property

55.   The Plaintiff hereby reasserts and re-alleges the allegations in paragraphs 1 – 54.

56.   The Plaintiff shared ideas for a magazine that was not in development at that time by the
      Defendants.

57.   The Defendants represented to the Plaintiff that he would be compensated if the
      magazine were brought to fruition and/or made a joint author or owner thereof.

58.   The Defendants took ideas, work, and relationships from the Plaintiff and developed,
      marketed, and/or sold them as part and parcel of *Radius*.

59.   The Defendants had no intention of ever providing the Plaintiff compensation or credit
      for the ideas he shared with them.

60.   As a result, the Defendants have stolen the Plaintiff's intellectual property for their own
      gain.

61.   The Defendants acted in willful disregard of the Plaintiff's rights.

      **WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly and

severally, for damages, punitive damages, interests, costs, attorneys' fees, and other relief the

Court deems just and proper.

<u>Count II</u>:
Fraud

62.   The Plaintiff hereby reasserts and re-alleges the allegations in paragraphs 1 – 61.

63.   The Defendants represented to the Plaintiff, beginning in or about 2012, that they would work together with him to develop, market, and produce the *Downtowner* or a magazine modeled on it.

64.   In or about November 2010, Profeta met with the Plaintiff at his West Orange office and told the Plaintiff that he would be interested in pursuing the Plaintiff's vision for the *Downtowner*.

65.   On or about December 12, 2010, Profeta emailed the Plaintiff asking for particulars of the project under the guise that he had "absolutely no print experience."

66.   On or about December 19, 2010, in response to particulars from the Plaintiff, Profeta emailed him and Coleman claiming not to know where to start or what questions to ask on the project.

67.   In or about July 2012, Profeta emailed the Plaintiff that he would love to meet with him again about the project.

68.   On or about July 18, 2012, Profeta, Coleman, Kohn, and the Plaintiff met at Associates' offices about the project.

69.   On or about August 9, 2012, Profeta emailed the Plaintiff for details on the project's prospectus and asked that the Plaintiff line up a firm for advertising sales.

70.   On or about September 14, 2012, Profeta emailed the Plaintiff asking him to approach Berson and Giantomasi about office space and advertising support.

71.   On or about September 27, 2012, Kohn and Coleman met with the outsourcing company the Plaintiff had located.

72. On or about October 9, 2012, the Plaintiff had a conference with Profeta and Berson and Giantomasi about office space. Profeta told the Plaintiff, *inter alia*, that it looked like he had his magazine and acknowledged the Plaintiff's remarks that he wanted to retain a minority stake in any company formed.

73. On or about October 22, 2012, Profeta requested that the Plaintiff provide a breakdown of what competitors in other markets charged for ads.

74. On or about November 7, 2012, Profeta told the Plaintiff he wanted to "get started" and he should be able to tell his staff by Thanksgiving that they would be on payroll on January 1, 2013.

75. On or about December 14, 2012, Coleman told the Plaintiff's staff members in the Plaintiff's presence that he was looking forward to working with them.

76. On or about December 17, 2012, Profeta emailed the Plaintiff that they should move forward and take their "best shot."

77. On or about December 31, 2012, the Plaintiff sent the mockup finale to Coleman.

78. Each and every one of these actions or statements was taken with the intention of representing to the Plaintiff that the magazine would be a joint venture between the Parties and that the Plaintiff would be heavily involved in its development and marketing.

79. All of the Defendants' actions and/or representations were material and designed to get the Plaintiff to cooperate with them and share ideas and connections so that the Defendants could develop their own magazine without the Plaintiff's involvement.

80. The Defendants' actions and/or representations were false and known to be false at the time of their performance and/or utterance.

81.   The Plaintiff reasonably relied upon the Defendants' representations and actions as representations or manifestations of their intention to develop the magazine with him.

82.   The Defendants acted with willful disregard to the Plaintiff's rights.

83.   As a result, the Plaintiff suffered damage.

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and severally, for damages, punitive damages, interests, costs, attorneys' fees, and other relief the Court deems just and proper.

Count III:
Interference With A Prospective
Economic Advantage

84.   The Plaintiff restates and re-alleges the allegations contained in Paragraphs 1 – 83.

85.   The Defendants were aware that the Plaintiff was marketing and could continue to market his ideas and services to competitors and/or other businesses, and was in fact in pursuit of business for the magazine.

86.   The Defendants intentionally and maliciously sought to prevent the Plaintiff from marketing his ideas and services to other entities or pursuing other business.

87.   As part and parcel of such intention, the Defendants falsely represented to the Plaintiff remuneration for his efforts should he entrust his ideas and provide his services to them and to include him in the magazine.

88.   The Defendants' false representations caused loss of the Plaintiff's prospective gain of economic relations with other entities.

