UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ | : | |
| PHILIP READ | : | Honorable Kevin McNulty, USDJ |
| | : | |
| Plaintiff, | : | Civ Action No. 2:15-cv-02637 |
| | : | |
| vs. | : | |
| | : | |
| PAUL PROFETA; PAUL V. PROFETA | : | |
| & ASSOCIATES; RADIUS: BRICK | : | |
| CITY & BEYOND; STEVEN COLEMAN;| : | Return Date:  December 7, 2015 |
| and WILLIAM KOHN | : | |
| | : | |
| Defendants. | : | **Oral Argument Requested** |
| _____ | : | |

BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT

**NAGEL RICE, LLP**
**103 Eisenhower Parkway**
**Roseland, New Jersey 07068**
**973-618-0400**
**Attorneys for Defendants**

On the Brief:
    Bruce H. Nagel, Esq.
    Bradley L. Rice, Esq.

## TABLE OF CONTENTS

PREFATORY STATEMENT................................................... 1

STATEMENT OF FACTS.................................................... 5

ARGUMENT............................................................. 8

I.  STANDARD FOR MOTION TO DISMISS PURSUANT TO
    FED. R. CIV. P. 12(B)........................................... 8

II.  THE COMPLAINT MUST BE DISMISSED BECAUSE IT
     DOES NOT PROVIDE EACH INDIVIDUAL DEFENDANT
     WITH NOTICE OF THE MATERIAL ELEMENTS OF EACH
     CLAIM ASSERTED AGAINST THEM.................................... 9

III. THE COMPLAINT MUST BE DISMISSED BECAUSE
     PLAINTIFF FAILS TO STATE A SINGLE CONGIZABLE
     CLAIM AGAINST ANY DEFENDANT................................... 11

     A.  Plaintiff's Intellectual Property Claims Fail....... 11

         1. Plaintiff's Idea Is Not Novel.................... 12

         2. Plaintiff Does Not Allege That His Idea Was
            Confidential................................... 13

         3. Defendants Did Not Convert Any Property
            Belonging to Plaintiff ........................ 14

     B.  Plaintiff Fails to State Claims For Fraud,
         Equitable Fraud, Negligence, and Promissory
         Estoppel With The Requisite Particularity
         Required Under Rule 9(b).......................... 15

     C.  Plaintiff's Contractual, Quasi-Contractual,
         and Breach of Duty Claims Fail.................... 22

         1. There Was No Express or Implicit Contract
            Between Plaintiff and Defendants .............. 22

         2. Because There Was No Contract, Defendants
            Had No Duty of Good Faith and Fair Dealing ....... 25

         3. Plaintiff's Quasi-Contractual Claims Fails ....... 26

     D.  Plaintiff's Breach of Fiduciary Duty,
         Negligence, and Gross Negligence Claims Fail........ 27

         1. Without the Existence of  Partnership,
            Plaintiff Fails to Allege the Existence
            of Any Fiduciary Duty ......................... 28

i

2. Plaintiff Negligence and Gross Negligence
   Claims Independently Fail As Plaintiff
   Does Not Allege Imposed On Defendants ............ 30

E.   Plaintiff's Claim For Interference With
     A Prospective Economic Advantage Fails.............. 31

F.   Plaintiff's RICO Claim Fails........................ 33

G.   Plaintiff Is Not Entitled to Injunctive Relief...... 37

CONCLUSION................................................... 39

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

Amer. Fire & Casualty Insurance Co. et al. v. Manzo et al.,
     347 N.J.Super. 100, 788 A.2d 925 (2002) .................... 24

Anderson v. Modica,
     4 N.J. 383, 391-92 (1950) ................................. 19

Angers v. Pennymac Loan Servs., LLC,
     2014 WL 6668001 (D.N.J. Nov. 24, 2014) ................... 17

Arcand v. Brother Int'l Corp.,
     673 F. Supp. 2d 282 (D.N.J. 2009) ......................... 20

Ashcroft v. Iqbal,
     556 U.S. 662 (2009) ........................................ 8

Baldasarre v. Butler,
     254 N.J.Super. 502 (App. Div. 1992) ....................... 30

Baldassare v. Butler,
     254 N.J. Super. 502 (App. Div. 1992) ...................... 17

Barrows v. Chase Manhattan Mortg. Corp.,
     465 F. Supp. 2d 347 (D.N.J. 2006) ......................... 36

Bell Atl. Corp. v. Twombly,
     550 U.S. 544 (2007) ..................................... 5, 8

Berman v. Gurwicz,
     458 A.2d 1311 (N.J. Super. Ct. Ch. Div. 1981) ............. 28

Burnham v. WMC Mortg. Corp.,
     2010 WL 2560657 (D.N.J. June 21, 2010) .................... 30

Cal. Pub. Employees Ret. Sys. v. Chubb Corp.,
     394 F.3d 126 (3d Cir. 2004) ............................... 16

Capano v. Borough of Stone Harbor,
     530 F. Supp. 1254\ (D.N.J. 1982) .......................... 18

Cooper Distrib. Co, Inc. v. Amana Refrigeration,
     63 F.3d 262 (3d Cir. 1995) ................................ 31

Del Sontro v. Cendant Corp.,
     223 F. Supp. 2d 563 (D.N.J. 2002) ......................... 21

Dover Shopping Center, Inc. v. Cushman's Sons, Inc.,
   73 N.J. Super 384 (App. Div. 1960) ......................... 18

Duffy v. Charles Schwab & Co.,
   123 F. Supp. 2d 802 (D.N.J. 2000) ..................... 12, 13

Eagan v. Gory,
   2009 WL 483851 (D.N.J. Feb. 24, 2009) ..................... 24

eBay Inc. v. MercExchange, L.L.C.,
   547 U.S. 388 (2006) ....................................... 38

Evancho v. Fisher,
   423 F.3d 347 (3d Cir.2005) ................................. 8

Fenwick v. Unemployment Comp. Comm'n,
   133 N.J.L. 295, 44 A.2d 172 (1945) .................... 23, 24

Flemming v. Ronson Corp.,
   107 N.J. Super. 311, 258 A.2d 153
   (N.J. Super. Ch. Div. 1969) ............................... 11

Frank's GMC Truck Ctr. Inc., v. General Motors Corp.,
   847 F.2d 100 (3d Cir. 1988) ............................... 38

Frederico v. Home Depot,
   507 F.3d 188 (3d Cir.2007) ............................ 15, 16

Galicki v. New Jersey,
   2015 WL 3970297 (D.N.J. June 29, 2015) .................... 9

Goodman v. Goldman, Sachs & Co.,
   2010 WL 5186180 (D.N.J. Dec. 14, 2010) ............... 17, 31

Green v. Green Mountain Coffee Roasters, Inc.,
   279 F.R.D. 275 (D.N.J. 2011) .............................. 26

GSC Partners CDO Fund v. Washington,
   368 F.3d 228 (3d Cir. 2004) ............................... 19

Heim v. Shore,
   56 N.J. Super. 62, 151 A.2d 556 (App.Div. 1959) ........... 22

Hills v. Bank of Am.,
   2014 WL 4113131 (D.N.J. June 30, 2014) ................... 20

In re Prudential Ins. Co. of Am. Sale Practices Litig.,
   975 F.Supp. 584 (D.N.J. 1996) ............................. 17

In re Schering-Plough Corp. Intron/Temodar
    Consumer Class Action,
    2009 WL 2043604 (D.N.J. July 10, 2009) ..................... 16

Iwanowa v. Ford Motor Co.,
    67 F. Supp. 2d 424 (D.N.J. 1999) ........................... 27

