UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHILIP READ, | : |
| Plaintiff, | : |
| | : |
| | : Docket No.: 2:15- |
| | : cv-02637-KM-JBC |
| | : |
| v. | : |
| | : Civil Action |
| PAUL PROFETA, PAUL V. PROFETA & | : |
| ASSOCIATES; RADIUS:BRICK CITY & | : |
| BEYOND; STEVEN COLEMAN; and | : |
| WILLIAM KOHN | : |
| | : |
| Defendants. | : |
| | : |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS COMPLAINT**

Return Date:  January 4, 2016

**LAW OFFICES OF JAMES C. DEZAO, P.A.**
322 Route 46 West, Suite 120
Parsippany, New Jersey 07054
(973) 808-8900
James C. DeZao, Attorney ID: 019511985
*Attorney for Plaintiff*

TABLE OF CONTENTS

PAGE

Preliminary Statement ...................................1

Legal Argument ........................................ 1

   I.   Dismissal With Prejudice is Not Warranted Even if
Court Finds the Complaint Lacking in Any Detail ..........1

**II.**  The Defendants Disbelievingly Argue That the
Complaint "Fails to State a Single Cognizable **Claim**
Against Any Defendant" .................................6

     A. The Plaintiff's Intellectual Property Claim Does
Not Fail .........................................6

       1. The Defendants Conclusory Argue that the
Plaintiff's Idea is Not Novel ...................7
       2. The Defendants Incorrectly Suggest That the
Plaintiff's Complaint Fails to Allege
Confidentiality .............................9
       3. The Plaintiff Alleges That the Defendants
Converted Property Belonging to the Plaintiff....10

     B. The Defendants' Regurgitated Argument Regarding
Lack of Specificity Fails to Advance a Basis for
Dismissal With Prejudice ..........................11

     C. The Plaintiff's Contractual, Quasi-Contractual and
Breach of Duty Claims Are Adequate ................18

       1. There was an Express or Implied Contract
Between the Parties ...........................18
       2. Since There Was a Contract, The Breach Of Good
Faith and Fair Dealing Claim Remains ...........19
       3. Plaintiff's Quasi-Contract Claim Floats ........22

     D. The Plaintiff's Breach of Fiduciary Duty,
Negligence, and Gross Negligence Claims Are
Well-Pled .......................................24

       1. The Defendants Ask the Court to Conclude That
No Partnership is Alleged ......................25
       2. The Plaintiff's Negligence and Gross
Negligence Claims Are Well-Pled ................26

     E. The Plaintiff's Claim for Interference With
Prospective Economic Advantage is Solid ...........27

F. The Plaintiff's RICO Claim Is Valid ................32

G. The Plaintiff is Entitled to Injunctive Relief .....37

Conclusion ....................................................38

TABLE OF CITATIONS

CASES:                                                          PAGE(S)

American Fire & Cas. Ins. Co. v. Manzo, 347 N.J. Super. 100,
A.2d 925 (App. Div. 2002) .................................19

Anderson v. Modica, 4 N.J. 383, 73 A.2d 49, (1950)..........12

Apollo Technologies Corp. v. Centrosphere Indus. Corp., 805
F.Supp. 1157 (D.N.J. 1992).................................38

Arcand v. Brother Intl. Corp.,673 F.Supp.2d 282 (D.N.J. 2009).15

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955
(2007)..................................................... 7

Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, (3d Cir.
2010) .....................................................37

Bondi v. Citigroup, Inc., 423 N.J. Super. 377, 32 A.3d 1158,
(App. Div. 2011) ..........................................17

Capano v. Borough of Stone Harbor, 530 F.Supp. 1254, (D.N.J.
1962) .....................................................12

Del Sontro v. Cendant Corp., Inc., 223 F.Supp.2d 563 (D.N.J.
2002) .....................................................16

Di Cristofaro v. Laurel Grove Mem. Park, 43 N.J. Super. 244,
128 A.2d 281,(App. Div. 1957)...............................2

Dover Shopping Ctr., Inc. v. Cushman's Sons, Inc., 63 N.J.
Super. 384, 164 A.2d 785, (App. Div. 1960)..................12

Eagan v. Gory, 2009 WL 4833851, 1 (D.N.J.) .................19

Fenwick v. Unemployment Comp. Commn, 133 N.J.L. 295,
44 A.2d 172 (1945) ........................................19

F.G. v. MacDonell, 150 N.J. 550, 696 A.2d 697 (1997) .........9

Fleming v. Ronson Corp., 107 N.J. Super. 311,
258 A.2d 153 (Ch. Div. 1969) .............................6, 7

Hills v. Bank of America, 2014 WL 4113131 (D.N.J.) ..........15

H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109
S.Ct. 2893, 106 L.Ed.2d 195 (1989) ........................33

In re Estate of Santolino, 384 N.J. Super. 567, 895 A.2d 506
(N.J. Super. Ch. 2005)........................................2

Iwanowa v. Ford Motor Co., 67 F.Supp.2d 424 (D.N.J. 1999) ....24

Johnson v. Benjamin Moore & Co., 347 N.J. Super. 71,
788 A.2d 906 (App. Div.) ...................................6

Labus v. Navistar Inter. Transp. Corp., 740 F.Supp. 1053
(D.N.J. 1990)..............................................31

Lieberman v. Port Auth. of New York and New Jersey, 132 N.J.76
622 A.2d 1295 (1993).......................................2

Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153
(3d Cir. 1993) ............................................30

MacDougall v. Weichert, 144 N.J. 380, 677 A.2d 162 (1996) ....30

Maertin v. Armstrong World Indus., Inc., 241 F.Supp.2d 434,
(D.N.J. 2002) .............................................25

McCullough v. Shearson Lehman Bros., Inc., 1998 WL 23008
(W.D. Pa.) ................................................35

Mina Inv. Holdings, Ltd. v. Lefkowitz, 51 F.Supp.2d 486
(S.D.N.Y. 1999) ...........................................23

Muniz v. United Hospitals Med. Ctr., 153 N.J. Super. 79, 379
A.2d 57 (App. Div. 1977)...................................2

New Jersey Carpenters Health Fund v. Philip Morris, Inc., 17
F.Supp.2d 324 (D.N.J. 1998) ...............................23

Paley v. Barton Sav. & Loan Assn, 82 N.J. Super. 75, 196 A.2d
682 (App. Div. 1964)...................................21, 26

Presten v. Sailer, 225 N.J. Super. 178, 542 A.2d 7 (App. Div.
1988) .....................................................19

Pryor v. Natl. Collegiate Athletic Assn., 288 F.3d 548
(3d Cir. 2002) ............................................7

