UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHILIP READ | Honorable Kevin McNulty, USDJ |
| Plaintiff, | Civ Action No. 2:15-cv-02637 |
| vs. | |
| PAUL PROFETA; PAUL V. PROFETA & ASSOCIATES; RADIUS: BRICK CITY & BEYOND; STEVEN COLEMAN; and WILLIAM KOHN | Return Date: January 19, 2016 |
| Defendants. | **Oral Argument Requested** |

### REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
Attorneys for Defendants

**On the Brief:**
   Bruce H. Nagel, Esq.
   Bradley L. Rice, Esq.

## *TABLE OF CONTENTS*

PREFATORY STATEMENT ..................................................................................1

ARGUMENT ..........................................................................................................2

I. THE COMPLAINT FAILS TO ASSERT CLAIMS AGAINST EACH INDIVIDUAL DEFENDANT AS REQUIRED BY RULE 8(A) AND 9(B) ..............................................................................................................2

II. PLAINTIFF'S MISAPPROPRIATION CLAIM DOES NOT ALLEGE THE EXISTENCE OF A NOVEL OR CONFIDENTIAL IDEA ........................3

    A. The "Downtowner" is not a Novel Idea as a Matter of Law.....................3

    B. Plaintiff did not take any Effort to Ensure that His Idea was Confidential...............................................................................................4

III. PLAINTIFF'S FRAUD AND MISREPRESENTATIONS CLAIMS CANNOT SURVIVE A MOTION TO DISMISS ................................................5

    A. Plaintiff fails to Plead Fraud with Sufficient Particularity.......................5

    B. Plaintiff's Claims for Negligence, Gross Negligence, and Promissory Estoppel are also Deficient ...................................................8

    C. PLAINTIFF'S CONTRACTUAL CLAIMS DO NOT ALLEGE THE EXISTENCE OF ANY AGREEMENT BETWEEN PLAINTIFF AND DEFENDANT, WHETHER EXPRESS, IMPLIED OR EQUITABLE ........................9

        A. Plaintiff Fails to State Claims for Breaches of Contract and Fiduciary Duty .........................................................................9

        B. Plaintiff Fails to State Quasi Contractual Claims........................11

    D. PLAINTIFF'S CONCLUSORY TORTIOUS INTERFERENCE CLAIMS FAILS .................................................................................................11

    E. PLAINTIFF'S RICO CLAIM CANNOT PROCEED ........................................13

    F. PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF ..........................15

    G. PLAINTIFF SHOULD NOT BE GIVEN LEAVE TO REPLEAD ....................15

CONCLUSION .................................................................................................................15

## *TABLE OF AUTHORITIES*

**CASES**     *PAGE(S)*

Balthazar v. Atlantic City Med. Ctr.,
  279 F. Supp. 2d 574 (D.N.J. 2003) .......................................................................... 14

Cal. Pub. Employees Ret. Sys. v. Chubb Corp.,
  394 F.3d 126 (3d Cir. 2004) ....................................................................................... 8

Casper v. Paine Webber Group, Inc.,
  787 F. Supp. 1480 (D.N.J. 1992) ............................................................................. 14

Chemtech Int'l, Inc. v. Chem., Injection Techs., Inc.,
  170 Fed. App'x 805 (3d Cir. 2006) ...................................................................... 9, 10

City of Roseville Emps. Ret. Sys. V. Sterling Fin. Corp.,
  963 F. Supp. 2d 1092 (E.D. Wa. 2013) ..................................................................... 7

Dana Transp., Inc. v. Ableco Fin., LLC,
  2005 WL 2000152 (D.N.J. Aug. 17, 2005) ............................................................. 12

Del Sontro v. Cendant Corp., Inc.,
  223 F. Supp. 2d 563 (D.N.J. 2002) ............................................................................ 7

Dow Chem. Co. v. Exxon Corp.,
  30 F. Supp. 2d 673 (D.N.J. 1998) ............................................................................ 14

Ely v. Perthuis,
  2013 WL 411348 (S.D.N.Y. Jan. 29, 2013) ............................................................ 10

GKE Enters., LLC v. Ford Motor Credit Co. USA,
  2010 WL 2179094 (D.N.J. May 26, 2010) .............................................................. 10

Goldberg v. Egg Harbor Twp. Sch. Dist.,
  2013 WL 1314425 (D.N.J. Mar. 28, 2013) .............................................................. 13

H.J. Inc. v. Northwestern Bell Tel. Co.,
  492 U.S. 229 (1989) ................................................................................................. 14

