UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PHILIP READ, | : | |
| Plaintiff, | : | |
| | : | Docket No.: 2:15-cv-02637-KM-JBC |
| v. | : | |
| | : | Civil Action |
| PAUL PROFETA, PAUL V. PROFETA & ASSOCIATES; RADIUS:BRICK CITY & BEYOND; STEVEN COLEMAN; and WILLIAM KOHN | : | |
| Defendants. | : | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT TO MOTION TO DISMISS
DEFENDANT'S COUNTERCLAIM WITH PREJUDICE**

Return Date:   September 6, 2016

**LAW OFFICES OF JAMES C. DEZAO, P.A.**
322 Route 46 West, Suite 120
Parsippany, New Jersey 07054
(973) 808-8900
James C. DeZao, Attorney ID: 019511985
*Attorney for Plaintiff*

## TABLE OF CONTENTS

                                                              PAGE

Statement of Relevant Facts................................ 1

Legal Argument ........................................... 5

    I.   The Untitled Count I – Alleging Malicious Use of
    Process – Fails For Lack of Anything But Naked
    Recitation of the Cause of Action . . . . . . . . . . .5

    II.   The Second Count Fails to State a Claim for
    Tortious Interference With Prospective Economic
    Benefit. . . . . . . . . . . . . . . . . . . . . . . .9

    III. The Third Count Fails to Allege Defamation With
    The Specificity Required Under Settled New Jersey law . 11

    IV.   Count Four Should Be Dismissed as Duplicative of
    Count Two, and Fails to Allege Tortious Interference
    With Contract  . . . . . . . . . . . . . . . . . . . .16

    V.   The Fifth Count Fails to State a Claim for False
    Light Where There Was No Alleged Publicized Statement.. 18

Conclusion ...............................................20

TABLE OF CITATIONS

CASES:                                                           PAGE(S)

214 Corp. v. Casino Reinvestment Dev. Auth., 280 N.J. Super.
624, 656 A.2d 70 (Law Div. 1994). . . . . . . . . . . . . . . .17

Baglini v. Lauletta, 338 N.J. Super. 282, 294 (App. Div.),
certif. denied, 169 N.J. 607 (2001). . . . . . . . . . . . . .6

Decosta v. English, 2012 WL 528760 (D.N.J.). . . . . . . . . 13

Devlin v. Greiner, 147 N.J. Super. 446, 371 A.2d 380,
(App. Div. 1977). . . . . . . . . . . . . . . . . . . . . . .19

Fleming v. United States Parcel Serv., 225 N.J. Super. 108,
Law Div. 1992).. . . . . . . . . . . . . . . . . . . . . . . 5,7

Foy v. Wakefern Food Corp., 2010 WL 147925 (D.N.J.). . . . . 12

Hawkins v. Harris, 141 N.J. 207, 661 A.2d 284 (1995). . . . .16

Jonap v. Silver, 1 Conn. App. 550, 474 A.2d 800, (1984). . . .19

Klesh v. Coddington, 295 N.J. Super. 51, 684 A.2d 530,
(Law. Div. 1996). . . . . . . . . . . . . . . . . . . . . . 7

Kotok Building v. Charvine Co., 183 N.J. Super. 101,
433 A.2d 260 (Law Div. 1981). . . . . . . . . . . . . . . . 12

Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153,
(3d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . 17

Minuto v. Genesis Advisory Svs., Inc., 2012 WL 1085807, 11
(D.N.J.). . . . . . . . . . . . . . . . . . . . . . . . . . 12

Paul v. United Postal Service, 2005 WL 3307268 (D.N.J.). . . .14

Penwag Prop. Co., Inc. v. Landau, 148 N.J. Super. 493,
372 A.2d 1162 (App. Div. 1977), aff'd, 76 N.J. 595, 388
A.2d 1265 (1978). . . . . . . . . . . . . . . . . . . . . . .5

Printing Mart-Morristown, 116 N.J. 739 (1980). . . . . . . . 9

Romaine v. Kallinger, 109 N.J. 282, 537 A.2d 284 (1988).. . . 19

Tedards v. Auty, 232 N.J. Super. 541, 557 A.2d 1030
(App. Div. 1989). . . . . . . . . . . . . . . . . . . . . . .5

Zoneraich v. Overlook Hosp., 212 N.J. Super. 83, 514 A.2d 53
(App. Div. 1986). . . . . . . . . . . . . . . . . . . . . . 12

The Plaintiff, Phillip Read ("the Plaintiff"), submits this Memorandum of Law in Support of his Motion to Dismiss the Defendants' Counterclaim.  For the reasons set forth below, the Plaintiff's Motion should be granted.