89.   The Defendants acted in willful disregard of the Plaintiff's rights.

90.   As a result, the Plaintiff suffered damage.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly and severally, for damages, punitive damages, interests, costs, attorneys' fees, and other relief the Court deems just and proper.

Count IV:
Promissory Estoppel

91.     Plaintiff hereby restates and re-alleges the allegations contained within Paragraphs 1 – 90.

92.     The Defendants represented to the Plaintiff that he would be compensated for sharing his ideas and providing his services.

93.     The Defendants made such representations in willful disregard of the Plaintiff's rights.

94.     Relying reasonably upon this representation, the Plaintiff provided services and ideas to the Defendants.

95.     The Defendants earned money and profits from the services and ideas.

96.     The Plaintiff was never compensated for his ideas or services, suffering damages.

97.     Injustice can be avoided only through enforcement of the Defendants' promise.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly and severally, for specific performance.

Count V:
Breach Of The Implied Covenant
Of Good Faith And Fair Dealing

98.     The Plaintiff hereby restates and re-alleges the allegations in Paragraphs 1 – 97.

99.     The Defendants breached their duty of good faith and fair dealing under the actual or implied contract they had with the Plaintiff in that they falsely represented that the Plaintiff would be compensated for his ideas and/or services.

100. The Defendants further breached the duty by interfering with the Plaintiff's ability to gain economic advantage by marketing his ideas and services to other individuals or entities.

101. The Plaintiff suffered damage as a result of the Defendants' breach of their duty of good faith, which was undertaken or occurred with malice or willful indifference to the Plaintiff's rights.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly and severally, for damages, punitive damages, interests, costs, attorneys' fees, and other relief the Court deems just and proper.

### Count VI:
### Conversion

102. Plaintiff hereby restates and re-alleges the allegations made in Paragraphs 1 –101.

103. The Defendants falsely represented to compensate the Plaintiff for his ideas and work.

104. The Defendants took and developed the Plaintiff's ideas without compensation.

105. The Plaintiff requested credit or ownership in the magazine from the Defendants, and the Defendants refused to accommodate him.

106. The Defendants acted in willful disregard of the Plaintiff's rights.

107. As a result, the Plaintiff suffered damages.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly and severally, for damages, punitive damages, interests, costs, attorneys' fees, and other relief the Court deems just and proper.

### Count VII:
### Breach Of Contract

108. The Plaintiff hereby restates and re-alleges the allegations contained within Paragraphs 1 – 107.

109. The Defendants implicitly offered partnership with and/or compensation to the Plaintiff in exchange for his services and ideas.

110. As per the agreement between the Parties, the Plaintiff provided ideas and/or services to the Defendants in full performance of his duties and obligations.

111. In breach of their obligations under the agreement, the Defendants never provided the Plaintiff with any compensation, credit, or partnership for his ideas and/or services.

112. As a proximate result of the Defendants' breach, the Plaintiff suffered injury.

113. The Defendants acted in willful disregard of the Plaintiff's rights.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly and severally, for damages, punitive damages, interests, costs, attorneys' fees, and other relief the Court deems just and proper.

Count IX:
Negligence

114. The Plaintiff hereby restates and re-alleges the allegations contained within Paragraphs 1 – 113.

115. The Defendants made representations to the Plaintiff that he would be compensated for the ideas and/or services he would perform for them and/or joined in a partnership with them.

116. The Defendants thereby entered into a business relationship with the Plaintiff.

117. As part and parcel of the relationship the Defendants entered into with the Plaintiff, they owed him the duty of exercising reasonable care in their business-related actions and representations made to him.

118. The Defendants breached their duty of reasonable care in making misrepresentations to the Plaintiff with regard to their business-related actions.

119.   As a foreseeable and proximate result of the false representations, the Plaintiff suffered

damages.

   **WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly and

severally, for damages, interests, costs, attorneys' fees, and other relief the Court deems just and

proper.

Count X:
N.J. R.I.C.O. (N.J.S.A. 2C:41-1, et seq.)

120.   The Plaintiff hereby adopts and re-alleges the allegations made in paragraphs 1 – 119.

121.   Upon information and belief, the Defendants have collectively conspired and/or agreed

amongst themselves to take ideas from individuals with promises to develop, market,

and/or sell these ideas.

122.   The Defendants have further collectively conspired and/or agreed amongst themselves to

represent to such individuals that there would be compensation for their ideas and/or

services without an intention of ever providing it.

123.   The Defendants made these same representations to the Plaintiff.

124.   The Defendants continued their pattern of lies and deception in failing to compensate the

Plaintiff for the ideas and/or services provided despite their prior representations.

125.   The Defendants' treatment of the Plaintiff was similar to their treatment of other

individuals who brought ideas to them and were not compensated and/or credited.