Jewish Ctr. of Sussex Cnty. v. Whale,
    86 N.J. 619, 432 A.2d 521 (1981) .......................... 16

Johnson & Johnson,
    11 N.J. 526, 95 A.2d 391 (1953) ........................... 23

Johnson v. Benjamin Moore & Co.,
    347 N.J. Super. 71, 788 A.2d 906 (App. Div. 2002) .......... 12

Kennedy Funding, Inc. v. Lion's Gate Dev., LLC,
    2006 WL 1044807 (D.N.J. Apr. 18, 2006) .................... 35

Labus v. Navistar International Transportation Corp.,
    740 F.Supp. 1053 (D.N.J. 1990) ............................ 32

Lightning Lube, Inc. v. Witco Corp.,
    4 F.3d 1153 (3d Cir. 1993) ................................ 32

MacDougall v. Weichert,
    144 N.J. 380 (1996) ....................................... 32

Maertin v. Armstrong World Indus., Inc.,
    241 F. Supp. 2d 434 (D.N.J. 2002) ......................... 28

Mina Inv. Holdings Ltd. v. Lefkowitz,
    51 F. Supp. 2d 486 (S.D.N.Y. 1999) ........................ 27

N.J. Econ. Dev. Auth. v. Pavonia Restaurant, Inc.,
    319 N.J. Super. 435 (App. Div. 1998) ...................... 30

Naporano Iron & Metal Co. v. Am. Crane Corp.,
    79 F. Supp. 2d 494 (D.N.J. 1999) .......................... 10

New Jersey Carpenters Health Fund v. Philip Morris, Inc.,
    17 F. Supp. 2d 324 (D.N.J. 1998) .......................... 27

Paley v. Barton Sav. & Loan Ass'n,
    82 N.J. Super. 75, 196 A.2d 682 (App.Div. 1964) ........... 29

Peloro v. United States,
    488 F.3d 163 (3d Cir.2007) ................................ 15

Phillips v. County of Allegheny,
   515 F.3d 224 (3d Cir.2008) ................................. 8

Presten v. Sailer,
   225 N.J. Super. 178, 542 A.2d 7 (App. Div. 1988) .......... 24

Printing Mart-Morristown v. Sharp Electronics Corp.,
   116 N.J. 739 (1989) ....................................... 31

Ross v. Celtron Int'l, Inc.,
   494 F. Supp. 2d 288 (D.N.J. 2007) ......................... 34

Scholes Elec. & Communs. v. Fraser,
   2006 WL 1644920 (D.N.J. June 14, 2006) .................... 15

Starkey, Kelly, Blaney & White v. Estate of Nicolaysen,
   172 N.J. 60, 796 A.2d 238 (2002) .......................... 26

State v. Ball,
   141 N.J. 142 (1995) ....................................... 37

Stolba v. Wells Fargo & Co.,
   2011 WL 3444078 (D.N.J. Aug. 8, 2011) ................. 19, 21

Suarez v. E. Int'l Coll.,
   428 N.J.Super. 10 (App.Div.2012) .......................... 16

TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC,
   2014 WL 3853900, at *3 (D.N.J. Aug. 5, 2014) .......... 25, 26

UBI Telecom Inc. v. KDDI Am., Inc.,
   2014 WL 2965705 (D.N.J. June 30, 2014) .................... 28

Vent v. Mars Snackfood US, LLC,
   611 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) .................. 13

Wade v. Amanda Rinkleur & Assoc., Inc.,
   2006 WL 709607 (App. Div. Mar. 17, 2006) ................. 34

West Caldwell v. Caldwell,
   26 N.J. 9, 138 A.2d 402 (1958) ........................... 22

Wingate Inns, Int'l, Inc. v. High Tech Inn.com, LLC,
   2009 WL 5216978 (D.N.J. Dec. 29, 2009) ................ 28, 29

Winslow v. Corporate Exp., Inc.,
   364 N.J. Super. 128 (App. Div. 2003) ..................... 36

**STATUTES**

N.J.S.A. 2C:41-1(a)(1)(o)...................................... 36

N.J.S.A. 2C:41-1(d)........................................... 36

N.J.S.A. 2C:41-2(b)-(c)....................................... 34

N.J.S.A. 2C:41-2, 2C:41-1(c)-(d).............................. 34

**PREFATORY STATEMENT**

Defendants Paul Profeta ("Profeta"), Paul V. Profeta & Associates ("Associates"), Radius: Brick City & Beyond ("Radius"), Steven Coleman ("Coleman"), and William Kohn ("Kohn") (collectively the "Defendants"), respectfully submit this brief in support of their motion to dismiss the complaint filed by Philip Read ("Plaintiff") on or about April 14, 2015 (the "Complaint").

Plaintiff takes a kitchen sink approach in his Complaint, asserting *fifteen* claims against five Defendants. But even under the most liberal pleading standard, Plaintiff completely fails to assert a single viable cause of action against any Defendants.

The gist of the Complaint is that after two years of unsuccessful attempts to pitch to others an idea for a Newark-focused magazine, Plaintiff brought his idea to Profeta. Through a series of discussions and meetings, Plaintiff sought an investment and operational support from the Defendants. After conducting due diligence, including reviewing Plaintiff's business plans and advertising strategy, Profeta declined to invest in Plaintiff's venture as Plaintiff's pitched magazine was not economically or operationally feasible. Subsequently, Profeta, Kohn and, Coleman launched an independent periodical of their own, "Radius."

1

Plaintiff asserts that the Defendants publication of Radius violated his rights, but the Complaint – 179 meandering, conjecture-filled, and conclusory-ridden paragraphs – suffers from two fatal flaws, either of which require dismissal. First, Plaintiff improperly asserts grouped allegations against the Defendants collectively. Indeed, almost all of Plaintiff's allegations and every claim aver acts committed by the "Defendants," without separately pleading which Defendant allegedly performed the acts described. This form of collective pleading fails inform the individual Defendants and the Court which paragraphs support which allegations against which defendant within each particular cause of action. As such, the Court should dismiss the Complaint in its entirety.

Second, while Plaintiff's claims are numerous and verbose, they can be broken down into five categories: Plaintiff alleges that Defendants (i) misappropriated and converted Plaintiff's idea for a Newark-focused periodical; (ii) made material misrepresentations, false statements, or promises to Plaintiff; (iii) breached a purported contract with Plaintiff or alternatively were unjustly enriched and improperly withheld compensation due and owing to Plaintiff; (iv) breached a fiduciary duty or duty of disclosure owed to Plaintiff; and (iv) interfered with and conspired to deprive Plaintiff of economic opportunities.

As set forth herein, each claim asserted by Plaintiff is legally deficient and cannot survive a motion to dismiss.

First, Plaintiff's "idea" is not entitled to legal protection. Plaintiff's idea is not novel nor did Plaintiff take any measures to maintain the confidentiality of this idea. Thus, Plaintiff cannot demonstrate that any intellectual property was misappropriated or converted.

Second, Plaintiff alleges that the Defendants made a number of misrepresentations, false statements, and promises that were not kept. However, Plaintiff does not allege these fraud-based claims with the particularity required by Fed R. Civ. P. 9(b). Aside from conclusory allegations that the Defendants representations were "material," "false and known to be false", and that Plaintiff "reasonably relied" on such representations, the only statements Plaintiff alleges in support of its fraud-based claims are non-actionable conditional statements concerning the Defendants' potential interest in his idea and future commitments to work with Plaintiff. Such conditional or future statements cannot form the basis of a fraud, negligence, or promissory estoppel claims.