Rolo v. City Inv. Co. Liquidating Trust, 155 F.3d 644,
(3d Cir. 1998) ............................................34

<u>Schierstead v. City of Brigantine</u>, 29 N.J. 220, 148 A.2d 591, (N.J. 1959).....................................................2

<u>Scholes Elec. & Communs. v. Fraser</u>, 2006 WL 1644920 (D.N.J.)..10

<u>Sedima S.P.R.L. v. Imerex Co.</u>, 473 U.S. 479 (1985) ...........34

<u>State v. Ball</u>, 141 N.J. 142, 661 A.2d 251 (1995).............35

<u>Stolba v. Wells Fargo & Co.</u>, 2011 WL 3444078 (D.N.J.) ....13, 16

<u>Tabas v. Tabas</u>, 47 F.3d 1280 (1995) ........................33

<u>Vent v. Mars Snackfood US, LLC</u>, 611 F.Supp.2d 353 (S.D.N.Y. 2009) ......................................................8

<u>Wingate Inns, Intl., Inc. v. HighTech Inn.com, LLC</u>, 2009 WL 5216978 (D.N.J.)..............................................26

<u>RULES/STATUTES:</u>

Fed. R. Civ. P. Rule 9(b) ..................................33

Fed. R. Civ. P. Rule 12(b)(6)...............................34

The Plaintiff, Philip Read ("the Plaintiff"), submits this Memorandum in Opposition to the Motion of the Defendants to Dismiss his Complaint.  For the reasons set forth below, the Defendants' Motion should be denied.

### Preliminary Statement

Unfortunately, the Defendants set an unpleasant tone for their Motion, accusing the Plaintiff of taking "a kitchen sink approach" because he asserts "fifteen claims against five Defendants" (Defendants' Motion, p. 1).  Aside from the undefined (but obviously insulting) "kitchen sink" reference, the Defendants seem to suggest that there is something off color or even bad faith about asserting multiple causes of action in a complaint against more than one defendant.  This attack is toothless, and the attack inappropriately personal.

The remainder of the Defendants' lengthy Prefatory Statement is a spin on the Complaint that does not belong in a Motion to Dismiss.  The Defendants' Motion does not begin until Page 5.

### Argument

**I. Dismissal With Prejudice is Not Warranted Even if the Court Finds the Complaint Lacking in Any Detail.**

<u>Law</u>

1

Every reasonable inference is accorded to the plaintiff on a motion to dismiss, which is only granted in rare instances and ordinarily without prejudice. *Lieberman v. Port Auth. of New York and New Jersey*, 132 N.J. 76, 79, 622 A.2d 1295 (1993).

Indeed, to the extent that the Court finds that the Complaint fails to provide requisite detail as to any of the causes of action the Defendants attack, leave should be granted to file an amended pleading. *See, Muniz v. United Hospitals Med. Ctr.,* 153 N.J. Super. 79, 81-82, 379 A.2d 57, 58 (App. Div. 1977)(" . . . . the judge should have afforded plaintiffs an opportunity to amend the complaint to endeavor to conform to the requisites of the hospital's responsibility in damages . . . ."); *Di Cristofaro v. Laurel Grove Mem. Park*, 43 N.J. Super. 244, 257, 128 A.2d 281, 288 (App. Div. 1957)(modifying judgment so as deny motion to dismiss the complaint and to direct plaintiffs to file an amended complaint more specifically stating particulars of their claim in conformity with rules of practice). *See, also, In re Estate of Santolino*, 384 N.J. Super. 567, 895 A.2d 506 (N.J. Super. Ch. 2005)(trial court could dismiss without prejudice claim so that party could amend pleading and plead factual allegations with required particularity); *Schierstead v. City of Brigantine*, 29 N.J.

2

220, 234, 148 A.2d 591, 598 (N.J. 1959)("the plaintiff should be given fair opportunity of presenting and prosecuting in the Law Division an appropriately amended complaint setting forth his allegations with sufficient particularity in accordance with the rules of practice").

Application

The Defendants argue that the "type of collective pleading" of alleging claims against them "collectively" "is impermissible as a matter of law" (Defendants' Motion, p. 9).  Yet the Defendants offer not even one lone case standing for the proposition that such commonplace pleading "is impermissible as a matter of law" (*Id.*).  In any event, the Defendants' contention that this "collective pleading is impermissible . . . because [it] fails to" provide each Defendant with "notice as to what alleged wrongful conduct" was committed (*Id.* at p. 9) ignores the very fact-specific allegations of the Complaint.  Those facts detail the actions each Defendant took, and belie their contentions that the Complaint lacks the requisite detail.

The Defendants' complaints about failure to allege fraud with particularity (Defendants' Motion, pp. 10-11) fail where (a) the Complaint details specific facts regarding the fraud; and (b) in the event the Court finds

3

the Complaint not detailed enough, leave should be granted to amend it.

The Fraud claim alleges, *inter alia*, that, in November 2010, Profeta met with the Plaintiff in his West Orange office and told him that he would be interested in pursuing the Plaintiff's vision for the *Downtowner* (Complaint, ¶64); on or about December 12, 2010, Profeta emailed the Plaintiff asking for particulars of the project under the guise that he had "absolutely no print experience" (*Id.* at ¶65); on or about December 19, 2010, Profeta emailed the Plaintiff claiming not to know where to start or what questions to ask on the project (*Id.* at ¶66); in or about July 2012, Profeta emailed the Plaintiff that he would love to meet him again about the project (*Id.* at ¶67); on or about July 18, 2012, Profeta, Coleman, Kohn and the Plaintiff met at Associates' offices about the project (*Id.* at ¶68); on or about September 14, 2012, Profeta emailed the Plaintiff asking him to approach Berson and Giantomasi about office space and advertising support (*Id.* at ¶70); on or about September 27, 2012, Kohn and Coleman met with the outsourcing company the Plaintiff located (*Id.* at ¶71); on or about October 9, 2012, the Plaintiff had a conference with Profeta and Berson and Giantomasi about office space and Profeta told the Plaintiff that it looked like he had

4

his magazine and acknowledged the Plaintiff's remarks that he wanted to retain a minority stake in any company formed (*Id.* at ¶72); on or about October 22, 2012, Profeta requested that the Plaintiff provide a breakdown of what competitors in other markets charged for ads (*Id.* at ¶73); on or about November 7, 2012, Profeta told the Plaintiff that he wanted to "get started" and he should be able to tell his staff by Thanksgiving that they would be on payroll on January 1 (*Id.* at ¶74); on or about December 14, 2012, Coleman told the Plaintiff's staff members in the Plaintiff's presence that he was looking forward to working with them (*Id.* at ¶75); on or about December 17, 2012, Profeta emailed the Plaintiff that they should move forward with their "best shot" (*Id.* at ¶76); and that each and every one of these actions or statements was taken or made with the intention of representing to the Plaintiff that the magazine would be a joint venture between the Parties, and that the Plaintiff would be heavily involved in its development and marketing (*Id.* at ¶78).