Harris v. Perl,
  41 N.J. 455 (1964) ................................................................................................... 12

In re Schering-Plough Corp. Intron/Temodar Consumer Class Action,
  2009 WL 2043604 (D.N.J. July 10, 2009) .......................................................... 8, 15

Kachmar v. SunGard Data Sys., Inc.,
 109 F.3d 173 (3rd Cir. 1997) .................................................................................. 12

Kohn. See Precision Associates, Inc. v. Panalpina World Transp. (Holding) Ltd.,
 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011) ............................................................ 3

Lieberson v. Johnson & Johnson Consumer Cos.,
 865 F. Supp. 2d 529 (D.N.J. 2011) ........................................................................... 5

MDNet, Inc. v. Pharmacia Corp.,
 147 Fed App'x 239 (3d Cir. 2005) ........................................................................... 8

Mu Sigma, Inc. v. Affine, Inc.,
 2013 WL 3772724 (D.N.J. July 17, 2013) ............................................................. 12

Oran v. Stafford,
 226 F.3d 275 (3d Cir. 2000) ................................................................................... 15

Oran v. Stafford,
 34 F. Supp. 2d 906 (D.N.J. 1999) .......................................................................... 15

Ouaknine v. MacFarlane,
 897 F.2d 75 (2d Cir. 1990) ...................................................................................... 6

Paley v. Barton Sav. & Loan Assoc.,
 82 N.J. Super. 75 (App. Div. 1964) ................................................................. 10, 11
report and recommendation adopted,
 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012) ........................................................ 3

Roth v. First Nat. State Bank of N.J.,
 169 N.J. Super. 280 (App. Div. 1979) ..................................................................... 3

Sharp v. Patterson,
 2004 WL 2480426 (S.D.N.Y. Nov. 3, 2004) ........................................................... 3

United States v. Turkette,
 452 U.S. 576 (1981) ............................................................................................... 14

Wexner v. First Manhattan Co.,
 902 F.2d 169 (2d Cir. 1990) .................................................................................... 7

## PREFATORY STATEMENT

Plaintiff's[1] opposition brief (the "Opposition Brief" or "Opp. Br.") asks that the Court ignore the Federal Rules of Civil Procedure. Rather than defend the conclusory allegations in the Complaint, Plaintiff argues that it is premature to dismiss the Complaint because this is **only** a "pre-answer Motion to Dismiss." But even at the pleading stage, while not having to prove each element of each claim he asserts, **Plaintiff is required to set forth specific facts demonstrating each element of each claim asserted against each defendant**. Here, every claim suffers from serious pleading deficiencies that cannot be cured by any amendment.

The bulk of Plaintiff's claims are asserted against the "Defendants" generally and, thus, fail to put each Defendant on notice as to what acts each Defendant committed or why that particular Defendant is liable for any specific claim. Separately, even if Plaintiff had not collectively plead his Complaint, each of the thirteen claims Plaintiff asserts fails to set forth specific facts that demonstrate a plausible claim against any of the Defendants: The Complaint does not plead facts that support a plausible inference that

(i)   his "idea" for the "Downtowner" was novel or confidential;

(ii)  Defendants made any misrepresentation (as opposed to contingent expressions of interest), with an intent to defraud, and that Plaintiff was reasonable on relying on Defendants' tentative statements of support during the parties' negotiation;

(iii) any contract or other agreement existed entitling Plaintiff to any "minority stake" or any compensation for pitching his idea;

(iv)  Defendants intentionally interfered with prospective business opportunities;

(v)   Defendants' conduct warrants the application of New Jersey's RICO statute; or

(vi)  Defendants are entitled to injunctive relief.

---

[1] Capitalized Terms shall have the same meaning ascribed to them as set forth in the Brief in Support of Defendants'' Motion to Dismiss Plaintiff's Complaint, dated October 30, 2015 (the "Moving Brief" or "Mov. Br.").

1

Plaintiff's Opposition Brief does not change the Complaint's deficiencies; it doubles-down on the same conclusory allegations and legal conclusions that Defendants address in their Moving Brief. As such, the Complaint should be dismissed with prejudice.