### Statement of Relevant Facts

The Defendants allege in their Counterclaim that, in 2010, Read approached Defendant Profeta regarding the creation of a Newark magazine with estimated monthly expenses of approximately $40,000 a month (Document 30, p. 15, ¶6).  Over the next several years, the two investigated the feasibility of launching the "Downtowner" (*Id.* at ¶7). Profeta informed Read in January 2013 that the structure Read was trying to erect in the magazine proposal was not financially feasible (*Id.* at p. 16, ¶8).  Profeta allegedly was interested in more of a "freelance" business model (*Id.* at ¶9).  Read insisted that he be put on salary (*Id.* at ¶10).  Thereafter, Read and Profeta separately pursued any interest in creating a magazine (*Id.* at ¶11).

In the Fall 2013, Profeta launched the "Radius" (*Id.* at ¶12).  Radius was allegedly different from the "Downtowner" (*Id.* at ¶¶13-14); and has not been "a commercial success" (*Id.* at p. 17, ¶15).  The Defendants allege:

Nevertheless, Read was incensed by the launch of

1

> *Radius* and commenced a campaign of callousness
> directed at Profeta and *Radius*, designed to defame
> and destroy Profeta's magazine concept so as to make
> room for Read's "Downtowner" in the Newark magazine
> marketplace.

(*Id.* at p. 17, ¶16).

As such, the Counterclaim alleges, Read began to communicate falsely to third parties that Profeta had "stolen" his business plan and magazine concept in an effort to forestall "Radius'" success and decimate its ability to turn a profit (*Id.* at ¶17). The Defendants claim that "Read filed and continued to maintain a meritless[1] Complaint for the same improper purpose, contending without basis that Profeta" engaged in unlawful acts (*Id.* at ¶18). The Defendants argue that "both prior to and after the issuance of process, Read has maintained an continued to maintain the Profeta stole" his idea and "filed an Amended Complaint[2] essentially asserting those false claims" (*Id.* at ¶19). It is solely for "these

---

[1] The Defendants' Motion to Dismiss the Complaint was denied almost entirely (Document 23), despite the fact that it sought to dismiss the entire thing. Hence, the Defendants' Counterclaim uses the word "meritless" as a term of art, impeached legally as found by this Court on their Motion to Dismiss. Indeed, the Plaintiff would argue that, as a matter of law of the case, the Defendants' contention is itself "meritless" and unsustainable.

[2] The undersigned must again comment on Defense Counsel's free and easy attack on lawful procedure that the Defendants' Motion practice necessitated, and the Court allowed. In response to the Defendants' Motion to Dismiss, the Court *permitted* the Plaintiff to replead certain causes of action (Document 23, p. 13). The Amendment did not do anything other than what was allowed and required; hence, the Defendants attack upon it is curiously inappropriate.

reasons" that the Defendants "bring this Counterclaim" (*Id.*
at ¶20).

The untitled First Count alleges that "Read has
instituted a lawsuit with an ulterior motive, for a purpose
other than that which it was designed to accomplish,

> and has taken further action after the issuance of
> process, representing a perversion of a legitimate
> use of process.

(*Id.* at ¶22).  The Defendants give no other facts
purporting to establish this conduct.

In the untitled Second Count, the Defendants allege
that the Plaintiff "intentionally, willfully, and
maliciously" interfered "with Defendants' business and the
publication of *Radius*" and "tortuously interfered with
Defendants' prospective economic advantage" (*Id.* at p. 18,
¶25).  They allege that the Plaintiff's "conduct was
willful, intentional, and with malice for the purpose of
enriching himself and at the expense of Defendants" (*Id.* at
¶26).