126.   As a result, the Defendants have demonstrated a pattern of misconduct, fraud, and

deception, which was continued in their refusal to compensate the Plaintiff for the ideas

and/or services he provided.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly and severally, for damages, punitive damages, interests, costs, attorneys' fees, treble damages and other relief the Court deems just and proper.

Count XI:
Gross Negligence

127.   The Plaintiff repeats the allegations set forth in Paragraphs 1-126.

128.   The Defendants owed the Plaintiff the duty of exercising basic reasonable care in their professional relationship with him.

129.   That duty included, *inter alia*, not making profits off the Plaintiff's ideas or services without compensating him for same.

130.   The Defendants breached that duty in developing the Plaintiff's ideas, earning monies thereon, and failing to compensate him for same.

131.   The Defendants acted in willful disregard of the Plaintiff's rights.

132.   As a result, the Plaintiff suffered foreseeable damages.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly and severally, for damages, punitive damages, interests, costs, attorneys' fees, and other relief the Court deems just and proper.

Count XII:
Unjust Enrichment

133.   The Plaintiff repeats the allegations set forth in Paragraphs 1-132.

134.   The Plaintiff provided ideas and services to the Defendants on the assurance of payment, credit, and/or partner.

135.   The Defendants benefitted and profited from such ideas and services, but refused to pay the Plaintiff for same.

136.   The Defendants would be unjustly enriched for those services and ideas absent payment to the Plaintiff.

137.   Injustice can be avoided only by the Defendants' paying the Plaintiff for his ideas and services.

138.   The Defendants acted in willful disregard of the Plaintiff's rights.

   **WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly and severally, for damages, interests, costs, attorneys' fees, and other relief the Court deems just and proper.

Count XIII:
Quantum Meruit

139.   The Plaintiff repeats the allegations made in Paragraphs 1-138.

140.   The Plaintiff provided services and ideas to the Defendants.

141.   The Plaintiff at all times did so under circumstances giving rise to a reasonable expectation of compensation for same.

142.   The Defendant utilized the Plaintiff's ideas and services without remunerating him.

143.   In an absence of an enforceable contract, the Plaintiff is entitled to quantum meruit damages for the reasonable value of his services.

   **WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly and severally, for damages, interests, costs, attorneys' fees, and other relief the Court deems just and proper.

Count XIV:
Breach Of Fiduciary Duty

144.   The Plaintiff repeats the allegations contained in Paragraphs 1-143.

145.   The Plaintiff placed trust and confidence in the Defendants.

146.    The Parties established a joint venture pursuant to which they worked toward the common goal of developing a magazine.

147.    Pursuant to their joint venture with the Plaintiff, the Defendants owed him a fiduciary duty to act in good faith.

148.    The Defendants owed the Plaintiff the duty of exercising the duties of, *inter alia*, loyalty and reasonable care and skill.

149.    The Defendants breached their fiduciary duties to the Plaintiff in, *inter alia*, profiting from and usurping the Plaintiff's ideas and refusing to make the Plaintiff whole for his work.

150.    The Defendants' actions were taken in willful disregard of the Plaintiff's rights.

151.    As a result, the Plaintiff suffered damages.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly and severally, for damages, punitive damages, interests, costs, attorneys' fees, and other relief the Court deems just and proper.

Count XV:<br>Equitable Fraud

152.    The Plaintiff hereby reasserts and re-alleges the allegations in paragraphs 1 – 151.

153.    The Defendants represented to the Plaintiff, beginning in or about 2012, that they would work together with him to develop, market, and produce the *Downtowner* or a magazine modeled on it.

154.    In or about November 2010, Profeta met with the Plaintiff at his West Orange office and told the Plaintiff that he would be interested in pursuing the Plaintiff's vision for the *Downtowner*.

155. On or about December 12, 2010, Profeta emailed the Plaintiff asking for particulars of the project under the guise that he had "absolutely no print experience."

156. On or about December 19, 2010, in response to particulars from the Plaintiff, Profeta emailed him and Coleman claiming not to know where to start or what questions to ask on the project.

157. In or about July 2012, Profeta emailed the Plaintiff that he would love to meet with him again about the project.

158. On or about July 18, 2012, Profeta, Coleman, Kohn, and the Plaintiff met at Associates' offices about the project.

159. On or about August 9, 2012, Profeta emailed the Plaintiff for details on the project's prospectus and asked that the Plaintiff line up a firm for advertising sales.

160. On or about September 14, 2012, Profeta emailed the Plaintiff asking him to approach Berson and Giantomasi about office space and advertising support.

161. On or about September 27, 2012, Kohn and Coleman met with the outsourcing company the Plaintiff had located.

162. On or about October 9, 2012, the Plaintiff had a conference with Profeta and Berson and Giantomasi about office space. Profeta told the Plaintiff, *inter alia*, that it looked like he had his magazine and acknowledged Plaintiff's statement that he wanted to retain a minority stake in the magazine.