Third, despite the purportedly fulsome recitation of Plaintiff's pitch to Profeta, Plaintiff does not allege that he and Profeta (or any Defendant) entered into a final and binding agreement, whether written or oral, or even had any substantive

discussion concerning the form of such a venture, including the value of Plaintiff's compensation.

Fourth, Plaintiff's claims that Defendants owed him a fiduciary duty or were negligent based on a purported duty of disclosure fail because the Complaint does not plead the existence of any duty, fiduciary or otherwise, that could impose any liability on Defendants.

Fifth, Plaintiff's claims for inference with prospective economic advantage and a violation of New Jersey's RICO statute fail because Plaintiff has failed to allege any facts stating how Defendants prevented Plaintiff from marketing his ideas when Plaintiff himself pleads that he shopped his idea freely for two years. Plaintiff also fails to allege which Defendant acted with malice, or what actual economic opportunity Plaintiff lost as a result of the Defendants' allegedly wrongful conduct. In addition, Plaintiff's New Jersey RICO claim is not only improper for business disputes such as this, but Plaintiff does not even attempt to allege any means by which the alleged racketeering conspiracy took form.

Accordingly, Plaintiff's Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS[1]

Defendant Profeta is a business man who owns and operates Associates.  Complaint.  ¶¶ 2-3.  Coleman is Associates' Chief Financial Officer and Kohn is legal counsel for Associates. Complaint.  ¶¶ 5-6 Radius is a New Jersey Corporation. Complaint. ¶ 4.

Plaintiff alleges that he first met Profeta in or about October 2010 for an article in the Star Ledger. Complaint ¶ 10. In November 2010, Plaintiff met with Profeta about an idea for Newark-focused periodical, called the "Downtowner".  Complaint ¶¶ 11, 14-15, 64, 154.  According to Plaintiff, Profeta expressed interest in Plaintiff's idea and between December 7, 2010 and December 19, 2010, Plaintiff provided Profeta with initial cost estimates for running the publication because Profeta had no experience in the newspaper business.  Complaint ¶¶ 16-20, 65-66, 155-56.

Plaintiff's discussion with Profeta did not advance any further in 2010 and throughout 2011, Plaintiff lobbied other potential investors pitching his "Downtowner" idea, Complaint ¶¶

---

[1] The facts relevant to this motion are derived from the Complaint and other documents and/or statutory provisions referenced herein. While Defendants do not admit the truth of the matters asserted in the Complaint, for the purposes of this Motion, all well-pleaded factual allegations derived from the Complaint are accepted as true.  See infra at Point I; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572 (2007).

21-24.  By July 2012, Plaintiff still did not have any backing so Plaintiff again reached out to Profeta and later attended meeting between Plaintiff and Defendants Profeta, Coleman, and Kohn at Associates to discuss the "Downtowner."  Complaint ¶¶ 29-31, 67-68, 15-58.

Following this meeting, Profeta allegedly requested additional information about the magazine, including potential advertising sales, which Plaintiff provided, while Profeta looked for office space and advertising commitments.  Complaint ¶¶ 32-35, 159-60.  The parties continued their discussions throughout September and October 2012, and Plaintiff continued to adjust his business plan to respond to Defendants' concerns regarding advertising.  Complaint ¶¶ 36-38, 40, 71, 73, 161-63.

Plaintiff alleges that at during or after an October 9, 2012 meeting, Profeta told Plaintiff that it "[l]ooks like you have your magazine" and allegedly "acknowledged the Plaintiff's statement that he wanted to retain a minority stake in the magazine."  Complaint ¶¶ 39, 72, 162.  And, in November and December 2012, Plaintiff alleges that Profeta stated that he was ready to "get started," that the staff could be on payroll by January 2013, and it was time to take their best shot," while Coleman told the Plaintiff's "staff members that he was looking forward to working with them."  Complaint ¶¶ 41, 43, 45, 74-76, 164-66.  Accordingly, Plaintiff alleges that on or about December

31, 2013, he sent Coleman a final mockup of the proposed periodical.  Complaint ¶ 77, 167.

On January 16, 2013, Profeta emailed Plaintiff expressing concerns that Plaintiff's proposed deadlines were too aggressive and at this time Profeta was uncomfortable providing Plaintiff with $500,000 to fund the "Downtowner." Complaint ¶¶ 47-48.  This was allegedly the last communication between Plaintiff and Defendants.  Complaint ¶ 49.

Plaintiff alleges that in or about August 2013, he learned that Defendants published Radius, which he alleges mirrored the "Downtowner," utilized many of the Newark-stakeholders with whom Plaintiff had previous pitched, and employed Coleman and Kahn. Complaint ¶¶ 50-53.  Plaintiff alleges that the Defendants' publication of Radius caused Plaintiff damages in excess of $200,000.  Complaint ¶ 54.

Plaintiff makes no allegations that any contract was agreed to by Defendants or that any non-disclosure agreement was executed.

**ARGUMENT**

**I.     STANDARD FOR MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)**

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable" to the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir.2008); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 572 (2007) (2007). "However, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir.2005). A complaint survives a Rule 12(b)(6) motion to dismiss if it states a claim to relief that is "plausible on its face" regarding plaintiff's entitlement to the relief sought. Twombly, 550 U.S. at 572. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (citing Twombly, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." Id. at 678.

II.     **THE COMPLAINT MUST BE DISMISSED BECAUSE IT DOES NOT PROVIDE EACH INDIVIDUAL DEFENDANT WITH NOTICE OF THE MATERIAL ELEMENTS OF EACH CLAIM ASSERTED AGAINST THEM**

Where a complaint asserts claims against multiple defendants, Rule 8(a) requires that the complaint put each individual defendant on notice as to what alleged wrongdoing that defendant committed. See Galicki v. New Jersey, 2015 WL 3970297, at *3 (D.N.J. June 29, 2015)(dismissing § 1987 claim because "the Court agrees with Defendants and finds that Plaintiffs fail to differentiate their § 1983 claims against the various Defendants … Instead, Plaintiffs simply lump all Defendants together, failing to put Defendants on notice of their own alleged wrongdoing.").

Here, every claim asserted by Plaintiff is asserted collectively against the "Defendants." For example, Plaintiff's Count I (Theft of Intellectual Property) alleges that "the Defendants have stolen the Plaintiff's intellectual property for their own gain." Complaint ¶¶ 57-61.

This type of collective pleading is impermissible as a matter of law because Plaintiff fails to put each individual Defendant on notice as to what alleged wrongful conduct he or it committed. For example, with respect to defendant Associates, Plaintiff makes no attempt to allege how this company is liable for any of the fifteen claims asserted where Plaintiff alleges only that Associates hosted a single meeting in July 2012. Complaint ¶ 31.

Although two claims (which allege virtually identical allegations) identify statements made by two individual Defendants (see Count II (Fraud), Complaint ¶¶ 64-77; Count XV (Equitable Fraud), Complaint ¶¶ 154-167), the relief sought by Plaintiff is sought against the Defendants collectively. Since both of these claims alleged fraud, however, "'Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'.' A plaintiff must plead fraud with particularity with respect to each defendant, thereby informing each defendant of the nature of its alleged participation in the fraud." Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 511 (D.N.J. 1999) (citing Eli Lilly & Co. v. Roussel Corp., 23 F.Supp.2d 60, 492 (D.N.J. 1998) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993))).