These claims are particularized and specific as to which Defendant did what; and the Defendants decision to focus on the Plaintiff's understandable reference to all of them in certain Paragraphs of the claim does not undermine these allegations.

## II.   The Defendants Disbelievingly Argue That the Complaint "Fails to State a Single Cognizable Claim Against Any Defendant."

### A. The Plaintiff's Intellectual Property Claim Does Not Fail.

The Defendants begin by inaptly citing *Fleming v. Ronson Corp.*, 107 N.J. Super. 311, 258 A.2d 153 (Ch. Div. 1969), and *Johnson v. Benjamin Moore & Co.*, 347 N.J. Super. 71, 788 A.2d 906 (App. Div.)(Defendants' Motion, pp. 11-12), both of which are procedurally inapplicable. In *Fleming, supra,* the trial, limited to the issue of liability, was without a jury, and it was "for the court to state its findings of fact and conclusions of law thereon." 107 N.J. Super. at 313, 258 A.2d at 154. Likewise, in *Johnson, supra*, the matter was decided on a fully developed record (summary judgment). 347 N.J. Super. 75, 788 A.2d at 908. The Defendants are moving to dismiss the Plaintiff's Complaint for failure to state a claim before answering. The comparison with these two cases on the procedural posture alone defeats its merit.

Assuming, *arguendo*, that the procedural posture of the cases does not render them inapplicable to this one, the standards annunciated do not defeat the merit of the Plaintiff's Complaint at this premature stage. In fact, to the extent that the Court finds that the Theft of

6

Intellectual Property and Conversion claims are not properly pled, the Plaintiff should be permitted leave to replead them where the essentials of the claims exist. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 580-81, 127 S.Ct. 1955, 1979-80 (2007)("We can be triply sure as to *Conley's* meaning by examining the three Court of Appeals cases the *Conley* Court cited as support for the "accepted rule" that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt tat the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). Indeed, the Plaintiff's Complaint easily alleges that (a) his idea was novel; (b) it was made to the Defendants only; and (c) it was adopted and made use of. *Fleming, supra*, 107 N.J. Super. at 317, 258 A.2d at 157.

As the Court may not dismiss a complaint for failure to state a claim upon which relief can be granted unless it finds that the Plaintiff can prove no set of facts that would entitle him to relief, *Pryor v. Natl. Collegiate Athletic Assn.*, 288 F.3d 548, 559 (3d Cir. 2002), the Defendants' Motion should be denied.

1. The Defendants Conclusorily Argue that the Plaintiff's idea is Not Novel.

The Defendants attempt to spin figurative legal straw

into gold, or pre-answer dismissal into record-developed summary judgment. After citing elements that require the Court to examine the issue in depth (Defendants' Motion, p. 12, n. 2), the Defendants argue that the "Plaintiff's idea is not novel" because he "took his idea from his former employer, the Star Ledger, when it could no longer report on Newark-focused stories" (Defendants' Motion, p. 13). Remarkably, the Defendants suggest that, as a matter of law, the Plaintiff's idea could not be "novel" because of its origin and the fact that "almost every city, including Newark, has a dedicated magazine" – including certain examples (Defendants' Motion, p. 13). This is an argument adduced by Defense Counsel and unsupported by any case law; it would require the Court to dismiss a pleading based on an unsupported finding that an idea can only be "novel" in circumstances not alleged here.

A case the Defendants cite themselves for another purpose, *Vent v. Mars Snackfood US, LLC*, 611 F.Supp.2d 353 (S.D.N.Y. 2009), provides that an idea that is an adaptation of an existing idea or that embodies elements long in use may be novel if the adaptation or combination would lead to a significantly new and useful result. *Id.* at 338.

8

   2.   The Defendants Incorrectly Suggest That the
        Plaintiff's Complaint Fails to Allege
        Confidentiality.

The Defendants argue that the Plaintiff's claims must
be dismissed where it is not specifically alleged that the
Plaintiff shared his ideas with the Defendants in
confidence (Defendants' Motion, p. 13).  New Jersey law has
defined a fiduciary relationship, which defines
confidentiality, as one in which one party places trust and
confidence in another who is in a dominant or superior
position.  *F.G. v. MacDonell*, 150 N.J. 550, 696 A.2d 697,
703-04 (1997).

The Defendants suggest that dismissal is warranted
solely because the Plaintiff discussed his ideas with
entities and individuals aside from the Defendants
(Defendants' Motion, p. 14).  What this ignores, of course,
is that those discussions never got anywhere near as far as
with the Defendants, in which the Plaintiff clearly and
unmistakably developed and shared confidential business
plans and ideas with them.  That the Defendants devote
little more than conclusory allegations to the contention
that the Complaint fails to allege that the Plaintiff never
"took any precaution whatsoever to protect his idea" (*Id.*)
as purported support for dismissal underscores the lack of
support for the argument.

In any event, the Defendants' argument ignores the
Plaintiff's allegations that there was indeed a fiduciary
relationship between him and the Defendants (*see*, Count
XIV).  Such relationship would give rise to confidentiality
under *Vent*.

3.    The Plaintiff Alleges That the Defendants
      Converted Property Belonging to the Plaintiff.

The Defendants cite a lone case (*Scholes Elec. &
Communs. v. Fraser*, 2006 WL 1644920 (D.N.J.)), and mis-cite
it at that.  In fact, they misleadingly write that *Scholes*
stands for the proposition that when "non-tangible property
such as intellectual property is the subject of a
conversion claim," New Jersey courts require that a
plaintiff show something more than a contractual obligation
on the part of a defendant to pay the plaintiff to
establish conversion" (Defendants' Motion, p. 15).  In
actuality, that quotation refers to "money, as opposed to
tangible property, is the subject of a conversion claim,"
and the remainder of the quotation.  2006 WL 1655920 at 5.
The quote continues:  "The plaintiff must show that the
property was identifiably the plaintiff's property or that
the defendant was obligated to segregate such money for the
plaintiff's benefit."  *Id*.  As this case hardly involves

10

money, the Defendants' citation is erroneous, and the entirety of the argument fail.