## ARGUMENT

### I. THE COMPLAINT FAILS TO ASSERT CLAIMS AGAINST EACH INDIVIDUAL DEFENDANT AS REQUIRED BY RULE 8(A) AND 9(B)

In his Opposition Brief, Plaintiff claims that the Complaint does not collective plead his claims against "all defendants;" rather, Plaintiff contends that because his Fraud Claims[2] allege that Profeta and Coleman made purported misrepresentations and that Kohn attended a single meeting at Associates, the Complaint does not collectively plead.[3] Plaintiff's own Complaint belies that argument. For example, the contractual and quasi contractual claims are asserted against the Defendants generally and do not allege which defendant(s) were the counter-parties to the purported contracts he is seeking to enforce. The same is true for virtually every other claim asserted in the Complaint. Thus, aside from the two fraud claims as they relate to Profeta and Coleman, which should be dismissed for a litany of other reasons, every other claim asserted by Plaintiff should be dismissed because it fails to specifically identify which defendant is responsible for what specific wrong. See Mov. Br. at 9.

Plaintiff's Opposition Brief also asserts that his claims against Kohn, Associates, and Radius are proper despite the fact that the Complaint does not contain a single specific allegation against any of these Defendants aside from the collective allegations. Rather, Plaintiff's opposition papers assert that Kohn is a proper defendant because he attended certain meetings with Profeta

---

[2] Defendants assume that the "inter alia" Plaintiff references also include the virtually identical allegations contained in Count XV (Compl. ¶¶ 152-172).

[3] There is not a single allegation that Kohn made any representation to Plaintiff, would be a party to any contract with Plaintiff, or took any action at all that affected Plaintiff in any manner.

2

and Coleman, but that alone, however, is not sufficient to sustain any of the claims as against Kohn. See Precision Associates, Inc. v. Panalpina World Transp. (Holding) Ltd., 2011 WL 7053807, at *23 (E.D.N.Y. Jan. 4, 2011) report and recommendation adopted, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012) ("[a]llegations that 'allude to nothing more than Defendants' participation in meetings, ... and ... defendants 'reached agreement during these meetings ...' do not satisfy Twombly.").

Similarly, Plaintiff's claims against Associates and Radius, presumably based on a respondent superior theory, are also deficient. An employer is only vicariously liable for the actions of its agents where such actions were taken within the individual defendant's scope of employment. Roth v. First Nat. State Bank of N.J., 169 N.J. Super. 280, 286 (App. Div. 1979). Here, the Complaint makes clear that Profeta's interest in the "Downtowner" was a far departure from his day-to-day business at Associates. (See, e.g., Compl. ¶ 20). Moreover, it is impossible that Radius is vicariously liable for Coleman or Profeta's purported misconduct because Radius was not in existence during the period the alleged wrongs occurred. (Compl. ¶ 50).

## II. PLAINTIFF'S MISAPPROPRIATON CLAIM DOES NOT ALLEGE THE EXISTENCE OF A NOVEL OR CONFIDENTIAL IDEA

### A. The "Downtowner" Is Not A Novel Idea As a Matter of Law

Plaintiff's idea, by his own admission (Compl. ¶¶ 14-15), is not unique; thus, all Plaintiff can do is point out that certain cases cited in the Moving Brief were decided at a latter procedural stage, posit that it is premature for the Court to hold that the "Downtowner" is not a novel idea as a matter of law, and argue that he should be entitled to replead. Courts, however, have routinely granted motions to dismiss where an idea is "so unoriginal or lacking in novelty" that the "court may conclude, as a matter of law, that the idea lacks ... the originality necessary to support a misappropriation claim." Sharp v. Patterson, 2004 WL 2480426, at *9 (S.D.N.Y. Nov. 3, 2004)

3

(quotation omitted). As set forth in the Moving Brief, the "Downtowner" cannot be considered novel under any measure. (Mov. Br. at 11-13).

Moreover, while relying on <u>Vent</u> for the proposition that an idea may be novel if "adaptation or combination would lead to a significantly new and useful result" (Opp. Br. at 8 (citing <u>Vent v. Mars Snackfood US, LLC</u>, 611 F. Supp. 2d 333, 338 (S.D.N.Y.) aff'd, 350 F. App'x 533 (2d Cir. 2009)), Plaintiff does not explain how the "Downtowner" is an adaption or combination of any idea that would lead to such a new and useful result. Accordingly, the Court should dismiss Plaintiff's misappropriation of intellectual property and conversion claims.

**B.    Plaintiff Did Not Take Any Effort to Ensure That His Idea Was Confidential**

Even if Plaintiff's idea were novel, Plaintiff must also plead that he took efforts to keep the idea confidential. In the Opposition Brief, Plaintiff relies on a purported "fiduciary relationship" between the parties to demonstrate confidentiality. But, as set forth in the Moving Brief, no fiduciary relationship ever existed between Plaintiff and any Defendant. (Mov. Br. at 28-29).