In their untitled Third Count, the Defendants allege
that "Read made defamatory and slanderous statements of
fact with respect to Profeta," including the claim that
Profeta "stole" Read's magazine concept or business plan
(*Id.* at p. 19, ¶29).  The Defendants allege that "Read
communicated such claims to third parties other than to the

Defendants, intending to lower Defendants' reputation in
the community" or deter associations (*Id.* at ¶30).  Read
allegedly "published his statements as statements of fact
with negligence, actual knowledge of and/or in reckless
disregard of their falsity" (*Id.* at ¶31).

In their untitled Fourth Count, the Defendants claim
that Read published "certain material, derogatory, and
disparaging remarks to the quality of" Profeta's and
"Radius'" business and products in order to discourage
others from conducting business with Profeta and "Radius"
or otherwise adversely interfere with business relations
(*Id.* at ¶34).  Read's alleged publication of such material
were "communications to third parties that were false and
played a material and substantial part in constituting a
proximate cause of other to cease dealing with the
Defendants (*Id.* at ¶35).  These "communications were false"
and made knowingly, intentionally, or recklessly (*Id.*).

The untitled Fifth Count alleges that the repeated and
alleged false statements that Profeta "stole" Read's ideas
were objectionable to ordinary reasonable persons (*Id.* at
p. 20, ¶39); that the statements were published with
knowledge of their falsity (*Id.* at ¶40); and that Read
published statements that would place the Defendants in a
false light (*Id.* at ¶41).

4

**Argument**

## I. The Untitled Count I - Alleging Malicious Use of Process - Fails For Lack of Anything But Naked Recitation of the Cause of Action.

### Law

A claim for malicious abuse of process requires (a) an ulterior motive; and (b) some further act after issuance of process representing the perversion of the legitimate use of the process." *Fleming v. United States Parcel Serv.,* 225 N.J. Super. 108, 157 (Law Div. 1992). Essential to the cause of action is "the requirement that the litigator perform further acts after the issuance of process which represent the perversion or abuse of the legitimate purposes of that process." *Penwag Prop. Co., Inc. v. Landau,* 148 N.J. Super. 493, 499, 372 A.2d 1162 (App. Div. 1977), *aff'd,* 76 N.J. 595, 388 A.2d 1265 (1978). The "further acts" alleged must demonstrate an ulterior purpose whereby the defendant demonstrably uses the process as a means to coerce or oppress the plaintiff." *Tedards v. Auty,* 232 N.J. Super. 541, 550, 557 A.2d 1030 (App. Div. 1989).

A malicious prosecution cause of action has four separate elements that must be asserted: (1) the original claim was brought without reasonable or probable cause; (2) the claim was motivated by malice; (3) the underlying claim

5

had been terminated favorably to the plaintiff in the malicious prosecution action; and (4) the plaintiff has suffered a special grievance.  *Id.* at 660, 892.

## Application

From a review of the case law, it is evident that the Defendants have blended two causes of actions into one: Malicious abuse of process and malicious use of process.

> An action for malicious abuse of process is distinguished from an action for malicious use of process in that the action for abuse of process lies for the improper, unwarranted and perverted use of process after it has been issued, while that for the malicious use of it lies for causing process to issue maliciously and without reasonable probable cause. Thus it is said, in substance, that the distinction between malicious use and malicious abuse of process is that the malicious use is the employment of process for its ostensible purpose, although without reasonable or probable cause, whereas the malicious abuse is the employment of a process in a manner not contemplated by law . . . .

*Baglini v. Lauletta*, 338 N.J. Super. 282, 294 (App. Div.), certif. denied*, 169 N.J. 607 (2001).

Here, even assuming, *arguendo*, that it is permissible (which it is not) for the Defendants to allege two causes of action in one, they have effectively alleged neither. First, they have failed to state a claim for malicious use of process because they have not, and cannot, allege that the action terminated and favorably to them. *Baglini v. Lauletta*, 338 N.J. Super. 282, 299, 768 A.2d 825, 834 (App.

Div. 2001)(malicious prosecution plaintiff must prove that, *inter alia*, action was terminated favorably to plaintiff).