163. On or about October 22, 2012, Profeta requested the Plaintiff provide a breakdown of what competitors in other markets charged for ads.

164. On or about November 7, 2012, Profeta said "let's get started" and told the Plaintiff that he should be able to tell his staff by Thanksgiving that they would be on payroll on January 1, 2013.

165. On or about December 14, 2012, Coleman told the Plaintiff's staff members in the Plaintiff's presence that he was looking forward to working with them.

166. On or about December 17, 2012, Profeta emailed the Plaintiff that they should move forward and take their "best shot."

167. On or about December 31, 2012, the Plaintiff sent the mockup finale to Coleman.

168. Each and every one of these actions or statements was taken with the intention of representing to the Plaintiff that the magazine would be a joint venture between the Parties and that the Plaintiff would be heavily involved in its development and marketing.

169. All of the Defendants' actions and/or representations were material and designed to get the Plaintiff to cooperate with them and share ideas and connections so that the Defendants could develop their own magazine without the Plaintiff's involvement.

170. The Defendants' actions and/or representations were false at the time of their performance and/or utterance.

171. The Plaintiff reasonably relied upon the Defendants' representations and actions as representations or manifestations of their intention to develop the magazine with him.

172. As a result, the Plaintiff suffered damage.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, jointly and severally, for damages, interests, costs, attorneys' fees, and other relief the Court deems just and proper.

Count XVIII:
Injunctive Relief

173. The Plaintiff repeats the allegations set forth in Paragraphs 1-172.

174. The Plaintiff revealed numerous confidential ideas to the Defendants on the assurances that those ideas would be developed jointly for profit.

175. Those items included, but are not limited to:

176. Those items also included development, footwork, and connections that the Plaintiff turned the Defendants on to.

177. The Plaintiff has reason to believe that the Defendants have taken strides to or will develop any or all of the above ideas.

178. Should the Defendants develop and/or market any of the above ideas, it is certain that they will give the Plaintiff no credit for their invention nor share with him the monies that they make therefrom.

179. If the Defendants do so, the Plaintiff stands to be irreparably harmed – to wit, his ideas will be stolen and claimed by the Defendants.

WHEREFORE, the Plaintiff is entitled to injunctive relief prohibiting the Defendants from developing, marketing, exploiting, or otherwise claiming ownership over the ideas that the Plaintiff shared with them that have not yet been brought to market.

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and severally, for monetary damages; injunctive relief; attorney's fees; costs of suit; equitable relief; punitive damages; and all further relief which this Court deems just and proper.

Law Offices of James C. DeZao, P.A.
Attorneys for Plaintiff

Dated: 4· 10-15                    By: _____

James C. DeZao, Esq.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury as to all issues so triable.

## NOTICE OF TRIAL COUNSEL

Please take notice that James C. DeZao, Esq. is hereby designated as Trial Counsel in the above-captioned matter for the firm of Law Offices of James C. DeZao, P.A.

Law Offices of James C. DeZao, P.A.
Attorneys for Plaintiff

Dated: 4-10-15                    By: _____
                                       James C. DeZao, Esq.

## CERTIFICATION

I, the undersigned, do hereby certify to the best of my knowledge, information and belief, that except as hereinafter indicated, the subject matter of the controversy referred to in the within pleading is not the subject of any other Cause of Action, pending in any other Court, or of a pending Arbitration Proceeding, nor is any other Cause of Action or Arbitration Proceeding contemplated;

1. OTHER ACTIONS PENDING?.............................YES ___ NO X

   A. If YES - Parties to other Pending Actions.

   B. In my opinion, the following parties should be
      joined in the within pending Cause of Action.

2. OTHER ACTIONS CONTEMPLATED?........................YES ___ NO X

   A. If YES - Parties contemplated to be joined, in
      other Causes of Action.

3. ARBITRATION PROCEEDINGS PENDING?...................YES ___ NO X
   A. If YES - Parties to Arbitration Proceedings.

   B. In my opinion, the following parties should be
      joined in the pending Arbitration Proceedings.

4. OTHER ARBITRATION PROCEEDINGS CONTEMPLATED?........YES ___ NO X
   A. If YES - Parties contemplated to be joined to
      Arbitration Proceedings.

In the event that during the pendency of the within Cause of Action, I shall become aware of any change as to any facts stated herein, I shall file an amended certification and serve a copy thereof on all other parties (or their attorneys) who have appeared in said Cause of Action.

Law Offices of James C. DeZao, P.A.
Attorneys for Plaintiff

Dated: 4-10-15

by: _____
    JAMES C. DEZAO, ESQ.