Both fraud claims (Claims II and XV) attribute all alleged misstatements to the Defendants collectively. Aside from Plaintiff's lengthy chronology delineating the efforts Plaintiff took to pitch Profeta on the "Downtowner", and Profeta's purported interest in Plaintiff's idea, Plaintiff alleges that (i) "[a]ll of the Defendants' actions and/or representations were material and designed to get Plaintiff cooperate with them and share ideas and connections …"; (ii) [t]he Defendants actions and/or misrepresentations were false and known to be false …"; (iii) "Plaintiff reasonably relied upon the Defendants' representations

and actions …"; and (iv) "Defendants acted with willful disregard of Plaintiff's rights." Complaint ¶¶ 79-82; 169-71. This type of collective pleading, however, does not satisfy the particularized pleading requirements of Rule 9(b). It is impossible to even attempt to divine which Defendants allegedly did what wrong.

Accordingly, not one of Plaintiff's claims against the "Defendants" satisfies either Rule 8(a) or 9(b) and thus, the Complaint should be dismissed in its entirety.

III.    **THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A SINGLE CONGIZABLE CLAIM AGAINST ANY DEFENDANT**

A.    **Plaintiff's Intellectual Property Claims Fail**

"An idea, as distinguished from the copyrighted contents of a book or a patented device or process, is accorded no protection in the law unless it is acquired and used in such circumstances that the law will imply a contractual or fiduciary relationship between the parties." Flemming v. Ronson Corp., 107 N.J. Super. 311, 315, 258 A.2d 153, 156 (Ch. Div. 1969) aff'd sub nom. Flemming v. Ronson Corp., 114 N.J. Super. 221, 275 A.2d 759 (App. Div. 1971).

In order to establish that an "idea" is entitled to any legal protection, "[a] plaintiff is required to establish as a prerequisite to relief that (1) the idea was novel; (2) it was made in confidence, and (3) it was adopted and made use of." Johnson v. Benjamin Moore & Co., 347 N.J. Super. 71, 84, 788 A.2d

906, 914 (App. Div.) <u>certification granted, cause remanded,</u> 172 N.J. 176, 796 A.2d 893 (2002).

Here, Plaintiff's claims for theft of intellectual property and conversion (Counts I and VI) allege, in conclusory fashion, that the Defendants "took ideas, work, and relationships … [and] stole[] Plaintiff's intellectual property" (Complaint ¶¶ 58, 60) and "took and developed the Plaintiff's ideas without compensation" (Complaint ¶ 104). As set forth below, however, Plaintiff's claims for theft of intellectual property and conversion cannot survive a motion to dismiss because Plaintiff's idea is not property entitled to legal protection.

*1.   Plaintiff's Idea Is Not Novel*

"[A]lthough some of the factors relevant to a determination of novelty may be factual, the ultimate determination of whether an idea is novel is a question of law for the court." <u>Duffy v. Charles Schwab & Co.</u>, 123 F. Supp. 2d 802, 809 (D.N.J. 2000).

"[T]o qualify as a novel idea worthy of protection, an idea must demonstrate innovation, originality, or invention. An idea will not satisfy this requirement if it is not significantly different from, or is an obvious adaptation or combination of, ideas in the public domain." <u>Duffy</u>, 123 F. Supp. 2d at 810.[2]

---

[2] Factors relevant to a determination of novelty might include, but are not limited to the following: (1) the idea's specificity or generality (is it a generic concept or one of specific application?), (2) the idea's commonality (how many people know of

Plaintiff's idea is not novel and Plaintiff does not even allege as much.  The Complaint admits that Plaintiff took his idea from his former employer, the Star Ledger, when it would no longer report on Newark-focused stories. (Complaint ¶¶ 14-15). Moreover, almost every city, including Newark, has a dedicated magazine. For example, both "Newark Bound" (www.newarkbound.com) and New Jersey Monthly Magazine (www.njmonthly.com) provide detailed coverage of Newark events.

### 2.   *Plaintiff Does Not Allege That His Idea Was Confidential*

An idea will afforded legal protection only where it was shared in confidence.  See, e.g., Vent v. Mars Snackfood US, LLC, 611 F. Supp. 2d 333, 339 (S.D.N.Y.) aff'd, 350 F. App'x 533 (2d Cir. 2009) ("Although Ms. Vent claims that she presented her idea to O'Donnell in confidence, the Amended Complaint does not assert that she told O'Donnell that the idea was being shared in confidence or that she otherwise indicated to Mars the confidential nature of her idea.").

---

this idea?), (3) the idea's originality (how different is this idea from generally known ideas?), (4) the idea's commercial availability (how widespread is the idea's use in the industry?), (5) the idea's obviousness (was the idea an obvious adaptation or application of an idea already in the domain of public knowledge?), and (6) the idea's secrecy (did an otherwise novel idea lose its novelty status because of inadequate steps taken to maintain the idea's secrecy?).  Duffy, 123 F. Supp. 2d at 810.

Even if Plaintiff's idea was novel (which it is not) Plaintiff still could not prevail on his claims for theft of intellectual property and conversion because Plaintiff's idea was not kept confidential.  Plaintiff admits that "[i]n or about 2011 … [he] began a year-long lobbying effort" and discussed his idea "with representatives of NJPAC; the Newark Alliance; the Newark Regional Business Partnership; Stefan Pryor, Newark's Deputy Mayor and the staff of the Brick City Development Corporation he headed; Gottesman Real Estate Partners; Rutgers University; Rutgers Business School; Ray Chamber's Amerlior Foundation;" Frank Giantomasi; Marc Berson; and LuckyVII films. (Complaint ¶¶ 21-24, 28).

The Complaint does not contain a single allegation that Plaintiff took any precaution whatsoever to protect his idea. Plaintiff does not allege that he asked any of the dozen or more people he met with to sign a confidentiality or non-disclosure agreement or that he told these individuals and entities that his "idea" was confidential.

### 3. *Defendants Did Not Convert Any Property Belonging to Plaintiff*

Under New Jersey law, "[c]onversion is essentially the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property." Peloro v. United States, 488 F.3d 163, 173-74 (3d

Cir.2007)(quotation omitted). When non-tangible property such as intellectual property is the subject of a conversion claim, "New Jersey courts require that a plaintiff show something more than a contractual obligation on the part of a defendant to pay the plaintiff to establish conversion." Scholes Elec. & Communs. v. Fraser, 2006 WL 1644920, at * 5 (D.N.J. June 14, 2006) (citing Advanced Enterprises Recycling, Inc. v. Bercaw, 376 N.J. Super. 153, 869 A.2d 468, 472 (App.Div.2005)).

Here, because Plaintiff's idea cannot be considered protectable intellectual property, there is no "property" to be converted.

**B.   Plaintiff Fails to State Claims For Fraud, Equitable Fraud, Negligence, and Promissory Estoppel With The Requisite Particularity Required Under Rule 9(b)**

Plaintiff asserts four interrelated claims concerning alleged misstatements, false statements, or unfulfilled promises purportedly made by the Defendants concerning the funding, development, and marketing of the "Downtowner." (Complaint ¶¶ 63, 153). "[I]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "To satisfy this heightened standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir.2007). The plaintiff must also allege

"who made the purported misrepresentations and what specific misrepresentations were made." Id.

In addition, because "a core theory of fraud permeates" Plaintiff's negligence and promissory estoppel, which essentially recast his fraud claims, the negligence and promissory estoppel claims also are subject to Rule 9(b)'s strictures. See Cal. Pub. Employees Ret. Sys. v. Chubb Corp., 394 F.3d 126, 160-63 (3d Cir. 2004); In re Schering-Plough Corp. Intron/Temodar Consumer Class Action, 2009 WL 2043604, at *32-33 (D.N.J. July 10, 2009) (applying Rule 9(b) to claim for fraud and negligent misrepresentation).