**B. The Defendants' Regurgitated Argument Regarding Lack of Specificity Fails to Advance a Basis for Dismissal With Prejudice.**

For all of the reasons specified above, any inadequacies the Court finds with the Complaint should be the basis for, at most, dismissal without prejudice.

Beyond that, the Defendants claim that "none of the alleged misstatements and promises Plaintiff attributes to the Defendants constitute actionable fraud" because the "bulk of Plaintiff's [ ] claims simply recite [his] . . . efforts to pitch Profeta on his idea and describes the steps actions Plaintiff to respond to Profeta's concerns" (Defendants' Motion, p. 17). Then, looking at five (5) specific alleged statements made by them, the Defendants histrionically write that "even a tortured reading of the above statements . . . , all the above statements [sic] are promises to do something in the future" (Defendants' Motion, p. 18). In this vein, the Defendants' citation to case law is again seemingly purposefully off-point, where they remove language that helps their position from its other context: A "mere promise to do something in the future, subsequently unfulfilled, does not constitute actionable fraud" (Defendants' Motion, p. 18), appears in a

11

paragraph dealing "with the intention that the other party rely on" a statement that the uttering party either knew or did not know was false. *Dover Shopping Ctr., Inc. v. Cushman's Sons, Inc.,* 63 N.J. Super. 384, 391, 164 A.2d 785, 789 (App. Div. 1960). The court used the above language in relation to the lack of scienter, which is inapposite here, where the entire basis of the lawsuit is that the Defendants fraudulently induced the Plaintiff to produce ideas, work product, and mockups with the intention of using them for their own pursuits while cutting the Plaintiff out. In this regard, any and all of the statements designed to induce the Plaintiff into believing that the project would go forward, and that he should therefore share his ideas, when the Defendants knew that it would not indeed constitutes actionable fraud. Indeed, the cases to which the Defendants cite support actionable misrepresentation in this situation. *See, Capano v. Borough of Stone Harbor*, 530 F.Supp. 1254, 1264 (D.N.J. 1962)("However, a false representation of an existing intention, i.e., a false state of mind," with respect to a future event or action has been held to constitute actionable misrepresentation"); *Anderson v. Modica*, 4 N.J. 383, 392, 73 A.2d 49, 52-53 (1950)("While a statement of a matter in the future, if affirmed as a fact, may amount to

12

a fraudulent misrepresentation, it must amount to an assertion of fact, . . . ."); *Stolba v. Wells Fargo & Co.,* 2011 WL 3444078 (D.N.J.)("Similarly, a mere promise to do something in the future, which goes unfulfilled, does not constitute fraud unless the promisor had no intention of keeping such promise at the time it was made").  Not one of these cases supports the Defendants' argument here, where the Plaintiff's Complaint is cleanly alleging that the promised future events were indeed false at the time of their promise.

Nor is the Defendants' argument that "the specific statements . . . do not allege, with any particularity, statements that form the basis of fraud, negligence, and promissory estoppel" (Defendants' Motion, p. 19).  It is first worth noting that the Defendants seem to suggest that a complaint for *negligence* or *promissory estoppel* requires the same "partculaity" as does fraud.  This is inaccurate and unsupported by any case reference.  Secondly, however, the Defendants appear to circle the figurative drain when they claim that the statements are not actionable because they are "completely predicated on Profeta's decision to actual invest in and operate" the magazine (*Id.*).  If, as alleged in the Plaintiff's Complaint, the statements were made in a concerted effort to lure him into sharing his

ideas on the false promise that Profeta would invest in the
idea, fraud has been adequately alleged.

It is with the same negative tinge that the Defendants
contend the Complaint does not allege facts demonstrating
how or why the Defendants knew the statements were
misleading or false or would never fulfill their promises
(Defendants' Motion, pp. 19-20). This argument ignores
wholly the entirety of the Complaint, that alleges that the
Defendants *opened a magazine almost exactly like the one
derived by the Plaintiff* and that the Defendants
"abandoned" on the guise of lack of money. Indeed, the
occurrence of this event renders the Complaint far more
than a mere contention that the Defendants "knew" their
representations were false when made. The Defendants turn
a blind eye to that portion of the Complaint when they
allege that the Plaintiff "provides no factual basis . . .
to support his position that Profeta . . . knowingly did
not intend to work with" him at the time the statements
were made (*Id.* at p. 20). In fact, the Complaint alleges
that it was January 2013 when Profeta announced that he was
not comfortable risking $500,000 for the project
(Complaint, ¶48); and August 2013 when he learned that
Profeta published a first issue of the publication based
shockingly on the ideas and work product given and

14

performed by the Plaintiff (*Id.* at ¶50).  The basic fact is this:  In order to buy the Defendants' arguments here, one would have to conclude that, between January and August 2013, Profeta "suddenly" felt comfortable again in "risking" the money to front the magazine, decided (benignly) that he could not work with the Plaintiff, and innocently set up and opened the new magazine without the intention of misappropriating anything the Plaintiff had done.  This conclusion is contrary to what is warranted by the facts presented – that the Defendants falsely told the Plaintiff that they could not afford to go forward, when, months later, they did just that – without the Plaintiff.

Remarkably, the Defendants next complain that the Plaintiff's "conclusory statement that he reasonably relied on the Defendants' representations and actions" fails because he "does not allege why it was reasonable" (Defendants' Motion, p. 21).  One of the cases to which the Defendants cite, *Arcand v. Brother Intl. Corp.,* 673 F.Supp.2d 282 (D.N.J. 2009), however, specifies that a party may reasonably rely on a misrepresentation where the "facts to the contrary were not obvious or did not provide a warning, . . ." *Id.* at 305-06.

In *Hills v. Bank of America*, 2014 WL 4113131 (D.N.J.)(Defendants' Motion, p. 20), the plaintiffs simply

15

failed to plead knowledge and intent with particularity as to how the defendant acted knowingly and with intent that the they rely on the alleged misrepresentations.  It also remained unclear whether the defendant even made a material misrepresentation.  *Id.* at 9.

In *Stolba, supra*, 2011 WL 3444078 (Defendants' Motion, p. 21), the court stated that a promise to do something in the future that goes unfulfilled can constitute fraud where the "promisor had no intention of keeping such promise at the time it was made."  2011 WL 3444078 at 4.