While Plaintiff relies on <u>Vent</u> in an effort to show that his idea is novel, Plaintiff ignores the other holding in <u>Vent</u>, where the Court dismissed plaintiff's claim for lack of confidentiality:

> Ms. Vent's claim that she and O'Donnell had a fiduciary relationship is unmeritorious. Ms. Vent ... cold-called O'Donnell to pitch an arms-length advertisement transaction. This was not a special relationship based on trust and confidence. ... Ms. Vent and O'Donnell did not have a long-standing business relationship, O'Donnell did not agree to serve as a fiduciary, nor did O'Donnell have any special knowledge or skills or occupy a superior position.

611 F. Supp. 2d at 341 (quotation and citation omitted).

The same is true here. The Complaint alleges Plaintiff pitched his idea to Profeta unsolicited. (Compl. ¶ 13). Plaintiff does not allege any facts showing the existence of a fiduciary relationship that would protect his idea: There was no prior business relationship between Plaintiff

4

and any Defendant[4]; Plaintiff does not allege that any Defendant agreed to serve as a fiduciary; and the Complaint admits that Profeta did not have the special knowledge or skills required to establish a fiduciary relationship (Compl. ¶ 18).

Plaintiff also acknowledges his widespread disclosure of the "Downtowner." (Mov. Br. at 13-14 (citing Compl. ¶¶ 21-24)). Nonetheless, Plaintiff believes that because these discussions "never got anywhere as far as with the Defendants" they should be ignored. As set forth in Defendants Moving Brief, it is Plaintiff's obligation to plead the efforts he took to keep his idea "confidential." See Vent, 611 F. Supp. 2d at 339. Plaintiff failed to do so.

As such, Plaintiff's claims for misappropriation and conversion must be dismissed.

### III. PLAINTIFF'S FRAUD AND MISREPRESENTATIONS CLAIMS CANNOT SURVIVE A MOTION TO DISMISS

#### A. Plaintiff Fails to Plead Fraud With Sufficient Particularity

Plaintiff asks the Court to ignore Rule 9(b) and deny Defendants' motion based solely on conclusory allegations that a failed negotiation constitutes fraud merely because Defendants entered the same business eight months after declining to back Plaintiff's "Downtowner." In Federal Court, however, such conclusory and speculative allegations cannot withstand Rule 9(b)'s pleading requirements. See, e.g., Lieberson v. Johnson & Johnson Consumer Cos., 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (citations omitted) ("[T]he Third Circuit has advised that, at a minimum, a plaintiff must support allegations of fraud with all the essential factual background that would accompany "'the first paragraph of any newspaper story' -- that is, the 'who, what, when, where and how' of the events at issue.").

---

[4] At most, the only relationship between Plaintiff and Profeta concerned Plaintiff's interview of Profeta on an unrelated matter (Compl. ¶ 10-11).

5

Here, Plaintiff attempts to rectify its pleading failure by merely insisting he has properly pled his fraud claims. Indeed, Plaintiff spends pages of his Opposition Brief rehashing the same "misrepresentations" contained the Complaint. (Opp. Br at 14-15). But as set forth in the Moving Brief, Plaintiff's allegations consist only of the typical conditional activities one would expect of a negotiation for potential investors in a new business, which include the Defendants

(i)   expressing enthusiasm about the idea;

(ii)  requesting that Plaintiff provide a business plan demonstrating profitability;

(iii) requiring evidence of advertising support for Plaintiff's magazine given the risky nature of the publishing industry; and

(iv)  requiring affordable office space.

(Compl. ¶¶ 64-77).

Each of these allegations are not actionable as they represent conditional statements contingent on a future event: Profeta's agreement to fund Plaintiff's idea. (Mov. Br. at 18-19). As such, these allegations cannot form the basis of a fraud claim unless specific factual allegations are plead demonstrating that (i) Defendants intended to defraud Plaintiff at the time the representations were made and (ii) Plaintiff reasonably relied on such representations. Here, Plaintiff cannot succeed on either prong.

Plaintiff's opposition brief states that the Defendants fraudulently induced Plaintiff as part of "a concerted effort to lure" Plaintiff into divulging his ideas (which Plaintiff also alleges he did so freely in pitching the Defendants) and that Defendants had no intent to fulfill these purported "promises" or representations at the time they were made. (Opp. Br. at 13-14). But while it is true that Rule 9(b) allows intent to be averred generally, a plaintiff must provide some factual basis for conclusory allegations of knowledge or intent. See e.g. Ouaknine v. MacFarlane, 897 F.2d 75, 81 (2d Cir. 1990). The ability to plead intent generally "must not be mistaken for license to base

6

claims of fraud on speculation and conclusory allegations." Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990). Yet speculation, bare legal conclusions, and purported fraud in hindsight is all that Plaintiff offers.