Second, the Defendants have failed to – because they cannot – allege that there was employment of process in any manner not contemplated by law, where all that has been done is a Complaint filed, Motion to Dismiss opposed, and permitted Amended Complaint filed. There has been no "unlawful act by defendants after process issued." *Fleming v. United Parcel Serv.*, 255 N.J. 108, 159 (Law. Div. 1992). In view of that requirement, "abuse of process will not lie against a party unless that party has demonstrably used process after its issuance *solely* or injure his adversary." *Fleming v. United States Parcel Service, Inc.*, 255 N.J. Super. 108, 158, 604 A.2d 567, 158 (Law Div. 1992). Bad motives or malicious intent leading to the institution of the suit are insufficient to support the cause of action. *Id.* If an act in the course of litigation is proper, the motive is immaterial. *Id.* See, e.g., *Klesh v. Coddington*, 295 N.J. Super. 51, 63, 684 A.2d 530, 536 (Law. Div. 1996)(no allegation by plaintiff of any further act after or other than filing the complaints and proceedings upon them, and allegation that action itself brought for improper purpose not enough).

7

In a transparent attempt to squeeze the figurative foot of their anger at the Plaintiff into the shoe that is a malicious abuse of process claim, the Defendants have literally done nothing more than recite the bare elements of the cause of action. Apparently recognizing that, since this action has far from terminated in favor, they cannot successfully plead malicious prosecution, the Defendants cling to the idea that the Plaintiff has "perverted" the use of process in this case. However, their Counterclaim alleges absolutely nothing in the First Count demonstrates an alleged "ulterior motive" by the Plaintiff. Indeed, the only thing the Defendants can allege is that the Plaintiff filed a Complaint that they were overwhelmingly unable to dismiss; and that the Plaintiff *permissively* amended his pleading to conform to the Order of the Court.

The crux of the Defendants' Counterclaim is that, since *they* contest the accuracy of the Plaintiff's Complaint, the Plaintiff's pursuit of same is an abuse of process. If this were the law, than conceivably every single defendant in every single case could make the same claims. The fact that the Defendants overwhelmingly lost[3] their attack on the merits of the Plaintiff's Complaint

---

[3] The Defendants' Motion was granted in part as to two counts only, but without prejudice so that the Plaintiff was permitted to, and did, re-plead.

underscores further why their First Count is legally insufficient.

Because the Defendants cannot and have not alleged any "perversion" of process; and cannot make out the elements of malicious prosecution where the action was not terminated in their favor[4], their First Count should be dismissed.

### II.  The Second Count Fails to State a Claim for Tortious Interference With Prospective Economic Benefit.

Law

In *Printing Mart-Morristown*, 116 N.J. 739 (1980), the New Jersey Supreme Court held:

> A complaint based on tortious interference must allege facts that show some protectable right – a prospective economic or contractual relationship. Although the right need not equate with that found in an enforceable contract, there must be allegations of fact giving rise to some "reasonable expectation of economic advantage." A complaint must demonstrate that a plaintiff was in "pursuit" of business. Second, the complaint must allege facts claiming that the inference was done intentionally and with malice . . . defined to mean that the harm was inflicted intentionally and without justification or excuse. Third, the complaint must allege facts leading to the conclusion that the interference caused the loss of the prospective gain . . . . Fourth, the complaint must allege that the injury caused damage.

*Id.* at 751-52.

Application

---

[4] Indeed, the Defendants did not even succeed in dismissing any but one of the Plaintiff's causes of action.

Here, the Defendants have fallen short of effectively satisfying the elements of a Tortious Interference claim. Instead, they only vaguely claim that the Plaintiff "intentionally, willfully, and maliciously" interfered "with Defendants' business and the publication of *Radius*" and "tortuously interfered with Defendants' prospective economic advantage" (Document 30 at p. 18, ¶25).  They allege that the Plaintiff's "conduct was willful, intentional, and with malice for the purpose of enriching himself and at the expense of Defendants" (*Id*. at ¶26).