In New Jersey, to plead fraud, a plaintiff must allege "'(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" Suarez v. E. Int'l Coll., 428 N.J. Super. 10, 28 (App.Div.2012) (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610, 691 A.2d 350 (1997)).[3] Fraud is never presumed and must be proved by clear and convincing evidence. Baldassare v. Butler, 254 N.J. Super. 502, 520 (App. Div. 1992), modified on other grounds, 132 N.J. 278

---

[3] "Under New Jersey law, the elements for a claim of equitable fraud are the same as for legal fraud claims except that scienter—'knowledge of the falsity and an intention to obtain an undue advantage therefrom'—is not required." Jewish Ctr. of Sussex Cnty. v. Whale, 86 N.J. 619, 624-25, 432 A.2d 521 (1981).

(1993).   Claims of negligence[4] and promissory estoppel[5] require similar allegations.  But, as set forth below, each of Plaintiff's fraud-based claims fail to allege facts constituting the asserted claim with the requisite particularity required of Rule 9(b).

First, none of the alleged misstatements and promises Plaintiff attributes to the Defendants constitute actionable fraud.  The bulk of Plaintiff's fraud-based claims simply recite the Plaintiff's efforts to pitch Profeta on his idea and describes the steps actions Plaintiff to respond to Profeta's concerns. See Complaint ¶¶ 10-38, 40, 42, 44, 64-71, 73, 77, 154-161, 163, 167.

---

[4] Plaintiff's "negligence" claim is essentially a negligence misrepresentation claims.  "The common law tort of negligent misrepresentation shares all the components of fraud, but includes one additional factor: the misrepresentation must be made by a person with a duty to the plaintiff." In re Prudential Ins. Co. of Am. Sale Practices Litig., 975 F. Supp. 584, 619 (D.N.J. 1996), rev'd on other grounds, 133 F.3d 225 (3d Cir.), cert. denied, 525 U.S. 817 (1998).  To state a claim for negligent misrepresentation under New Jersey law, a plaintiff must allege that "1) the defendant negligently provided false information; 2) the plaintiff was a reasonably foreseeable recipient of that information; 3) the plaintiff justifiably relied on the information; and 4) the false statements were a proximate cause of the plaintiff's damages." Goodman v. Goldman, Sachs & Co., No. CIV. 10-1247 FLW, 2010 WL 5186180, at *6 (D.N.J. Dec. 14, 2010).

[5] "The traditional elements of promissory estoppel require the party to show that there has been '(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment.' " Angers v. Pennymac Loan Servs., LLC, No. CIV. 14-4701, 2014 WL 6668001, at *4 (D.N.J. Nov. 24, 2014) (citing Segal v. Lynch, 211 N.J. 230, 253 (2012) (quoting Toll Bros., Inc. v. Bd. of Chosen Freeholders of the Cnty. of Burlington, 194 N.J. 223, 252, 944 A.2d 1 (2008))).

Viewing the Complaint liberally, Plaintiff cites only five specific statements by Profeta and Coleman to substantiate the fraud-based claims.

- "Defendants represented to the Plaintiff, beginning in or about 2012, that they would work together with him to develop, market and produce the *Downtowner* or a magazine modeled on it" (Complaint ¶¶ 63, 153);

- Profeta told Plaintiff "it looked like he had his magazine and acknowledged Plaintiff's statement that he wanted to retain a minority stake in the magazine" (Complaint ¶¶ 39, 72, 162);

- "Profeta said 'let's get started and told Plaintiff that he should be able to tell his staff by Thanksgiving that they would be on payroll on January 1, 2013" (Complaint ¶¶ 41, 74, 164);

- Coleman told the Plaintiff's staff members … that he was looking forward to working with them" (Complaint ¶¶ 43, 75, 165); and

- "Profeta emailed the Plaintiff that they should move forward and take their 'best shot'" (Complaint ¶¶ 45, 76, 166).

At best, even a tortured reading of the above "statements", and giving every inference to the Plaintiff, all the above statements are promises to do something in the future.  It is clear, however, that "[a] mere promise to do something in the future, subsequently unfulfilled, does not constitute actionable fraud."  Dover Shopping Center, Inc. v. Cushman's Sons, Inc., 73 N.J. Super 384, 391 (App. Div. 1960); see also Capano v. Borough of Stone Harbor, 530 F. Supp. 1254, 1264 (D.N.J. 1982) ("action for misrepresentation cannot be predicated upon matters in

future"); Anderson v. Modica, 4 N.J. 383, 391-92 (1950) ("It is
the general rule that to be actionable, fraud must relate to a
present or pre-existing fact and cannot ordinarily be predicated
on representations which involve things to be done in the
future."); See, e.g., Stolba v. Wells Fargo & Co., 2011 WL 3444078,
at **4-5 (D.N.J. Aug. 8, 2011) ("Statements as to future or
contingent events do not constitute misrepresentations,
intentional or negligent, even though they may turn out to be
wrong").

Additionally, the specific statements Plaintiff cites in his
Complaint (attributed apparently only to Profeta and Coleman) do
not allege, with any particularity, statements that form the basis
of fraud, negligence, and promissory estoppel. All five statements
Plaintiff relies on are nothing more than potential conditional
statements of support and platitudes concerning the Defendants
potential future involvement in the "Downtowner." Specifically,
not one of those statements contains a false statement or
affirmative promises that is not completely predicated on
Profeta's decision to actually invest in and operate the
"Downtowner," which Profeta never agreed to do.

Second, "it is not enough for plaintiffs to merely allege
that defendants 'knew' their statements were fraudulent or that
defendants 'must have known' their statements were false." GSC
Partners CDO Fund v. Washington, 368 F.3d 228, 239 (3d Cir. 2004)

19

(affirming dismissal of fraud claims for lack of particularity). A plaintiff must allege facts demonstrating how or why the defendants knew that their statements were misleading or false, or that they would never fulfill their promises. Id.

Here, however, Plaintiff alleges only the very type of conclusory allegations that Court routinely reject. The Complaint merely provides the boilerplate allegations that "Defendants' actions and/or representations were false and known to be false at the time of their performance and/or utterance." Complaint ¶¶ 80, 170. But Plaintiff provides no factual basis (much less particularized allegations) to support his position that Profeta (or any other Defendant) knowingly did not intend to work with Plaintiff to develop the "Downtowner" at the time they made the statements referenced in the Complaint. Moreover, Plaintiff cannot make such an allegation because, as set forth above, each of the statements cited by Plaintiff were made before Profeta decided not to pursue a business relationship with Plaintiff.

Third, "indispensable to any claim of fraud is justifiable and reasonable reliance." Arcand v. Brother Int'l Corp., 673 F. Supp. 2d 282, 305 (D.N.J. 2009) (dismissing fraud claims because plaintiff could not allege reasonable reliance where material facts are not pled); Hills v. Bank of Am., 2014 WL 4113131, at *9 (D.N.J. June 30, 2014) (dismissing fraud claim because "Plaintiffs only plead knowledge and intent in a conclusory manner without any

20

factual allegations to state with particularity how Defendant acted knowingly and with intent that Plaintiffs rely on the alleged misrepresentations."); Stolba, 2011 WL 3444078, at **4-5 ("Statements as to future or contingent events do not constitute misrepresentations, intentional or negligent" cannot be reasonably relied upon); Del Sontro v. Cendant Corp., 223 F. Supp. 2d 563, 574 (D.N.J. 2002)("[i]t was legally unreasonable for Plaintiff to rely on such an indefinite intent to settle" because "[i]ndefinite promises or promises subject to change by the promisor are not 'clear and definite' and cannot give rise to a claim for promissory estoppel.").