The Defendants' citation to *Del Sontro v. Cendant Corp., Inc.,* 223 F.Supp.2d 563 (D.N.J. 2002)(Defendants' Motion, p. 21), is utterly off point.  There, the defendant "expressed its intention to settle with Plaintiff, but it clearly reserved the right to rescind its determination to provide such settlement in its sole and absolute discretion."  223 F.Supp.2d at 575.  Under such circumstances, in sharp contrast to those in this case, it "was legally unreasonable for Plaintiff to rely on such an indefinite intent to settle."  *Id.*

The Defendants will ask the Court to dismiss the Plaintiff's claims based on the fact that he "does not allege why it was reasonable to rely on" the Defendants' actions and statements spread over a long period of time

(Defendants' Motion, p. 21) based on an abridged reading of the Complaint.  The Defendants suggest that they would have raised no objection had the Plaintiff's Complaint lacked any detail of the lengthy relations between the Parties but contained the allegation that his reliance upon their promises was "reasonable," then they would raise no objection rings hollow.  Indeed, the Defendants' argument reminds of a focus on form rather than substance:  While the Plaintiff's Complaint substantively details why his reliance on the Defendants' actions and statements was reasonable, the Defendants complain that certain causes of action do not contain certain words or phrases.

Finally, the Defendants' argument that the claims against Kohn, Associates, and Radius should be dismissed because the Plaintiff does not allege that they made any misrepresentations or statements at all (*Id.*) is toothless. Firstly, the Defendants' fraudulent misrepresentations are imputable to their corporation (Radius and Associates). *See, e.g., Bondi v. Citigroup, Inc.,* 423 N.J. Super. 377, 405, 32 A.3d 1158, 1174 (App. Div. 2011)(in the corporate context, a manager's misconduct is usually imputed to the corporation).  Furthermore, the fraud claim alleges that Kohn was present for several meetings with the Plaintiff

17

about the project; meetings in which the alleged fraud was furthered as to the Plaintiff (Complaint, ¶¶68; 71).

### C. The Plaintiff's Contractual, Quasi-Contractual, and Breach of Duty Claims Are Adequate.

The Defendants next contend that the Plaintiff "somehow" claims that he "entered into an enforceable contract that the Defendants have allegedly breached" (Defendants' Motion, p. 22). While claiming that there is no actionable fraud because, *inter alia*, the alleged promises regarded future performance, which would have given rise to a breach of contract claim, the Defendants now do an about-face and argue that there was no contract either. According to the Defendants, their conduct gives rise to no cause of action whatever.

#### 1. There Was An Express or Implied Contract Between the Parties.

The Defendants hugely state that the "Complaint is completely devoid of any factual allegations that assert that a contract was formed between" the Parties (Defendants' Motion, p. 23). They argue that the "Complaint does not provide a single allegation . . . describing what terms were agreed to between the parties that would create a partnership" (*Id.*).

The Defendants resort to arguing law appropriate on a motion for summary judgment rather than to dismiss when

they cite *Fenwick v. Unemployment Comp. Commn,* 133 N.J.L.
295, 297-99, 44 A.2d 172 (1945)(Defendants' Motion, pp. 23-
24).   Indeed, in *Fenwick*, testimony had been given and the
"facts [we]re really not in dispute."   133 N.J.L. at 299.
Unsurprisingly, each one of the cases to which the
Defendants cite dealt with fully-developed factual records,
rendering their legalese inappropriate at this stage.   *See,*
*Eagan v. Gory*, 2009 WL 4833851, 1 (D.N.J.)(Defendants'
Motion, p. 24)(finding of facts and conclusions of law in
connection with parties' non-jury trial); *Presten v.*
*Sailer*, 225 N.J. Super. 178, 542 A.2d 7 (App. Div.
1988)(Defendants' Motion, p. 24)(reversing judgment of
Superior Court); *American Fire & Cas. Ins. Co. v. Manzo,*
347 N.J. Super. 100, 788 A.2d 925 (App. Div.
2002)(Defendants' Motion, p. 24)(order on summary
judgment).

Given the premature stage of this lawsuit, it is
disingenuous for the Defendants to advocate dismissal based
on failure to establish the *Fenwick* factors - all of which
are fact-sensitive and must be developed through litigation
and discovery.   Indeed, the Defendants fail to "allege
[that] a single *Fenwick* factor" must be alleged in a claim
for breach of a partnership agreement in order to survive
dismissal (c.f., Defendants' Motion, p. 24).   In fact, the

footnote the Defendants drop on Page 24 of their Motion underscores the impropriety of what they advance, as the burden of *establishing* a valid partnership falls on a plaintiff, rather than the burden of *alleging* each of the *Fenwick* elements (Defendants' Motion, p. 24, n. 6).

The Defendants give no case law support for their contention that the Plaintiff's claim fails because it "does not even allege any essential elements, such as what that compensation was, which Defendant was responsible for paying Plaintiff, or even the term of the compensation period" (Defendants' Motion, p. 24). The Defendants suggest that these are "essential elements," while trying to brush aside the allegations that the "essential elements" were a promised minority stake in the project (*Id.* at pp. 23-24). Given that they are attempting to dismiss the entirety of the Plaintiff's Complaint, it is relatively unsurprising that they advance claims such as missing "essential elements" without citing any case law supporting dismissal pre-answer.

Likewise, the Defendants cite no law whatever in support of the contention that dismissal is warranted because the Plaintiff "cannot" allege that any of the Defendants "accepted the unknown terms of partnership" (Defendants' Motion, p. 25). They disingenuously cite to

Paragraph 48 of the Complaint – the allegation referencing the date when Profeta backed out of the deal he made with the Plaintiff and (according to the Complaint) falsely claimed he could not front the capital to proceed with the idea. By that date, Profeta breached the contract he made with the Plaintiff; and did not, as the Defendants advocate, suddenly "reject" a proposed term on the table between the Parties.

The Defendants have advanced no law upon which to support their claim that the Plaintiff has not alleged the existence of any enforceable contract or partnership (Defendants' Motion, p. 25).

Ironically, a case the Defendants later cite for another proposition, *Paley v. Barton Sav. & Loan Assn,* 82 N.J. Super. 75, 196 A.2d 682 (App. Div. 1964), rallies against their argument here. "The mere fact that certain terms of an agreement may require construction by a court," it wrote, "does not establish that either of the parties to the agreement is without any obligation thereunder. If at all possible, a court will attach a sufficiently definite meaning to the terms of a bargain to make it enforceable,. . . ." 82 N.J. Super. at 83, 196 A.2d at 686.

> 2.   Since There Was a Contract, The Breach of Good Faith and Fair Dealing Claim Remains.