Plaintiff's distinctions of Defendants' case law recite only black letter law but Plaintiff does not show why his Complaint sufficiently alleges a particularized fraudulent intent by the Defendants at the time the misrepresentations were made. For example, Plaintiff states that Stolba v. Wells Fargo & Co., 2011 WL 344078 (D.N.J.) stands for the proposition that a fraud claim concerning contingent representations can survive a motion to dismiss if the "promisor had no intention of keeping such promise at the time it was made." (Opp. Br. at 13). However, the Court in Stolba dismissed the plaintiff's claim because the parties' purported agreement was contingent and "there are no well pled allegations to the effect that Wells Fargo had no intention of modifying plaintiffs' loans at the time both parties entered into discussions." 2011 WL 344078 at *4.[5]

Here, the only fact alleged that could infer Defendants' fraudulent intent is that Defendants opened Radius eight months after deciding not to invest in Plaintiff's idea. But like Stolba, Plaintiff here does not allege how Defendants intended to defraud Plaintiff **at the time** the Defendants were negotiating with Plaintiff. Rather, Plaintiff's speculative theory is the exact type of "fraud by hindsight" that courts routinely dismiss. See, City of Roseville Emps. Ret. Sys. V. Sterling Fin. Corp., 963 F. Supp. 2d 1092, 1109 (E.D. Wa. 2013) ("Without evidence of

---

[5] Similarly, despite stating that the holding in Del Sontro v. Cendant Corp., Inc., 223 F. Supp. 2d 563 (D.N.J. 2002) is "off point," (Opp. Br. at 16), Plaintiff does not explain in any manner why his claim for promissory estoppel should withstand the motion to dismiss where his own Complaint demonstrates that at no time did Profeta ever agree to fund the "Downtowner."

7

contemporaneous falsity, an allegation of a misleading representation, which entirely rests on later contradictory statements, constitutes an impermissible attempt to plead fraud by hindsight.").[6]

Plaintiff is also mistaken that he does not need to plead "reasonable reliance" with particularity because it is somehow self-evident as the "Complaint substantively details why [Plaintiff's] reliance ... was reasonable" and Defendants are only complaining that the Complaint omits "certain words and phrases." (Opp. Br. at 17). But it is specifically those "words and phrases" that would demonstrate Plaintiff's purported reasonable reliance. See e.g., MDNet, Inc. v. Pharmacia Corp., 147 Fed App'x 239, 245 (3d Cir. 2005) (affirming dismissal of fraud claim "continued negotiation of the September 2000 Proposed Contract, defining many of the essential terms of an agreement, made reliance on tentative oral statements unreasonable"). Thus, all of Plaintiff's fraud-based claims must be dismissed.

### B. Plaintiff's Claims For Negligence, Gross Negligence, and Promissory Estoppel Are Also Deficient

Because Plaintiff's claims for negligence, gross negligence and promissory estoppel are grounded in the very same "factual" allegations that underlie Plaintiff's fraud claims, these claims are subject to Rule 9(b)'s heightened pleading standard. See Cal. Pub. Employees Ret. Sys. v. Chubb Corp., 394 F.3d 126, 160-63 (3d Cir. 2004); In re Schering-Plough Corp. Intron/Temodar Consumer Class Action, 2009 WL 2043604, at *32-33 (D.N.J. July 10, 2009) (applying Rule 9(b) to claim for fraud and negligent misrepresentation). Thus, as set forth in Defendants' Moving Brief

---

[6] Moreover, Plaintiff ignores the fact that his own Complaint alleges that it was Profeta who enabled Plaintiff to engage with Messrs. Berson and Giantomassi to access suitable office space and approach advertisers. (Compl. ¶¶ 35, 38). Thus, the only reasonable interpretation of the Complaint's allegations is that Plaintiff was unable to convince Profeta to invest in the "Downtowner" and Profeta took his funds (and relationships) elsewhere.

8

Plaintiff has not alleged either an actionable misstatement or reasonable reliance and, as such, Plaintiff's negligence, gross negligence[7], and promissory estoppel claims must be dismissed.