However, aside from these boilerplate recitation of the elements of the cause of action, the Defendants have overwhelmingly failed to allege any *facts* suggesting that the Plaintiff's alleged actions interfered with any prospective economic advantage.  The only factual allegations the Defendants make – and only with regard to the Plaintiff's actions – are found at Paragraph 17, alleging that the Plaintiff began to communicate falsely to third parties that Profeta had "stolen" his business plan and magazine concept in an effort to forestall "Radius'" success and decimate its ability to turn a profit (*Id*. at p. 17, ¶17).  The Defendants claim that "Read filed and continued to maintain a meritless Complaint for the same improper purpose, contending without basis that Profeta"

engaged in unlawful acts (*Id.* at ¶18). The Defendants argue that "both prior to and after the issuance of process, Read has maintained an continued to maintain the Profeta stole" his idea and "filed an Amended Complaint[5] essentially asserting those false claims" (*Id.* at ¶19). It is solely for "these reasons" that the Defendants "bring this Counterclaim" (*Id.* at ¶20).

Devoid from the Counterclaim is any allegation whatever that the Defendants had a "reasonable expectation of economic advantage" that equated to a protectable right. Instead, the Defendants have focused solely on the Plaintiff's alleged statements to "third parties" – parties not allegedly prospectively in business with the Defendants.

Having failed to state a cause of action for tortious interference, the Second Count should be dismissed.

### III. The Third Count Fails to Allege Defamation With the Specificity Required Under Settled New Jersey Law.

<u>Law</u>

In the case of a complaint charging defamation, a plaintiff must plead facts sufficient to identify the

---

[5] The undersigned must again comment on Defense Counsel's free and easy attack on lawful procedure that the Defendants' Motion practice necessitated, and the Court allowed. In response to the Defendants' Motion to Dismiss, the Court *permitted* the Plaintiff to replead certain causes of action. The Amendment did not do anything other than what was allowed and required; hence, the Defendants attack upon it is curiously inappropriate.

defamatory words, their utterer, and the fact of their

publication.  *Zoneraich v. Overlook Hosp.,* 212 N.J. Super.

83, 101, 514 A.2d 53, 63 (App. Div. 1986).

A vague, conclusory allegation is not enough.  *Kotok*

*Building v. Charvine Co.,* 183 N.J. Super. 101, 105, 433

A.2d 260 (Law. Div. 1981).

The need to plead a cause of action for defamation is

not avoided by telling defendants to seek a motion definite

statement or discovery.  *Id.* at 101-02, 63.  A plaintiff

may be permitted to bolster a defamation cause of action

through discovery, but not to file a conclusory complaint

to find out if one exists.  *Id.* at 102.  "Such a complaint

must be dismissed."  *Id.*

In other words, a plaintiff must identify the "when,

where, by which defendants and by what words . . . [he] was

defamed."  *Zoneraich, supra*, 212 N.J. Super. at 62.

In *Minuto v. Genesis Advisory Svs., Inc.,* 2012 WL

1085807, 11 (D.N.J.), the defendant pled

> . . . . when he was defamed – in the time after he was
> fired.  He also pleads who defamed him – Fixelle.
> Finally, he pleads where the defamatory statements
> were made – at the specific banks.  He does not,
> however, plead what specific statements were made.
> For that reason, Plaintiff's defamation claim is
> dismissed with prejudice. . . .

*Id.* at 11.

In *Foy v. Wakefern Food Corp.*, 2010 WL 147925

(D.N.J.), the plaintiff's amended complaint provided "no

information beyond mere conclusory statements broadly

alleging defamation. He simply allege[d]:

> [Wakefern] did and continues to make defamatory
> statements about [Mr. Foy] that are false, i.e., [Mr.
> Foy] was a criminal that stole goods. Those false
> statements and documents are published to third
> parties, and [Mr. Foy] continues to be harmed by such
> defamatory statements. Each distinct publication of
> the defamatory statements and records inflict an
> independent injury from which a separate cause of
> action continues to arise.

*Id.* at 6.