Here, Plaintiff alleges only the conclusory statement that he "reasonably relied upon the Defendants' representations and actions." (Complaint ¶¶ 81, 94, 171). Plaintiff does not allege why it was reasonable to rely on Defendants' conditional statements about a possible potential future interest in Plaintiff's idea, nor does Plaintiff plead that Defendants communicated any affirmative assent to enter into a contractual relationship or joint venture.

Fourth, Plaintiff's fraud claims against Kohn, Associates, and Radius should be dismissed because Plaintiff does not allege that these Defendants made any misrepresentation or statement at all. As there are no allegations that such defendants made any misstatement or promise, there is no basis to include Defendants

Associates, Kohn, and Radius in the fraud, negligence, and promissory estoppel claims.

### C. Plaintiff's Contractual, Quasi-Contractual, and Breach of Duty Claims Fail

Plaintiff alleges that despite never obtaining the commitment by Profeta or any Defendant to fund, develop, or operate the "Downtowner", Plaintiff somehow entered into an enforceable contract that the Defendants have allegedly breached. Alternatively, Plaintiff alleges that even if no contract was formed, Plaintiff is entitled to quasi-contractual remedies for the services he rendered in pitching his business to Defendants. As set forth below, all of Plaintiff's contractual and quasi-contractual claims should be dismissed.

#### 1. There Was No Express or Implicit Contract Between Plaintiff and Defendants

A contract arises from offer and acceptance, and must be sufficiently definite "that the performance to be rendered by each party can be ascertained with reasonable certainty." *West Caldwell v. Caldwell*, 26 N.J. 9, 24–25, 138 *A*.2d 402 (1958). Thus, if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract. *See Id*. at 24–25, 138 *A*.2d 402. Where the parties do not agree to one or more essential terms, however, the agreement is unenforceable. *See, e.g.*, *Heim v. Shore*, 56 N.J. Super. 62, 72–73, 151A.2d 556 (App. Div. 1959) (holding agreement unenforceable

22

because parties did not agree on terms of payment, principal amount of mortgage, due date, and interest rate). New Jersey court have also held that "[i]t is requisite that there be an unqualified acceptance to conclude the manifestation of assent." Johnson & Johnson, 11 *N.J.* 526, 539, 95 *A.*2d 391 (1953).

The Complaint is completely devoid of any factual allegations that assert that a contract was formed between Plaintiff and Defendants. Plaintiff's implied contract is based solely on his recitation of the chronology of events showing Plaintiff's pitch to Profeta, including his submission and revision of business plans, scouting for office space, and conducting research for advertising rates. The only allegations that actually address the purported contract Plaintiff claims to exist is the following:

> "[t]he Defendants implicitly offered partnership with and/or compensation to the Plaintiff … [a]s per the agreement between the Parties, the Plaintiff provided ideas and services to the Defendants in full performance of his duties and obligations [and] [i]n breach of their obligations under the agreement, the Defendants never provided Plaintiff with any compensation, credit, or partnership for his ideas and/or services."

Complaint ¶¶ 109-11. The Complaint does not provide a single allegation, however, describing what terms were agreed to between the parties that would create a partnership.

New Jersey courts have applied the factors laid out in Fenwick v. Unemployment Comp. Comm'n in order to determine whether a partnership agreement is valid. 133 N.J.L. 295, 297-99, 44 A.2d

172 (1945); <u>see also</u> <u>Eagan v. Gory</u>, 2009 WL 483851 (D.N.J. Feb. 24, 2009).[6] These factors include (i) the intent of the parties, (ii) right to share in profits, (iii) obligation to share in losses, (iv) ownership and control of the partnership property and business, (v) community of power in administration and reservation, (vi) language of the agreement, (vii) conduct of the parties toward third persons, and (viii) the rights of the parties on dissolution. <u>Fenwick</u>, 133 N.J.L. at 297–99, 44 A.2d 172.

Where a plaintiff cannot demonstrate that the Fenwick factors exist, there is no partnership agreement. <u>See</u> <u>id</u>. at 300, 44 A.2d 172; <u>Presten v. Sailer</u>, 225 N.J. Super. 178, 542 A.2d 7 (1988) (finding that parties did not enter into a partnership because they did not intend to share profits); <u>Amer. Fire & Casualty Insurance Co. et al. v. Manzo et al.</u>, 347 N.J. Super. 100, 107, 788 A.2d 925 (2002) (finding that parties did not enter into a partnership because most of the <u>Fenwick</u> factors were not met); <u>Eagan</u>, 2009 WL 483851 (finding that parties did not enter into a partnership because most of the Fenwick factors were not met).

Plaintiff does not allege a single <u>Fenwick</u> factor or any contractual term that could form the basis of an agreement between the parties.  Plaintiff alleges only that he pitched Profeta to

---

[6] The burden of establishing a valid partnership exists falls onto the party that is alleging it.  <u>Fenwick</u>, 133 N.J.L. at 300, 44 A.2d 172.

invest, develop, operate the "*Downtowner*" and that Profeta allegedly acknowledged Plaintiff's desire to have a minority stake in whatever entity was formed (Complaint ¶ 39). Plaintiff alternatively alleges that he formed an agreement for compensation with Defendants, but aside from the unknown "minority stake," Plaintiff does not even allege any essential elements, such as what that compensation was, which Defendant was responsible for paying Plaintiff, or even the term of the compensation period.

Plaintiff's contractual claim also fails because Plaintiff does not (and cannot) allege that any Defendants accepted the unknown terms of partnership or employment. Instead, the Complaint states the exact opposite: Profeta rejected Plaintiff's pitch and declined to fund Plaintiff's venture (Complaint ¶ 48).

Thus, Plaintiff has not alleged the existence of any enforceable contract or partnership and, accordingly, Plaintiff's breach of contract claim must be dismissed.

### 2.   Because There Was No Contract, Defendants Had No Duty of Good Faith and Fair Dealing

"In order to state a claim for breach of the implied covenant, a plaintiff must allege that … a contract exists." TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC, No. CIV. 12-3355 RBK, 2014 WL 3853900, at *3 (D.N.J. Aug. 5, 2014). Because Plaintiff does not and cannot allege the existence of a contract,

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing also fails, and must be dismissed as well.

### 3.    Plaintiff's Quasi-Contractual Claims Fails

"The elements required to state a claim for quantum meruit and unjust enrichment are closely related." TBI Unlimited, 2013 WL 6048720, at *7 n.5.  "To state a claim for unjust enrichment, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" Green v. Green Mountain Coffee Roasters, Inc., 279 F.R.D. 275, 283 (D.N.J. 2011) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 110 (2007)).  Similarly, to recover under quantum meruit, a plaintiff must establish: (1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefore; and (4) the reasonable value of the services. Starkey, Kelly, Blaney & White v. Estate of Nicolaysen, 172 N.J. 60, 68, 796 A.2d 238 (N.J.2002) (quoting Longo v. Shore & Reich, Ltd., 25 F.3d 94, 98 (2d Cir.1994)) (internal quotations and citations omitted).

"Thus both the second element of an unjust enrichment claim and the third element of a quantum meruit claim require a showing of an expectation of compensation or payment from the party against whom relief is sought." TBI Unlimited, 2013 WL 1223643, at *5. Conclusory allegations, however, are insufficient. See Mina Inv. Holdings Ltd. v. Lefkowitz, 51 F. Supp. 2d 486, 489-490 (S.D.N.Y.