21

Even given heed to their argument, the Defendants impeach it in the very first quotation they give. "In order to state a claim for breach of the implied covenant," write the Defendants, "a plaintiff must *allege* that . . . a contract exists" (Defendants' Motion, p. 25) [*emphasis added*]. Here, the Plaintiff has alleged that such contract exists, regardless of whether the Defendants wish it weren't so. The Defendants' one-sentence argument that the Plaintiff's alleged failure to allege that a contract exists, thereby precluding the breach of the implied covenant, is befuddled by lack of enthusiasm, legal support, or accurate reflection of the Complaint (*c.f.*, Defendants' Motion, pp. 25-26).

3.   Plaintiff's Quasi-Contract Claim Floats

The Defendants next argue that the Complaint fails to allege even a viable quasi-contractual claim because it does not set forth (1) what payment the Plaintiff expected from the Defendants, or (2) whether the Defendants were aware that the Plaintiff expected to be paid (Defendants' Motion, p. 27). Failing to cite to any of the allegations of the unjust enrichment claim itself, the Defendants argue that that and the quantum meruit claim "merely recite the element of those claims and do not state any facts showing that the Defendants were aware" that the Plaintiff expected

payment (*Id.*).   Remarkably, the Defendants take yet again a
contradictory position from their earlier one, now
complaining that the claims recite a valid cause of action
but fail to *restate* the lengthy allegations from the
Complaint (incorporated into each claim by reference)
clearly establishing that the Plaintiff expected payment
and the Defendants anticipated paying him.

It is also worthy of note that *Mina Inv. Holdings,
Ltd. v. Lefkowitz*, 51 F.Supp.2d 486 (S.D.N.Y. 1999), to
which the Defendants cite in support of the proposition
that "conclusory allegations" are "insufficient"
(Defendants' Motion, pp. 26-27), involved a *second amended*
complaint.   Indeed, the plaintiffs there were "invited to
explain" their claims, but "failed to respond to this
invitation."   51 F.Supp.2d at 490.   If there is a perceived
or determined inadequacy in the claims here, there is no
reason why dismissal should be granted with prejudice.

The Defendants' citation to *New Jersey Carpenters
Health Fund v. Philip Morris, Inc.,* 17 F.Supp.2d 324
(D.N.J. 1998)(Defendants' Motion, p. 27), is mislaid, and
does not state that conclusory allegations will be
dismissed as insufficient.   There, the court found the
claim for unjust enrichment "too remote and speculative to
constitute a recoverable benefit" where it was based on the

idea that "the defendants may ultimately be found liable for the medical costs that the Funds ha[d] already paid." 17 F.Supp.2d at 344.

Lastly, the Defendants' citation to *Iwanowa v. Ford Motor Co.*, 67 F.Supp.2d 424 (D.N.J. 1999)(Defendants' Motion, p. 27), is a puzzlement.  While the court did not that conclusory allegations are not required to be accepted, the complaint in that case was not dismissed due to such allegations nor did it concern quasi-contractual claims.

The Defendants proceed to contend, without any legal support, that the Complaint fails because it does not set forth (i) what payment the Plaintiff expected from the Defendants; or (ii) whether the Defendants were aware that the Plaintiff expected to be paid (Defendants' Motion, p. 27).  Beyond that failure, the Defendants' claim is specious in that it willingly ignores that the entirety of the Complaint is based on the fact that the Plaintiff was expecting compensation and that the Defendants purported that they would pay him.

### D. The Plaintiff's Breach of Fiduciary Duty, Negligence, and Gross Negligence Claims Are Well-Pled.

In their effervescent attempt to erase the entirety

of the Plaintiff's claims, the Defendants argue that the
Plaintiff has not pled the existence of any actionable duty
upon the Defendants (Defendants' Motion, pp. 27-28).  The
Defendants misleadingly cite *Maertin v. Armstrong World
Indus., Inc.,* 241 F.Supp.2d 434, 461 (D.N.J.
2002)(Defendants' Motion, p. 28), for the suggestion that
an "arm's length negotiation, such as the parties'
negotiation . . . here, ordinarily fits none of the
categories of transactions where a higher" duty arises
(*Id.*).  There, the court was examining the "deliberate
suppression of a material fact" and the duty to disclose,
concluding that the "arm's length negotiation of a personal
injury settlement ordinarily fits none of these categories
of transaction" where the disclosure duty arises.  241
F.Supp.2d at 461-62.

> 1.   The Defendants Ask the Court to Conclude
>      That No Partnership Is Alleged.

The Defendants argue that the Plaintiff fails to
allege any facts establishing the existence of a fiduciary
relationship (Defendants' Motion, p. 29).  The Defendants
have failed to establish that the Plaintiff cannot prove
that no partnership existed (*Id.*).  Beyond that, the
Defendants remarkably ask the Court to find that the
Plaintiff - at this preliminary stage of the proceedings -

25

"does not *establish* the existence of a joint venture"
(*Id.*) [*emphasis added*].

The Defendants' citation to *Wingate Inns, Intl., Inc.
v. HighTech Inn.com, LLC*, 2009 WL 5216978
(D.N.J.) (Defendants' Motion, p. 29), is telling.  There,
dismissal of the fiduciary duty claim occurred after a
search of the record.  2009 WL 5216978 at 6.

The Defendants' suggestion that *Paley, supra*, stands
for the proposition that a "joint venture agreement does
not exist if its terms are so vague, indefinite, and
uncertain as to make it illusory and unenforceable"
(Defendants' Motion, p. 29), is puzzling.  *Paley* fails to
reference "joint venture" at all.  82 N.J. Super. at 82,
196 A.2d at 685.

Without any analysis or argument beyond, the
Defendants argue that the Plaintiff "fails to allege the
existence of an enforceable joint venture" (Defendants'
Motion, p. 30).  This argument fails.

> 2.   The Plaintiff's Negligence and Gross
>      Negligence Claims Are Well-Pled.

The Defendants next argue that the Plaintiff's claims
for negligence do not allege any facts showing how the
relationship between the Parties "was one where Defendants

owed a duty of disclosure to Plaintiff" (Defendants'
Motion, p. 31).

One of the flaws in the Defendants' argument is that
it is premised entirely and solely upon law dealing with
the failure to disclose information (*Id.* at p. 30). But
the Defendants' Negligence claim is not expressly premised
upon the alleged failure to disclose, but upon the
*misrepresentations* they made to the Plaintiff (Complaint,
¶¶117-118).

The Defendants hence mis-analyze both the Negligence
and Gross Negligence claims, the latter of which
specifically alleges that the Defendants owed the Plaintiff
the duty of, *inter alia*, not making profits off the
Plaintiff's ideas without compensating him (*Id.* at ¶129),
and breaching their duty by developing the Plaintiff's
ideas, earning monies thereon, and failing to compensate
him for them (*Id.* at ¶130).