Separately, claims for negligent misrepresentation and gross negligence require that the defendant breach some duty owed to the plaintiff. In his Opposition Brief, Plaintiff essentially admits that it cannot establish any duty of disclosure owed by the Defendants and instead asserts that the Defendants owed him "the duty of, *inter alia*, not making profits off the Plaintiff's idea without compensating him." (Opp. Br. at 27). Yet Plaintiff does not cite a single case supporting the imposition of that duty on Defendants. The law is clear, there must be some special relationship or other factual circumstance that gives rise to any duty imposed on a defendant outside of the contours of any purported promises that were made by the defendant. See TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC, 2012 WL 3853900, at *5 (D.N.J. Aug. 5, 2014) (dismissing claims for failure to allege independent duty outside the contractual terms plaintiff sought to enforce). Here, Plaintiff does not allege such a relationship.

### C. PLAINTIFF'S CONTRACTUAL CLAIMS DO NOT ALLEGE THE EXISTENCE OF ANY AGREEMENT BETWEEN PLAINTIFF AND DEFENDANT, WHETHER EXPRESS, IMPLIED, OR EQUITABLE

#### A. Plaintiff Fails to State Claims For Breaches of Contract and Fiduciary Duty

Plaintiff has not plead the existence of a contractual relationship between Plaintiff and any Defendant, yet he asks the Court to create a partnership agreement for him instead. But as the Third Circuit has made clear, "[w]hile a plaintiff may rely on the court to draw all reasonable inferences in his favor at the Rule 12(b)(6) stage, a plaintiff who relies on the court to fill in the blanks for all of the information missing in his complaint does so at his peril." Chemtech Int'l, Inc. v. Chem.,

---

[7] Nor has Plaintiff alleged a single fact that would constitute the willful and wanton conduct required to plead gross negligence.

9

Injection Techs., Inc., 170 Fed. App'x 805, 808 (3d Cir. 2006). A court is not "required to credit bald assertions and legal conclusions in the complaint." Id. Thus, while a plaintiff does not need to provide all of the details of a breach of contract claim in its pleading, it must at least supply the defendant with basic information that will notify the defendant which contracts are at issue and how plaintiff claims they were breached. See Id. at 808 (affirming dismissal of breach of contract claim under Rule 12(b)(6) when plaintiff did no "more than simply assert [defendant] 'breached' ... a contract"); GKE Enters., LLC v. Ford Motor Credit Co. USA, 2010 WL 2179094, at *3 (D.N.J. May 26, 2010).

In his Opposition Brief, Plaintiff requests that the Defendants' motion to dismiss be denied because, while he will have to establish the essential terms of this purported contractual relationship at some point in the future, he does not have to allege the existence of any of those terms now. To further this position, Plaintiff "distinguishes" Fenwick and the other cases Defendants rely on (Mov. Br. at 23-24 and 28-29) solely on the basis that those cases were dismissed at a later procedural stage than a motion to dismiss (Opp. Br. at 19, 25-26).

Like Plaintiff's defense of his fraud-based claims, Plaintiff's position here once again asks that this Court ignore the Federal Rules of Civil Procedure. But Plaintiff's pleading must adhere to, at a minimum, Rule 8(a), which requires that a party asserting the existence of a partnership or joint venture allege, at the pleading stage, each element of the partnership or venture to avoid dismissal. See, e.g., Ely v. Perthuis, 2013 WL 411348 at **5-6 (S.D.N.Y. Jan. 29, 2013) (relying on elements required to establish existence of partnership or joint venture in dismissing breach of partnership agreement claim). Plaintiff, by his own admission, has not done so.

Plaintiff's reliance on Paley v. Barton Sav. & Loan Assoc., 82 N.J. Super. 75 (App. Div. 1964) is unavailing. As the Court in Paley observed, while courts can "fill" in the blanks for

10

certain terms of an otherwise enforceable contract, it will not create a contract where there are no allegations setting forth even the most basic terms of an agreement. Id. at 83 ("The significant consideration here is whether or not the parties intended to enter into a binding agreement. It is manifest that such an intention was present on the part of both parties.").[8]

Plaintiff also asks that Court to accept its barren contractual allegations as the basis to assert a breach of fiduciary duty claim. (Opp. Br. at 26). But like its contract claims, the failure to allege the elements of a partnership or special relationship warrants dismissal. See Mov. Br. at 27-28.