In dismissing the defamation claim, the *Foy* court

found that those "allegations g[a]ve Wakefern no notice of

the essence of his claim." *Id.*

In *Decosta v. English*, 2012 WL 528760 (D.N.J.), the

plaintiff's complaint claimed that the defendants launched

a purposeful crusade to slander and liable [sic] the

personal and professional reputation of DeCosta." *Id.* at

8. At count six, the complaint further alleged that the

defendants purposefully published and communicated

disparaging and knowingly false comments, as well as false

information concerning the plaintiff, to third parties with

the intent to cause injury to the plaintiff. *Id.*

The plaintiff's proposed amended complaint similarly

alleged that the defendants "launched a purposeful crusade

to slander and liable [sic] the personal and professional reputation of DeCosta" and "acted in a manner to purposefully publish and communicate disparaging and knowingly false comments, as well as false information concerning the plaintiff to third parties with the intent to cause injury to the plaintiff." *Id.* The amended complaint further alleged that the "defendants have communicated knowingly false statements concerning the plaintiff to third parties, including, but not limited to, Robert Russell and Cindy Cooper, with the purposeful intent to create injury to the plaintiff." *Id.* at 8.

> There,
>
> . . . neither plaintiff's original Complaint nor her proposed amended complaint properly states a claim for defamation.  Plaintiff's vague allegations fail to show how she was defamed and do no more than state some of the elements of the cause of action without pleading facts to satisfy those elements.  Without setting forth, at the very least, the nature of the alleged defamatory statements, plaintiff fails to give defendants proper notice of her claim.  In addition, plaintiff has failed to allege the circumstances in which the alleged statements were made to third parties.  Furthermore, plaintiff's proposed amended complaint includes no facts suggesting that whatever statements were made harmed her reputation in the eyes of the community.  Thus, the complaint has alleged – but not shown – that the plaintiff is entitled to relief . . . .

*Id.* at 9 [internal quotations and citations omitted].

In *Paul v. United Postal Service*, 2005 WL 3307268 (D.N.J.), the plaintiff did not show "how the defamatory

statements were publicized or how these statements were

false or injurious to his reputation." *Id.* at 2. "If this

were the case, courts would be flooded with defamation

suits.  Vague accusations of Defendants' intentions to

'attack' Plaintiff's 'good name' fail to prove the elements

of defamation." *Id.*

### Application

The Defendants' Third Count is a textbook example of a

conclusory claim for defamation, lacking in all the

requisite details necessary to state a claim.  They allege

that "Read made defamatory and slanderous statements of

fact with respect to Profeta," including the claim that

Profeta "stole" Read's magazine concept or business plan

(Document 30 at p. 19, ¶29).  The Defendants allege that

"Read communicated such claims to third parties other than

to the Defendants, intending to lower Defendants'

reputation in the community" or deter associations (*Id.* at

¶30).  Read allegedly "published his statements as

statements of fact with negligence, actual knowledge of

and/or in reckless disregard of their falsity" (*Id.* at

¶31).

The above represent little more than boilerplate

restatements of the elements of the cause of action.  While

the Defendants latch onto the allegation that the Plaintiff

charged them with 'stealing' his idea, they give no
effective notice of the particulars of their claim. More
particularized complaints set forth above were dismissed
with prejudice for failure to provide such notice. The
thrust of the Defendants' Counterclaim suggests that they
took allegations forming the basis of the Complaint – in
sum and substance, that the Plaintiff's ideas were
wrongfully taken – and propose that those allegations were
made in the form of statements to unidentified third
parties. Without more, the Defendants have sought to go on
a "fishing expedition" and hope that discovery will confirm
their vague suspicions. They fail, as a matter of law, to
allege defamation.

It should parenthetically be noted that the
Defendants' claims almost suggest that the Plaintiff's
allegations in his Complaint are defamatory. That they are
unable to allege any specificity in the alleged defamation
speaks to this; however, the litigation privilege would
unquestionably foreclose any such claim based on
allegations in the Complaint. *See, Hawkins v. Harris*, 141
N.J. 207, 216, 661 A.2d 284 (1995)(describing litigation
privilege).

Therefore, the Third Count should be dismissed.

**IV.   Count Four Should Be Dismissed as Duplicative of Count Two, and Fails to Allege Tortious Interference With Contract.**

It is unclear whether Count Four is in actuality a duplication of Count Two, or whether it seeks to plead a different cause of action. For the sake of logic, the Plaintiff presumes that the Defendants seek to plead tortious interference with prospective contractual relations.  However, their attempt fails patently where there is no contractual relationship alleged.