1999); <u>New Jersey Carpenters Health Fund v. Philip Morris, Inc.</u>, 17 F. Supp. 2d 324, 344 (D.N.J. 1998); <u>see also</u> <u>Iwanowa v. Ford Motor Co.</u>, 67 F. Supp. 2d 424, 447, 467 (D.N.J. 1999) (dismissal is proper where there are only conclusory allegations).

Here, the Complaint fails to allege viable quasi-contractual claims because Plaintiff fails to set forth (i) what payment Plaintiff expected from Defendants or (ii) whether Defendants were aware that Plaintiff expected to be paid for pitching his business idea.  Only one allegation in the entire Complaint suggests that Plaintiff sought some form of compensation (what the form of compensation or amount would be, however, is anyone's guess).  Specifically, Plaintiff alleges that Profeta "acknowledged the Plaintiff's statement that he wanted to retain a minority stake in the magazine."  (Complaint ¶ 39).  Aside from that single allegation, however, Plaintiff's claims for unjust enrichment and quantum meruit merely recite the element of those claims and do not state any facts showing that Defendants were aware that Plaintiff expected to be paid for pitching his idea to Profeta.  (Complaint ¶¶ 133-143).  As such, Plaintiff's conclusory allegations are insufficient.

**D.  Plaintiff's Breach of Fiduciary Duty, Negligence, and Gross Negligence Claims Fail**

Plaintiff's claims breach of fiduciary duty, negligence and gross negligence are all deficient because Plaintiff has not

pled the existence of any actionable duty imposed on Defendants. As a matter of law, this case does not fall within the narrow circumstances giving rise to such a duty: (1) where a fiduciary relationship exists; (2) where one party reposes special trust and confidence in the other, and such trust and confidence is expressed in words or necessarily implied by conduct; or (3) the transaction's essential nature is intrinsically fiduciary and calls for full disclosure without regard to the parties' intent. Berman v. Gurwicz, 458 A.2d 1311, 1313-14 (N.J. Super. Ct. Ch. Div. 1981); see also Maertin v. Armstrong World Indus., Inc., 241 F. Supp. 2d 434, 461 (D.N.J. 2002).  As this Court concluded in Maertin, an "arm's length negotiation," such as the parties' negotiation for the development of the "Downtowner" here, "ordinarily fits none of these categories of transactions where a higher disclosure duty arises." Id. at 461-62.

> 1. *Without the Existence of Partnership, Plaintiff Fails to Allege the Existence of Any Fiduciary Duty*

"Claims for breach of fiduciary duty require the existence of a fiduciary duty or relationship between the parties, breach of that duty, and resulting damages." UBI Telecom Inc. v. KDDI Am., Inc., 2014 WL 2965705, at *10 (D.N.J. June 30, 2014).  However, conclusory allegations concerning the existence of a fiduciary duty do not suffice.  Wingate Inns, Int'l, Inc. v. High Tech Inn.com, LLC, 2009 WL 5216978, at *6 (D.N.J. Dec. 29, 2009) ("Mr.

Shah fails to allege any facts to support his breach of fiduciary duty claim. Indeed, he makes nothing more than a conclusory allegation that Wingate (amongst others) 'breached fiduciary duty.' … Such unwarranted legal conclusions are insufficient to withstand a motion to dismiss.").

Plaintiff fails to allege any facts that establish a fiduciary relationship existed between Plaintiff and Defendants.  First, as set forth in Point III.C., because Plaintiff cannot allege the existence of a partnership between himself and any defendant, Plaintiff cannot demonstrate that a fiduciary relationship was created by that partnership.  Second, Plaintiff claims that a fiduciary duty existed between himself and Defendants "pursuant to their joint venture."  (Complaint ¶ 146). Again, Plaintiff does not establish the existence of a joint venture that would impose a fiduciary duty on Defendants.

"For a joint venture to have been formed, the parties must have agreed upon the essential terms." Wingate Inns, 2009 WL 5216978, at *6. A joint venture agreement does not exist if the terms are 'so vague, indefinite and uncertain as to make it illusory and therefore unenforceable.' Paley v. Barton Sav. & Loan Ass'n, 82 N.J. Super. 75, 82, 196 A.2d 682 (App. Div.), certif. denied, 41 N.J. 602, 198 A.2d 446 (1964).[7]

_____

[7] "A joint venture generally requires 'some or all of the following elements: (A) A contribution by the parties of money, property,

For the same reasons Plaintiff cannot plead that a partnership existed, he also fails to allege the existence of an enforceable joint venture.  Accordingly, Plaintiff cannot establish that any fiduciary duty applies to any Defendant and these counts must be dismissed.

> 2. *Plaintiff Negligence and Gross Negligence Claims Independently Fail As Plaintiff Does Not Allege Imposed On Defendants*

Under the common law of New Jersey, a party can only be liable for failing to disclose information that person has a duty to disclose. See Baldasarre v. Butler, 254 N.J. Super. 502, 521 (N.J. Super. Ct. App. Div. 1992) ("Silence in the face of an obligation to disclose may be fraud.").  Where no fiduciary relationship exists, one party to a business transaction has no duty to disclose material information to the counter-party unless one party "expressly" reposes a trust and confidence in the other. N.J. Econ. Dev. Auth. v. Pavonia Restaurant, Inc., 319 N.J. Super. 435, 446 (App. Div. 1998).  But like its claim for breach of fiduciary duty, Plaintiff's claim for negligence[8] also fails to allege any facts

---

effort, knowledge, skill or other asset to a common undertaking; (B) A joint property interest in the subject matter of the venture; (C) A right of mutual control or management of the enterprise; (D) Expectation of profit, or the presence of 'adventure,' as it is sometimes called; (E) A right to participate in the profits; and (F) Most usually, limitation of the objective to a single undertaking or ad hoc enterprise." Burnham v. WMC Mortg. Corp., 2010 WL 2560657, at *7 (D.N.J. June 21, 2010)(quotation omitted).

[8] See Supra footnote 4.

demonstrating showing how the relationship between Plaintiff and Defendants was one where Defendants owed a duty of disclosure to Plaintiff.

Moreover, given that Plaintiff cannot prove his claim for negligence, the Court does not even need to consider Plaintiff's claim for gross negligence as Plaintiff provides.[9]

### E.    Plaintiff's Claim For Interference With A Prospective Economic Advantage Fails

Plaintiff's claim for interference with prospective economic advantage is also fatally flawed.  Under New Jersey law, the elements of a claim for interference with prospective business advantage are: (i) a prospective economic relationship from which the plaintiff has a reasonable expectation of gain; (ii) intentional and unjustifiable interference with that expectation, and (iii) a causative relationship between the interference and the loss of the prospective gain. See, e.g., Cooper Distrib. Co, Inc. v. Amana Refrigeration, 63 F.3d 262, 281 (3d Cir. 1995); Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 752 (1989).

New Jersey law also requires that a plaintiff alleging tortious interference with existing or prospective advantage "present proof that but for the acts of the defendant, the

---

[9] "[A] gross negligence claim requires allegations of reckless conduct that border on intentional wrongdoing … ." Goodman, 2010 WL 5186180, at *14.

plaintiff 'would have received the anticipated economic benefits'." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1168 (3d Cir. 1993) (citing Printing Mart-Morristown, 116 N.J. at 751). Plaintiffs must allege more than merely the lost potential for future business. See id. at 1169.