Given the Defendants' misunderstanding of the
Negligence claims, their argument regarding dismissal
thereof is unavailing.

### E. The Plaintiff's Claim for Interference With Prospective Economic Advantage is Solid.

Once again, the Defendants cross figurative wires in

27

confusing what a party is required to allege and what he is required to *prove*. Write the Defendants: "New Jersey law [ ] requires that a plaintiff alleging tortious interference . . . present proof that but for the" defendant's actions, the plaintiff would have received the economic benefits (Defendants' Motion, pp. 31-32). Since this is a pre-answer Motion to Dismiss, there is no possibility that the Plaintiff is required to "prove" anything alleged in his Complaint.

Beyond that, the Defendants recycle their untethered argument that the "Plaintiff does not allege any actionable misstatement" as "all alleged statements" relate to future events (Defendants' Motion, p. 32). For the reasons set forth above, the Defendants' premise is faulty because the law they purport to cite does not so state.

The Defendants' contention that this claim fails because the Plaintiff "does not plead how Defendants' conduct was intentional and malicious" (Defendants' Motion, p. 32). Yet Paragraph 89 of the Complaint alleges that the Defendants acted in willful disregard of the Plaintiff's rights.

True to form, the Defendants fail to analyze the actual allegations themselves, which without doubt adequately allege a cause of action: The Defendants were

aware that the Plaintiff was marketing and could continue to market his ideas and services to competitors, and was in pursuit of business for the magazine (Complaint, ¶85); the Defendants intentionally and maliciously sought to prevent the Plaintiff from marketing his ideas and services to other entities or other entities or pursuing other business (*Id.* at ¶86); the Defendants falsely represented to the Plaintiff remuneration for his efforts should he entrust his ideas and provide his services to them and that he would be included in the magazine[1] (*Id.* at ¶87); the Defendants' false representation caused loss of the Plaintiff's prospective economic gain with other entities (*Id.* at ¶88).

The Defendants ignore the above allegations, but in particular Paragraph 89, in contending that the Plaintiff has "failed to allege a single fact demonstrating that any Defendant had any motive . . . to interfere with Plaintiff's business opportunities" (Defendants' Motion, p. 33). The Defendants also repeat their habit of removing portions from the Complaint and putting them in a light unfavorable to the Plaintiff and removed from the remainder

---

[1] This allegation goes directly to the Plaintiff's fraud claim, as it alleges that the Defendants made false representations to the Plaintiff in order to induce him to share his ideas; or that they entered into a contract with him pursuant to which they agreed that they would remunerate him for his work and ideas.

of the pleading.  Hence, they cite to Paragraphs 21-23 of the pleading, suggesting that the efforts the Plaintiff made during that time were not ones that the Defendants capitalized on and/or took for their own.  The Defendants' selective parsing of the Plaintiff's Complaint belies the strength of their Motion.

Finally, the Defendants suggest that the Plaintiffs pleading is insufficient because it does not "identify a single contract, opportunity, or other economic advantage" the Plaintiff believed was available to him (Defendants' Motion, p. 33).  Ignored by the Defendants is the very case law they cite a page earlier, which does *not* require that a plaintiff including in the "elements" of such claim anything other than what was alleged here.

The Defendants' citation to *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153 (3d Cir. 1993)(Defendants' Motion, p. 32), is again inappropriate.  There, the defendant argued "that the evidence does not satisfy this standard, inasmuch as none of the witnesses testified" in accord with such.  4 F.3d at 1168.  Here, at this premature stage, there can be no good faith argument that the Plaintiff has failed to adduce "proof" of any particular thing.

Likewise, the Defendants' citation to *MacDougall v. Weichert*, 144 N.J. 380, 677 A.2d 162 (1996)(Defendants'

Motion, p. 32), is inapposite because, there, the decision was one made on summary judgment.

And *Labus v. Navistar Inter. Transp. Corp.*, 740 F.Supp. 1053 (D.N.J. 1990)(Defendants' Motion, p. 32), noted that "determining whether the interference by the defendant was malicious, the <u>jury</u> must determine" the defendant's conduct.  740 F.Supp. at 1064 [<u>emphasis added</u>].

Exaggeratingly, the Defendants contend that the Plaintiff's Complaint only contains a "conclusory allegation" of maliciousness without "a single fact demonstrating that any Defendant had any motive, malicious or otherwise, to interfere" with the Plaintiff's opportunities (Defendants' Motion, p. 33).  This overstatement ignores the numerous facts demonstrating that the Defendants peppered the Plaintiff with promises of a joint venture, etc., with the intention that he rely on them to his detriment and forge business/economic relationships that they would ultimately usurp and benefit from on their own.

It holds little if any water that the Defendants dub it "inconsistent with other allegations in the Complaint" that the Defendants interfered "where [it] also alleges" that the Plaintiff pitched his idea to "dozens of other Newark stakeholders" (Defendants' Motion, p. 33).  This is

head-scratching; the "pitching" the Plaintiff did was pre-Defendants, when the Plaintiff was seeking out others who would occupy the position that the Defendants ultimately, falsely promised they would operate.  In any event, how his "pitching" his idea to others – others with whom he might have had an economic relationship – has anything to do with the Defendants' tortious interference (much less conflicts with it) is unknowable.

Lastly, the Defendants turn a blind eye to the obvious fact that the Plaintiff has identified *numerous* "economic advantage" that he would have gained had the Defendants not induced him into working with them, only to take advantage of that work and the Plaintiff's contacts and use them to advance their own interests (Defendants' Motion, p. 33).

**F.  The Plaintiff's RICO Claim Is Valid.**

First, to the extent that the Court agrees with the Defendants that the Plaintiff's RICO claim lacks any particular detail (Defendants' Motion, p. 35), dismissal without prejudice to the Plaintiff's right to replead is appropriate.

While the Defendants coin the phrase "garden variety civil litigation" with reference to the RICO claim (*Id.*), a Westlaw search for such phrase in a RICO case is telling. While the Defendants' use of the phrase would suggest that

32

"garden variety" claims cannot state a claim for a RICO violation, the Third Circuit has said just the opposite. In *Tabas v. Tabas*, 47 F.3d 1280 (1995), the court recognized that its "ruling mean[t] that RICO, with its severe penalties, may be applicable to garden-variety fraud cases, . . . ." *Id.* at 1296-97.  It further noted that it was bound "by the language of RICO itself and the Supreme Court's instruction that RICO is to be read broadly."  *Id.* at 1297.  In fact, it held, "the Supreme Court has consistently struck down efforts by courts of appeals to narrow RICO's scope."  *Id.*

Federal RICO is clearly not limited to "traditional" notions of organized criminal activity.  *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 243-49, 109 S.Ct. 2893, 2902-06, 106 L.Ed.2d 195, 210-13 (1989). Multiple schemes are <u>not</u> required to state a RICO claim. *H.J. Inc., supra,* 492 U.S. at 234 n. 2, 109 S.Ct. at 2898 n. 2.