### B. Plaintiff Fails to State Quasi Contractual Claims

Contrary to Plaintiff's belief, Defendants' basis to dismiss Plaintiff's quasi-contractual claims is not the fact that Plaintiff did not recast its earlier allegations concerning the parties' negotiation; rather, the Complaint simply does not allege the required elements of each quasi-contractual claim Plaintiff asserts. The Complaint's only allegations to support these claims are that Profeta purportedly "acknowledged the Plaintiff's statement that he wanted to retain a minority stake in the magazine." (Complaint ¶ 39). An acknowledgment of Plaintiff's request for an unknown minority stake is a far cry from an agreement to compensate Plaintiff. Plaintiff does not allege what value that "minority stake" was to encompass or that there was any agreement between himself and the Defendants to provide Plaintiff with **any monetary benefit whatsoever**. (Mov. Br. at 26-27). As such, Plaintiff's quasi-contractual claims must be dismissed.

### D. PLAINTIFF'S CONCLUSORY TORTIOUS INTERFERENCE CLAIM FAILS

While claiming his tortious interference claim is "solid," Plaintiff again asks that this court ignore that his Complaint does not allege the essential elements of that claim, because this is just

---

[8] As set forth in Defendants' Moving Brief at 25-26, because Plaintiff's breach of contract claim must be dismissed, its claim for Breach of the Implied Duty of Good Faith and Fair Dealing must also be dismissed.

"a pre-answer Motion to Dismiss." (Opp. Br at 28). But even on a "pre-answer Motion to Dismiss" a plaintiff must allege **specific facts** that give rise to some reasonable expectation of economic advantage. See Mu Sigma, Inc. v. Affine, Inc., 2013 WL 3772724, *3 (D.N.J. July 17, 2013) (citing Harris v. Perl, 41 N.J. 455 (1964)). Additionally, the "mere hope that the plaintiff would have entered into some future arraignment with a prospective customer is not sufficient." See Mu Sigma, 2013 WL 3772724, at *3; see also Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 184 (3rd Cir. 1997).[9]

Plaintiff's claim for tortious interference is deficient under this standard. All Plaintiff relies on to show his claim is sufficiently plead is the same conclusory recitation of the elements of the claim:

(i) "Defendants acted in willful disregard of the Plaintiff's rights";

(ii) "Defendants intentionally and maliciously sought to prevent the Plaintiff from marketing his ideas and services to other entities or ... pursuing other business";

(iii) "Defendants falsely represented to the Plaintiff remuneration for his efforts"; and

(iv) (iv) "Defendants' false representation caused loss of the Plaintiff's prospective economic gain with other entities."

(Opp. Br. at 28-29 (citing Compl. ¶¶ 86-88).

Plaintiff fails to articulate any specific facts to support its claim, including any "facts indicative of any malice on the part of defendant" in interfering with any particular "other entity". See Dana Transp., Inc. v. Ableco Fin., LLC, 2005 WL 2000152, at *5 (D.N.J. Aug. 17, 2005)

---

[9] Plaintiff's Opposition Brief again spends an inordinate amount of time pointing out that certain cases relied on by Defendants that set forth the elements of Plaintiff's tortious interference claim were decided at a later procedural juncture than a motion to dismiss (Opp. Br. at 30-31). But, as set forth above, Plaintiff is still obligated to plead facts supporting the elements of his claim in order to survive a motion to dismiss.

(dismissing claim for tortious interference with economic opportunities where plaintiff failed to plead any facts indicative of any malice). Plaintiff states only that the Complaint demonstrates the malicious motivation by Defendants to interfere with his business prospects because they "peppered the Plaintiff with promises of a joint venture, etc., with the intention that he rely on them ... ." (Opp. Br. at 31). But again, these types of allegations are boilerplate legal conclusions. What Plaintiff does not allege is why requests for information or statements showing interest in his business demonstrate a malicious intent to prohibit Plaintiff from exploring other options. Plaintiff does not allege a single action Defendants took to prevent or thwart Plaintiff from discussing the "Downtowner" with anyone else. Nor does Plaintiff allege that Defendants sought a right of first refusal that would impair Plaintiff's abilities to sell his idea.

Plaintiff has also "fail[ed] to identify the existence of any specific lost business opportunities - a necessary element of a tortious interference claim." Id.[10] Rather, as set forth above, all Plaintiff alleges is that it had unknown opportunities with "other entities ... pursuing other business." (Opp. Br. at 29). While Plaintiff attempts to rely on the fact that he previously "pitched" his idea to other entities (Opp. Br. at 31-32), he also admits that none of those pitches went anywhere (Opp. Br. at 9). Thus, Plaintiff cannot point to a single identifiable prospective business opportunity that was interfered with.