To establish a claim for tortious interference with contractual relations, a plaintiff must prove (a) actual interference with a contract; (b) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (c) that the interference was without justification; and (d) that the interference caused damage. *214 Corp. v. Casino Reinvestment Dev. Auth.*, 280 N.J. Super. 624, 628, 656 A.2d 70 (Law Div. 1994).

Here, the Fourth Count fails to allege any contractual relationship with any third-party, much less that the Plaintiff knowingly interfered with that contract and the eventual loss thereof.  As such, it fails on its face.

Beyond that, the Fourth Count also fails to allege tortious interference with prospective economic relations. As the Defendants wrote in their Motion to Dismiss the

17

Complaint, New Jersey law requires that a plaintiff
alleging tortious interference with existing prospective
advantage "present proof that but for the acts of the
defendant, the plaintiff would have received the
anticipated economic benefits." *Lightning Lube, Inc. v.
Witco Corp.,* 4 F.3d 1153, 168 (3d Cir. 1993)(*citing,
Printing Mart-Morristown, supra*, 116 N.J. at 751). A
plaintiff must allege more than merely the lost potential
for future business. *Id.* at 1169.

In their untitled Fourth Count, the Defendants claim
that Read published "certain material, derogatory, and
disparaging remarks to the quality of" Profeta's and
"Radius'" business and products in order to discourage
others from conducting business with Profeta and "Radius"
or otherwise adversely interfere with business relations
(Document 30 at p. 19, ¶34). Read's alleged publication of
such material were "communications to third parties that
were false and played a material and substantial part in
constituting a proximate cause of other to cease dealing
with the Defendants (*Id.* at ¶35). These "communications
were false" and made knowingly, intentionally, or
recklessly (*Id.*).

Nowhere does the Counterclaim allege a "protectable
interest"; but, rather, squarely complains of the potential

loss of future business. As such, the Defendants have
failed to make a claim for tortious interference.

For these reasons, the Fourth Count should be
dismissed.

### V. The Fifth Count Fails to State a Claim for False Light Where There Was No Alleged Publicized Statement.

Law

There are differing interests protected by the law of
defamation and the law of privacy, which account for the
substantive graduations between these torts. *Romaine v.
Kallinger*, 109 N.J. 282, 290, 537 A.2d 284, 294 (1988).

The publicized material in a false light claim must
constitute "a major misrepresentation of [plaintiff's]
character, history, activities, or beliefs." *Jonap v.
Silver*, 1 Conn. App. 550, 559, 474 A.2d 800, 806 (1984).
A false light claim necessarily requires "false light
privacy (placing plaintiff in a false light in the public
eye)." *Devlin v. Greiner*, 147 N.J. Super. 446, 462, 371
A.2d 380, 389 (App. Div. 1977).

A person is liable for false light where he or she
"gives publicity to a matter concerning another which
places the other before the public in a false light . . .
." *Id.* at 462, 389.

Application

Here, the Fifth Count fails to state a cause of action where neither it, nor the balance of the Counterclaim, alleges that the Plaintiff "publicly" put a matter concerning the Defendants before the public. Instead, it seems to suggest that the Plaintiff simply told a third party or third parties that the Defendants had "stolen" his ideas. To the extent that the Fifth Count is premised upon the filing of this action, again, allegations contained within the Complaint do not form the basis for an action in tort.

The untitled Fifth Count alleges that the repeated and alleged false statements that Profeta "stole" Read's ideas were objectionable to ordinary reasonable persons (Document 30 at p. 20, ¶39); that the statements were published with knowledge of their falsity (*Id.* at ¶40); and that Read published statements that would place the Defendants in a false light (*Id.* at ¶41). Once again, the Defendants recite the boilerplate elements of the cause of action, while failing to allege any facts to support it. Here, specifically, they do not – because they cannot – allege that the purported false statements were made "publicly" as required for the cause of action.

## Conclusion

For the reasons set forth above, the Defendants'
Counterclaim should be dismissed in its entirety.


Date: 8-11-16          By: _____
                       James C. DeZao, Esq.
                       Law Offices of James C. DeZao, P.A.
                       322 Route 46 West, Suite 120
                       Parsippany, New Jersey 07054
                       (973) 808-8900
                       jim@dezaolaw.com
                       Attorneys for Plaintiffs