Here, Plaintiff cannot plead his claim for interference with prospective economic advantage. First, Plaintiff pleads only the conclusory assertion that "Defendants' false representations caused loss of the Plaintiff's prospective gain of economic relations with other entities." Complaint ¶ 88. As set forth above, Plaintiff does not allege any actionable misstatement, as all alleged misstatements are contingent and relate to future events. See supra Point III.B.

Second, Plaintiff's interference claim cannot survive, because he does not plead how Defendants' conduct was intentional and malicious. "[C]ourts require facts not only alleging intent, but malice; that is, the harm was inflicted intentionally and without justification or excuse." MacDougall v. Weichert, 144 N.J. 380, 404 (1996). That is, a plaintiff must plead that the defendant's conduct was "both injurious and transgressive of generally accepted standards of common morality or of law." Labus v. Navistar International Transportation Corp., 740 F. Supp. 1053, 1064 (D.N.J. 1990).

Here, aside from the conclusory allegation that "Defendants intentionally and maliciously sought to prevent the Plaintiff from marketing his ideas and services to other entities", Plaintiff fails to allege a single fact demonstrating that any Defendant had any motive, malicious or otherwise, to interfere with Plaintiffs' business opportunities. Moreover, Plaintiff's claim is logically inconsistent with other allegations in the Complaint. Plaintiff does not explain how Defendants are liable for interfering with Plaintiff's business opportunities where Plaintiff also alleges that he pitched his idea to dozens of other Newark stakeholders. Complaint ¶¶ 21-23.

Third, aside from the reference to "other entities", Plaintiff fails to identify a single contract, opportunity, or other economic advantage that he reasonably believed was available to him. As such, Plaintiff has failed to plead a claim for interference with prospective business opportunities, and it must be dismissed.

**F.   Plaintiff's RICO Claim Fails**

"The RICO statute is intended 'not to cover small scale operations', but 'to target only organized-crime type activities that are substantial in nature.' Such trivialization of this statute as an aid to garden variety civil litigation abuses the law." Wade v. Amanda Rinkleur & Assoc., Inc., 2006 WL 709607, at

*3 (N.J. Super. Ct. App. Div. Mar. 17, 2006) (quoting State v. Ball, 141 *N.J.* 142, 161 (1995).

    To plead a valid RICO claim, a plaintiff must allege that the defendants: (1) acquired or maintained, through a pattern of racketeering activity, an interest in or control of an "enterprise" which is engaged in or activities of which affect trade or commerce; and (2) were associated with an enterprise and conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity. N.J.S.A. 2C:41-2(b)-(c). To properly plead either violation, there are four basic elements that Plaintiff must assert: (1) the existence of a RICO enterprise; (2) the existence of a pattern of racketeering activity; (3) a showing that the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents; and (4) resulting injury to the plaintiff's business or property. N.J.S.A. 2C:41-2, 2C:41-1(c)-(d); see also Wade, 2006 WL 709607, at *2.

    Federal courts have also held that state RICO claims pursued in federal court based upon fraudulent conduct must be pled with particularity pursuant to Rule 9(b). See Ross v. Celtron Int'l, Inc., 494 F. Supp. 2d 288, 301 (D.N.J. 2007); Kennedy Funding,

<u>Inc. v. Lion's Gate Dev., LLC</u>, 2006 WL 1044807, at *5 (D.N.J. Apr. 18, 2006).

Here, Plaintiff's RICO claim is not only wholly improper for this "garden variety civil litigation", but is also fatally deficient limited to pleading, in a conclusory fashion.  The totality of Plaintiff's RICO allegations are as follows:

- Defendants allegedly "collectively conspired … to take ideas from individuals with promises to develop, market, and/or sell these ideas."

- "Defendants have further collectively conspired … to represent to such individuals that there would be compensation for their ideas … ."

- "The Defendants continued their pattern of lies and deception in failing to compensate the Plaintiff for the ideas and/or services provided."

- "The Defendants' treatment of the Plaintiff was similar to their treatment of other individuals who brought ideas to them and were not compensated or credited."

- "As a result, the Defendants have demonstrated a pattern of misconduct, fraud, and deception … ."

Complaint ¶¶ 121-126.  These allegations, however, fail to state a New Jersey RICO violation under any interpretation.

First, Plaintiff tries to take "garden variety civil litigation" and claim that Defendants conduct constitutes RICO racketeering.  Nothing is further from the truth, and aside from Plaintiff's conclusory assertions of such racketeering activity, Plaintiff pleads no facts to support that outlandish allegation.

Second, a "pattern" is defined by the New Jersey RICO Act as requiring the commission of at least two predicate offenses enumerated in N.J.S.A. 2C:41-1(a)(1), including "forgery and fraudulent practices and all crimes defined in chapter 21 of Title 2C." See N.J.S.A. 2C:41-1(a)(1)(o); Winslow v. Corporate Exp., Inc., 364 N.J. Super. 128, 142 (App. Div. 2003). As set forth above, Plaintiff has failed to plead the Defendants' committed fraud or equitable fraud with sufficient particularity to survive a challenge under Rule 9(b). See supra Point III.B.

Third, a pattern of racketeering activity requires a showing that the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents. See N.J.S.A. 2C:41-1(d); Barrows v. Chase Manhattan Mortg. Corp., 465 F. Supp. 2d 347, 364 (D.N.J. 2006).

Here, Plaintiff's allegations of a "pattern of racketeering activity" boil down to the conclusory allegations that Defendants purportedly defrauded or made misrepresentations to other "individuals." Specifically, Plaintiff fails to provide any facts whatsoever regarding who these "individuals" are, which defendant made the alleged fraudulent statements, what context such statements were made, or the date, time, or location of such statements. Further, Plaintiff has failed to specify two or more

distinct predicate offenses, which together would constitute a pattern.

Fourth, as the statutory language makes clear, an essential element of the RICO offense is that the defendant conduct or participate in the affairs of the alleged enterprise. The Supreme Court of New Jersey has clarified that "to conduct or participate in the affairs of an enterprise means to act purposefully and knowingly in the affairs of the enterprise in the sense of engaging in activities that seek to further, assist or help effectuate the goals of the enterprise." State v. Ball, 141 N.J. 142,175 (1995).

Here, Plaintiff pleads no facts showing which Defendant acted purposely and knowingly to further the goals of the alleged enterprise. As noted above, other than conclusory allegations that Defendants "collectively conspired" there is nothing in the complaint to demonstrate which Defendants were part of the conspiracy, which Defendants knew about the conspiracy, or which Defendants actually contributed to the conspiracy.

As such, Plaintiff's RICO claims is insufficiently plead as a matter of law and must be dismissed.

### G.  Plaintiff Is Not Entitled to Injunctive Relief

The United States Supreme Court recently clarified the standards applicable with regard to applications for permanent injunctions:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

Where a plaintiff fails to plead or prove actual or imminent harm, which otherwise cannot be compensated by money damages, an injunction cannot issue. Frank's GMC Truck Ctr. Inc., v. General Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988). Here, there is no allegation of imminent harm in the Complaint. Therefore, Plaintiffs are not entitled to injunctive relief and this "claim" should be dismissed.

In addition, the availability of adequate monetary damages belies a claim of irreparable injury. Id. Purely economic injury, compensable in money, does not satisfy the irreparable injury requirement. Id. Thus, Plaintiff's claim for injunctive relief should also be dismissed.

**CONCLUSION**

For all the foregoing reasons, Defendants' motion to dismiss should be granted.

Respectfully submitted,
NAGEL RICE, LLP


By:   _s/Bruce H. Nagel_
         BRUCE H. NAGEL

Dated: October 30, 2015

39