The Defendants rest at least part of their argument on the failed contention that the "Plaintiff has failed to plead the[y] committed fraud or equitable fraud with sufficient particularity to survive a challenge under Rule 9(b)" (Defendants' Motion, p. 36).  They wholly ignore the well-settled, and above-briefed, notion that a complaint is

not to be dismissed with prejudice even if such failing is found.

The Defendants next inject into legal requirements the idea that the Plaintiff was required to identify other, unknown individuals allegedly defrauded by the Defendants; alleged fraudulent statements; the "context" in which statements were made; and the time, date, and location of such statements (Defendants' Motion, p. 36). They have, not surprisingly, cited no law whatever to support the idea that a RICO claim requires such particulars; nor, frankly, does it make sense that the Plaintiff would have to. How any plaintiff would be expected to know details of other schemes the defendants allegedly participated in before any discovery has been conducted is a puzzlement. Indeed, when pleading a claim for fraud, a plaintiff is not required to "plead the date, place or time of the fraud, so long as plaintiff uses an alternative means of injecting precision with some measure of substantiation into their allegations." *Rolo v. City Inv. Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998).

In any event, the Defendants' dogmatic reading of each claim in the Complaint fails against the balanced case law. In evaluating the applicability of a Rule 12(b)(6) motion to dismiss a RICO claim, for example, courts look to *Sedima*

*S.P.R.L. v. Imerex Co.,* 473 U.S. 479 (1985), in which the Court stated that "RICO is to be read broadly" in light of the Congressional "admonition that RICO is to be liberally construed to effectuate its remedial purpose" that is "nowhere more evident than in the provision of a private action for those injured by racketeering." *Id.* at 497-89.

The Defendants' argument is further belied by *McCullough v. Shearson Lehman Bros., Inc.,* 1998 WL 23008 (W.D. Pa.), where the court denied the defendants' motion to dismiss the RICO claims for failure to allege a pattern of racketeering activity and to require a more specific statement. *Id.* at 4. The "plaintiff alleged fraudulent activity with sufficient particularity." *Id.* There, like here, the "Defendants' exact activities with third parties cannot be ascertained prior to discovery." *Id.*

The Defendants' argument that the Complaint fails to allege "that the defendant conduct or participate in the affairs of the alleged enterprise" (Defendants' Motion, p. 37) mistakenly cites to *State v. Ball*, 141 N.J. 142, 661 A.2d 251 (1995). There, the court concluded that the New Jersey statute "does not contain a requirement that in order to conduct or participate in an enterprise, a defendant must be found to exercise responsibilities" of

operation or management. *Id*. at 267-68.  The Court

explained:

> . . . . We hold that under N.J.S.A. 2C:41-2c, a person
> is "employed by or associated with an enterprise" if
> he or she has a position or a functional connection
> with the enterprise that enables him or her to engage
> or participate directly or indirectly in the affairs
> of the enterprise.  Further, we hold that to conduct
> or participate in the affairs of an enterprise means
> to act purposefully and knowingly in the affairs of
> the enterprise in the sense of engaging in activities
> that seek to further, assist or help effectuate the
> goals of the enterprise.  Those activities may include
> acts that are managerial or supervisory or exercise
> control and direction over the goals, or over the
> methods used to achieve the goals, of the enterprise.
> Participatory conduct or activities also may be found
> in acts that are below the managerial or supervisory
> level, and do not exert or direction over the affairs
> of the enterprise, as long as the actor, directly or
> indirectly, knowingly seeks to carry out, assist,
> or further the operations of the enterprise or
> otherwise seeks to implement or execute managerial
> or supervisory decisions.

*Id*. at 175, 268.  Here, there is no argument that the

Defendants were not associated with an enterprise – to wit,

the enterprise to open up a publication using the

Plaintiff's ideas and resources without paying him.

It is disingenuous for the Defendants to claim that

the Plaintiff has alleged "no facts showing which

Defendants acted purposely and knowingly" (Defendants'

Motion, p. 37) when the Complaint cleanly alleges that all

of the Defendants were acting in furtherance of the

enterprise.  The Defendants turn a blind eye to the

Complaint as a whole, which obviously alleges that the
Defendants all conspired to steal the Plaintiff's ideas and
work product.

As such, the Defendants' attach on the RICO claim
fails.

G.   **The Plaintiff is Entitled to Injunctive Relief.**

The Defendants' final argument is that "there is no
allegation of imminent harm in the Complaint" and,
therefore, injunctive relief is not appropriate
(Defendants' Motion, p. 38).  But the Defendants fail to
analyze whatever the allegations of Count XVIII, stating
that the Plaintiff revealed numerous confidential ideas to
the Defendants (Complaint, ¶174), that the Plaintiff has
reason to believe the Defendants have taken strides to or
will develop any of the ideas (*Id.* at ¶177), and, should
the Defendants do so, the Plaintiff will be irreparably
harmed – to wit, his ideas will be stolen (*Id.* at ¶179).
This confidential information may be protected via
preliminary injunction to the extent that it is on par with
a trade secret.  *See, e.g., Bimbo Bakeries USA, Inc. v.
Botticella*, 613 F.3d 102, 118 (3d Cir. 2010)(District Court
did not abuse discretion in determining stronger remedy
needed in interim to protect plaintiff from imminent,
irreparable harm enacted by disclosure of trade secret);

37

*Apollo Technologies Corp. v. Centrosphere Indus. Corp.*, 805 F.Supp. 1157, 1209 (D.N.J. 1992). Here, there is most certainly pled imminent harm given the unique nature of the Plaintiff's work product, ideas, and contacts, which is a far cry from "purely economic injury, compensable in money, . . . ." (Defendants' Motion, p. 38). Thus, the Defendants' Motion to Dismiss the Injunctive Relief count should be denied.

### Conclusion

For the reasons set forth above, the Defendants' Motion to Dismiss should be denied.

Date: 12/14/15

By: _____
James C. DeZao, Esq.
Law Offices of James C. DeZao, P.A.
322 Route 46 West, Suite 120
Parsippany, New Jersey 07054
(973) 808-8900
*jim@dezaolaw.com*
 Attorneys for Plaintiffs