### E.  PLAINTIFF'S RICO CLAIM CANNOT PROCEED

Plaintiff's position that RICO claims can include "garden variety" fraud, misses the import of the RICO statutes, which were enacted "to address the infiltration of legitimate business by

---

[10] See also Goldberg v. Egg Harbor Twp. Sch. Dist., 2013 WL 1314425, at *8 (D.N.J. Mar. 28, 2013) (claim requires "a causal connection between the interference and the loss of prospective gain as well as actual damages").

13

organized crime." United States v. Turkette, 452 U.S. 576, 591 (1981).[11] Nevertheless, since its enactment civil RICO "has been applied to an expansive array of situations, 'evolving into something quite different from the original contemplation of its enactors.'" Dow Chem. Co. v. Exxon Corp., 30 F. Supp. 2d 673, 694 (D.N.J. 1998) (quotation omitted).

Accordingly, not every fraud case warrants utilization of civil RICO claims. In fact, Courts have cautioned plaintiffs not use RICO as sword to tarnish the defendants' reputation in the hope of extorting a settlement:

> At a time when the federal courts -- which are a scarce dispute resolution resource, indeed -- are straining under the pressure of an ever-increasing caseload, we simply cannot tolerate this type of litigation. Particularly with regard to civil RICO claims, plaintiffs must stop and think before filing them ... When used improperly, as in this case, [RICO's] provisions allow a complainant to shake down his opponent and, given the expense of defending a RICO charge, to extort a settlement.

Casper v. Paine Webber Group, Inc., 787 F. Supp. 1480, 1500 n.8 (D.N.J. 1992) (emphasis supplied) (quotation and citation omitted). Accordingly, in order for Plaintiff to defeat Defendants' motion to dismiss, he must allege the existence of a fraud (which Plaintiff cannot) and also allege **all the other elements of a New Jersey RICO claim**. Here, Plaintiff fails on both counts.

Plaintiff asserts that his New Jersey RICO claim does not require that he plead "such particulars" as the identity of all the participants in the conspiracy, the fraudulent statements, the context within which such statements were made, nor the date, time and location of such statements. (Opp. Br. at 34). But Plaintiff is again mistaken because Rule 9(b) applies to all RICO claims and while Plaintiff "need not "plead the 'date, place or time' of the fraud," Plaintiff must at least be able to provide "an 'alternative means of injecting precision and some measure of

---

[11] See also *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 245 (1989) ("organized crime was without a doubt Congress's major target"); Balthazar v. Atlantic City Med. Ctr., 279 F. Supp. 2d 574, 588 (D.N.J. 2003) (RICO enacted "in an attempt to ferret out organized crime").

14

substantiation into their allegations of fraud.'" See In re Schering-Plough Corp. Intron/Temodar Consumer Class Action, 2009 WL 2043604, at *7 (D.N.J. July 10, 2009). As set forth in Defendants' Moving Brief, Plaintiff has not plead facts demonstrating (i) a RICO enterprise; (ii) pattern of racketeering activity; (iii) that the racketeering activity embrace criminal conduct; and (iv) an injury to the plaintiff. (Mov. Br. at 33-37).

### F. PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF

As set forth in Defendants' Moving Brief, Plaintiff is not entitled to injunctive relief because (i) it has not suffered an irreparable injury and (ii) any injury Plaintiff may have suffered would be cured by monetary damages. (Mov. Br. at 37-38). Nothing in the Opposition Brief challenges Defendants' position.

### G. PLAINTIFF SHOULD NOT BE GIVEN LEAVE TO REPLEAD

Throughout his brief, Plaintiff states that, to the extent the Court dismisses his claims, he should be entitled to replead. "[A] District Court may deny leave to amend on the grounds that amendment would cause undue delay or prejudice, or that amendment would be futile." Oran v. Stafford, 226 F.3d 275, 291 (3d Cir. 2000). "Futility is governed by the same standard of legal sufficiency that applies under Rule 12(b)(6)." Oran v. Stafford, 34 F. Supp. 2d 906, 914 (D.N.J. 1999) aff'd, 226 F.3d 275 (3d Cir. 2000). Thus, as set forth in Defendants' Moving Brief and above, there are no set of facts that can cure Plaintiff's claims.

### CONCLUSION

For all the foregoing reasons, Defendants' motion to dismiss should be granted.

Respectfully submitted,
NAGEL RICE, LLP

By: __s/Bruce H. Nagel__
     BRUCE H. NAGEL

Dated: January 12, 2016

15