## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**PHILIP READ,**

**Plaintiff,**

**v.**

**PAUL PROFETA; PAUL V. PROFETA & ASSOCIATES; RADIUS: BRICK CITY & BEYOND; STEVEN COLEMAN; and WILLIAM KOHN,**

**Defendants.**

No. 15-cv-2637 (KM)

**OPINION**

This state-law action arises out of the parties' collaboration to develop a magazine focused on redevelopment in Newark, New Jersey. On April 15, 2016, this Court granted in part and denied in larger part the defendants' motion to dismiss the complaint of the plaintiff, Phillip Read. (ECF nos. 23, 24) Mr. Read filed an amended complaint,[1] which the defendants answered. (ECF no. 30) On behalf of defendants Paul Profeta, Paul V. Profeta and Associates, and Radius: Brick City & Beyond, the Answer asserts a Counterclaim.[2] The Counterclaim contains five state-law causes of action: malicious abuse of process, tortious interference with a prospective economic benefit, defamation, tortious interference with contract, and the tort of false light. Read now moves to dismiss all five Counts of the Counterclaim for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (ECF no. 33)

---

[1]     The Amended Complaint includes all counts that survived the earlier motion to dismiss and adds an amended version of the dismissed cause of action for breach of fiduciary duty. (ECF no. 25) My earlier opinion dismissed a cause of action under the New Jersey RICO statute, N.J. Stat. Ann. § 2C:41-1 *et seq.* Read has dropped the NJRICO cause of action from the amended complaint.

[2]     For simplicity, the defendants/counterclaim plaintiffs will be referred to collectively as "Profeta." Defendant Paul Profeta, the individual, will be referred to as "Mr. Profeta." Paul V. Profeta and Associates will be referred to as "Associates." Radius: Brick City & Beyond will be referred to as Radius.

For the reasons explained below, I find that Profeta has stated tort counterclaims for defamation and false light (Counts 1 and 5). I will dismiss Profeta's counterclaims for tortious interference (Counts 2 and 4) and malicious abuse of process (Count 3).

## Background[3]

Read, formerly of *The Star-Ledger,* alleges that he pitched an idea for a new magazine to defendant Paul Profeta, a business man and owner of defendant Paul V. Profeta & Associates ("Associates"). The new magazine, to be called *The Downtowner,* was to focus on economic development in downtown Newark, New Jersey. According to Mr. Read, the magazine would fill a gap in coverage left as a result of diminishing resources at *The Star-Ledger.* Read alleges that he met with Newark community leaders and funding sources, and put together a prototype, from time to time meeting with Mr. Profeta and others at his firm—including defendants Steven Coleman, the CFO of Associates, and William Kohn, legal counsel for Associates—to develop plans for the content and business model of *The Downtowner.* By Read's account, Mr. Profeta, Associates, and various funding sources embraced his nascent magazine, which, by the end of 2012, was ready for print. (*See generally* AC ¶¶ 10–46)[4]

According to Read, at some point in 2013, Mr. Profeta abruptly stopped communicating with Read and in August 2013, launched his own Newark-based magazine called *Radius: Brick City & Beyond* ("*Radius*"). (*Id.* ¶¶ 49–50)

---

[3]     I refer the reader to the Court's April 15, 2016 opinion for further background regarding Read's claims.

[4]     The following abbreviations are used herein:

AC = Amended Complaint, ECF no. 25

CC = Counterclaim, ECF no. 30 at 15–21

Br. = Plaintiff's Memorandum in Support to Motion to Dismiss Defendant's Counterclaim with Prejudice, ECF no. 33-1

Opp. = Defendants' Brief in Opposition to Plaintiff's Motion to Dismiss the Counterclaim, ECF nos. 35, 36 (identical filings)

Reply = Plaintiff's Reply to the Opposition of Defendants' to Plaintiff's Motion to Dismiss the Defendants' Counterclaim, ECF no. 37 (mistitled as a reply in opposition to defendant's motion to dismiss complaint)

Mr. Read claims that the staff and funding sources for *Radius* included persons and entities previously slated to fund and staff *The Downtowner*. (*Id.* ¶ 51–53) Read claims that this series of events amounts to theft of his ideas and work efforts, "which were worth in excess of $200,000." (*Id.* ¶ 54)

The defendants' counterclaim offers a different perspective. After "thoroughly exploring the feasibility of Read's business plan," Mr. Profeta concluded, and explained to Mr. Read, that Read's proposed business plan for *The Downtowner* was not financially feasible. (CC ¶¶ 8–9) When Read declined Mr. Profeta's counterproposal to follow a "freelance" business model for the magazine, the two parted ways and separately pursued independent plans to create a magazine. (*Id.* ¶¶10–11) The defendants say that *Radius* is distinct from the *The Downtowner* concept in that it is not solely focused on Newark's downtown; is distributed free of charge; and is targeted to an affluent market outside of Newark. (*Id.* ¶¶ 13–14) *Radius*, they say, has been well-received, but has not had commercial success. Nevertheless, according to Profeta, the launch of *Radius* so incensed Read that he has taken to communicating to third parties that Profeta stole Read's business plan and magazine concept, and has "filed and continued to maintain a meritless Complaint" (i.e., this action) "so as to make room for" *The Downtowner* in the market. (*Id.* ¶¶ 16–19)[5]

## **Legal Standard**

Mr. Read has moved to dismiss the Counterclaims for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) provides for the dismissal of a counterclaim, in whole or in part, if it fails to state a claim upon which relief can be granted. The plaintiff, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc.*

---

[5]     *The Downtowner* has never been published. I take judicial notice that the Summer 2016 issue of *Radius* contained a Publisher's Note by Mr. Profeta announcing that the magazine was losing $50,000 per quarterly issue, and that unless he could rectify that situation, publication would cease at the end of the calendar year. No further information as to its status is readily available.

*v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the pleading are accepted as true and all reasonable inferences are drawn in favor of the party asserting the claim. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a pleading contain detailed factual allegations. Nevertheless, "a [pleading party's] obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a counterclaim's factual allegations must be sufficient to raise a defendant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the [party] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

**<u>Analysis</u>**

    1. <u>Malicious abuse of process (Count 1)</u>

Profeta's Counterclaims are not titled, but the parties seem to agree that Counterclaim Count 1 asserts a claim of malicious abuse of process. *See generally LoBiondo v. Schwartz*, 199 N.J. 62, 80 & n.5, 89–90 & n.9, 970 A.2d 1007, 1017 n.5 & 1022 n.9 (2009) (noting that malicious abuse of process is distinct from malicious use of process).

The New Jersey Supreme Court has identified the distinct torts of malicious prosecution, malicious use of process, and malicious abuse of process as "a group of closely related torts that, although ancient in origins, are treated with great caution because of their capacity to chill resort to our courts by persons who believe that they have a criminal complaint or civil claim

against another." *LoBiondo*, 199 N.J. at 89, 970 A.2d at 1022. I, too, am wary of any expansive interpretation that would routinely permit a defendant to take ordinary denials in its Answer and weaponize them as a tort counterclaim.[6]

_____

[6]    In that respect, it is particularly important to distinguish malicious abuse of process, asserted here, from the related tort of malicious use of process.

Malicious use of process is the civil analog of malicious prosecution; indeed, the name malicious prosecution is sometimes used for both. It is the tort that may arise from the filing of an unfounded complaint *simpliciter*. A disfavored tort, malicious use of process is hedged in by substantive protections:

> Courts do not favor actions for malicious use of process because of judicial indulgence accorded a person who resorts to court process for its intended purpose even though he did not have probable cause to do so. Because it is often difficult to distinguish between a plaintiff who is naive and a plaintiff who is a knave, courts protect both indiscriminately by requiring a plaintiff bringing an action for malicious use of process to prove not only that the defendant brought the underlying action without probable cause, but also that it was actuated by malice, has been terminated favorably to plaintiff, and that plaintiff suffered a special grievance.

*Tedards v. Auty*, 232 N.J. Super. 541, 549, 557 A.2d 1030, 1034 (App. Div. 1989) (citing *Penwag Prop. Co., Inc. v. Landau,* 76 N.J. 595, 598, 388 A.2d 1265, 1266 (1978)).

The favorable-termination element implies that malicious use of process cannot be pursued as a counterclaim to the very complaint being challenged :

> Favorable termination did not exist when defendant's counterclaim was filed in this cause. Though plaintiff had not moved to strike that counterclaim, it should have been eliminated in the pretrial order. It is not appropriate to institute a suit or file a counterclaim until the litigation has terminated in favor of the party who asserts the malicious prosecution cause of action.

*Penwag,* 76 N.J. at 597–98, 388 A.2d at 1266. *See also Yogo Factory Franchising, Inc. v. Ying*, No. CIV.A. 13-630 JAP TJ, 2014 WL 1783146, at *12 (D.N.J. May 5, 2014) (dismissing counterclaim for malicious use of process because the claims against the defendant had "not yet been determined or otherwise terminated in her favor" and counterclaim for malicious abuse of process because "Defendant's claim is not for the misuse of any subsequently issued process, but rather for the filing of a claim against her at all.").

Malicious abuse of process, as discussed more fully herein, consists in the abuse of the court's processes after the filing of a civil complaint. It does not have favorable termination as an element, and there is thus no *per se* rule barring its assertion as a counterclaim. Nevertheless, the court must be careful not to permit a counterclaim of malicious use of process to sail under the false flag of malicious abuse of process.

"An action for malicious abuse of process will lie against one who uses a writ after its issuance solely to coerce or injure the defendant." *Tedards v. Auty*, 232 N.J. Super. 541, 549, 557 A.2d 1030, 1034–35 (App. Div. 1989) (citing *Ash v. Cohn*, 119 N.J.L. 54, 58, 194 A. 174 (E. & A. 1937)). "The gist of the tort . . . is the misuse, or 'misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, *once it is issued,* is the only thing of importance.'" *Baglini v. Lauletta*, 338 N.J. Super. 282, 293, 768 A.2d 825, 831 (App. Div. 2001) (quoting *Prosser & Keeton on Torts* § 121 at 897 (5th ed.1984)). Therefore, "process has not been abused unless after its issuance the defendant reveals an ulterior purpose he had in securing it by committing further acts whereby he demonstrably uses the process as a means to coerce or oppress the plaintiff." *Tedards*, 232 N.J. Super. at 550, 557 A.2d at 1035.

"Further acts which lend themselves to an abuse of process include 'attachment, execution, garnishment, sequestration proceedings, arrest of the person and criminal prosecution and even such infrequent cases as the use of a subpoena for the collection of a debt.'" *Baglini*, 338 N.J. Super. at 294, 768 A.2d at 832 (quoting *Prosser & Keeton on Torts, supra,* § 121 at 899)). That is not to say, however, that the validity of the original complaint can never be relevant to a claim of malicious abuse of process: "[W]here there is a genuine issue as to whether a defendant's 'further acts' were maliciously intended as an abuse of process, the [counterclaimant] may demonstrate that the [counterclaim defendant] had secured issuance of the process without reason or probable cause as evidence that his ultimate intent was to use it for a purpose ulterior to the one for which it was designed." *Id.*

As noted at p.5 n.6, *supra*, malicious abuse of process (unlike malicious use of process) does not have favorable termination as an element, and therefore it is possible to assert it as a counterclaim. Possible, but rare; most commonly, such a counterclaim cannot escape the gravitational pull of the main claim and establish that some "ulterior purpose" or "further acts" are

6

being pursued. *See, e.g., Flyte Tyme Tunes v. Riggers & Razzles*, No. CIV. 87-4211 (CSF), 1988 WL 142403, at *4–5 (D.N.J. Dec. 20, 1988) ("Even if defendants had some basis for alleging that plaintiffs, in bringing this lawsuit, had an improper or ulterior motive, they still could not overcome the hurdle of showing that plaintiffs have committed an act which perverts the use of process in order to satisfy that ulterior motive.").

Mr. Read argues that Profeta has failed to allege any "further acts" whereby process was deployed in a manner not contemplated by law—*i.e.*, in furtherance of some collateral or ulterior plan. Even the filing of an unfounded action, he says, is insufficient to support a claim of malicious abuse of process absent further, ongoing acts of abuse. (Br. 7; Reply 4)

Profeta replies that such further acts are alleged in paragraphs 17 through 19:

> 17. Thus, Read began to communicate falsely to third-parties that Profeta had "stolen" Read's business plan and magazine concept in an effort to forestall *Radius'*[s] success and decimate its ability to turn a profit.

> 18. Additionally, Read filed and continued to maintain a meritless Complaint for the same improper purpose, contending without basis that Profeta had engaged in unlawful acts in connection with the publication of *Radius*.

> 19. Indeed, both prior to and after the issuance of process, Read has maintained and continued to maintain that Profeta "stole" Read's business plan and/or magazine concept and even filed an Amended Complaint essentially asserting those false claims.

(CC ¶¶ 17–19)

Profeta contends that these paragraphs plainly aver that "***after*** the filing of the Complaint, and independent of the filing of the Complaint, plaintiff has unlawfully used the filing of this action as a vehicle to further defame [Mr.] Profeta and show him in a false light to others . . . with the intent to coerce Profeta to cease publication of the *Radius*." (Opp. 8 (emphasis in original)). I do not share Profeta's view.

I read paragraphs 17, 18, and 19 to allege only that, before filing his Complaint, Mr. Read told others that Mr. Profeta stole his ideas, and that he did not stop saying so after filing his complaint. (I assume that "process" here can only refer to the summons that accompanied the complaint.) To begin with, statements uttered before any complaint was filed are not actionable: "Coercive action or bad motives or intent prior or leading to the institution of the lawsuit do not suffice to expose a plaintiff to a cause of action for malicious abuse of process." *Penwag Prop. Co., Inc. v. Landau*, 148 N.J. Super. 493, 499, 372 A.2d 1162, 1165 (App. Div. 1977), *aff'd*, 76 N.J. 595, 388 A.2d 1265 (1978). The real problem, however, is more fundamental. Profeta may consider such statements to third parties (whether pre- or post- filing) to be false or unfair. Regardless, these oral statements did not involve any use of legal process, did not depend on legal process, and were not enabled by the filing or issuance of process. Indeed, the Counterclaim itself seems to imply as much, alleging that after the Complaint was filed, Read's statements to others continued much as before.

Perhaps the best support for Profeta's position is *NVR, Inc. v. Davern*, No. 15-5059 (NLH/KMW), 2016 WL 7013459, at *4 (D.N.J. Nov. 30, 2016), in which the court pushed malicious abuse of process very close to the line of malicious use of process. There, the plaintiff's action was one to enjoin the defendant, an ex-employee, from retaining proprietary documents and taking them to his new employer, plaintiff's competitor. Judge Hillman sustained a counterclaim for malicious abuse of process where the defendant alleged that the plaintiff's ulterior motive in pursuing and prolonging the lawsuit was (*inter alia*) to get the defendant fired from his new job and to harm the business of its competitor (*i.e.*, the plaintiff's new employer, who was not a party to the action). According to the counterclaim, the plaintiff had no good reason to file suit in the first place because the defendant had already agreed to return all proprietary documents prior to filing. Further, the defendant alleged, and the court seemed to accept, the plaintiff had "continue[d] to litigate th[e] case in a manner inconsistent with any realistic potential damages recovery." *Id.* The

8

court thus upheld a malicious abuse of process claim based on the purpose for which, and the manner in which, the litigation was pursued post-filing. It so held, however, despite there having been no additional "process" issued beyond the original summons and complaint.

*NVR* is distinguishable. Here, Profeta never plausibly alleges that Read has used process issued in this action for improper purposes or conducted this litigation in an improper manner. Profeta's brief says that Read "has unlawfully used the filing of this action as a vehicle to further defame Profeta."[7] No factual allegations support that contention. Read's assertion *in his complaint* that Profeta stole his idea surely cannot constitute a "further act" in furtherance of an ulterior, improper purpose; that accusation is the very gist of Read's legal claims; it is a factual allegation of the injury for which he seeks damages. Read's complaint is designed to submit to a finder of fact the proposition that the defendants misappropriated Read's intellectual property.

There is no allegation here of abusive pursuit or prolongation of litigation, as in *NVR,* that would bespeak some collateral agenda. Nor is there any indication here, as in *NVR,* that litigation was instituted as an indirect means of harming a business competitor who is not a party to the action. The business competitors here are the plaintiff and the defendants—Read and Profeta themselves. There can be no rule that a party who sues a business competitor has *ipso facto* committed a tort.

What remains is the Counterclaim's allegation that, post-filing, Read is still going around telling others that Profeta stole his idea. Read's alleged failure to go silent after filing the action cannot in itself establish malicious abuse of process. This tort is not a means of imposing a *de facto* litigation gag order.

Finally, I think the defendants err in characterizing the complaint and amended complaint—essentially, the entire action—as "process" that was

---

[7]     That a civil complaint can be defamatory is a very problematic proposition under defamation law. *See* p.13 n.11, *infra.* I will indulge an assumption that, for these purposes, Profeta is using "defame" in a non-technical sense.

"abused." *Pace* Judge Hillman's holding under the extraordinary circumstances of *NVR,* this tort generally has a far narrower focus: the misuse of the court's coercive powers or writs. *See Jewett v. IDT Corp.*, No. CIV.A.04-1454 SRC, 2007 WL 2688932, at *7 (D.N.J. Sept. 11, 2007) ("'[P]rocess' does not apply broadly to all proceedings in a legal action. Rather, it is limited to certain products of litigation that a court issues, such as a 'summons, mandate, or writ used by a court to compel the appearance of the defendant in a legal action or compliance with its orders.'") (quoting *Ruberton v. Gabage*, 280 N.J. Super. 125, 131, 654 A.2d 1002, 1005 (App. Div. 1995))). Profeta's counterclaim for malicious abuse of process does not allege further acts or a particular court-issued "process" that Read has abused for ulterior purposes.

For these reasons, I will grant Read's motion to dismiss Count 1 of the Counterclaim, without prejudice.

### 2. Tortious Interference with a Prospective Economic Benefit and with Contract (Counts 2 and 4)

Count 2 of the Counterclaim alleges that by "intentionally, willfully and maliciously interfering with Defendants' business and the publication of *Radius*, Read has tortiously interfered with Defendants' prospective economic advantage." (CC ¶ 25) In parallel fashion, Count 4 alleges that "Read engaged in the publication of certain material, derogatory and disparaging remarks to the quality of Profeta's and *Radius*'[s] business and their products of a kind calculated and intending to prevent others from dealing with or conducting business with Profeta and *Radius* . . . ." (*Id.* ¶ 34). As a result, the defendants allege, Profeta and *Radius* "have suffered and continue to suffer irreparable harm, special damages and damages." (*Id.* ¶¶ 27, 37).

The defendants have failed to label their counterclaims and do not distinguish between Counts 2 and 4 in their briefing. (*See* Opp. 9–10) I read Count 2 to allege tortious interference with a prospective economic benefit and Count 4 to allege tortious interference with a contract.

Under New Jersey law, a claimant alleging tortious interference with contractual relations must allege, in addition to an existing contract: "(1) that

plaintiff had a reasonable expectation of an economic benefit or advantage; (2) that defendant knew of plaintiff's expectancy; (3) that defendant wrongfully and intentionally interfered with this expectancy; (4) a reasonable probability that but for defendant's wrongful interference, plaintiff would have realized the economic benefit; and (5) that plaintiff was injured as a result of defendant's conduct." *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n, Inc.,* 256 F.Supp.2d 249, 288 (D.N.J. 2003) (citing *Printing Mart–Morristown v. Sharp Elecs. Corp.,* 116 N.J. 739, 563 A.2d 31 (1989), and *Fineman v. Armstrong World Industries, Inc.,* 980 F.2d 171, 186 (3d Cir. 1992)); *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n, Inc.,* 256 F. Supp. 2d 249, 288 (D.N.J. 2003).[8] Where the claimant alleges tortious interference with *prospective* contractual relations, the requirements are identical except that the claimant must demonstrate a "reasonable probability" of a prospective, rather than actual, contractual relation. *See Alvord–Polk, Inc. v. F. Schumacher & Co.,* 37 F.3d 996, 1015 (3d Cir. 1994).

Read argues that the defendants' allegations are mere boilerplate recitations of elements of a claim for tortious interference. Further, he says, the defendants make no allegation that the defendants had a "reasonable expectation of economic advantage" (Br. 10–11), as is needed for Count 2, nor any allegation of a contractual relationship between the defendants and a third party, as is needed for Count 4 (*id.* 17). I agree.

The contract or prospective contract clearly identified in the Counterclaim is the one which might have existed between Read and Profeta. (*See* CC ¶¶ 6–7) But "the rule of tortious interference was not meant to upset the rules governing the contractual relationship itself. Where a person interferes with the performance of his or her own contract, the liability is governed by principles of contract law." *Printing Mart-Morristown*, 116 N.J. at

---

[8]     More succinctly, "the elements of a claim for tortious interference with a contractual relationship are (a) the existence of a contract, (b) intentional interference, with malice, (c) loss of the contract, and (d) damages." *ThermoLife Int'l LLC v. Connors*, No. CIV. 2:13-4399 KM, 2014 WL 1050789, at *3 (D.N.J. Mar. 17, 2014).

753, 563 A.2d at 38. Under those principles of contract law, interference with prospective relations does not come into play, because "[b]efore a contract is formed, either party may withdraw from negotiations without penalty." *Id.* I therefore set aside any claim of interference with Read and Profeta's own business dealings.

As to other actual or potential contractual relations, these are the only potentially relevant allegations:

- "Read has tortiously interfered with Defendants' prospective economic advantage" (CC ¶ 25); and

- Read has made remarks "intending to prevent others from dealing with or conducting business with Profeta and *Radius*, or to otherwise interfere adversely with business relations with others" that have "played a material and substantial part in leading others and/or constituting a proximate cause for others to cease dealing with or not to deal with Profeta and *Radius*." (*Id.* ¶¶ 34–35)

These allegations essentially recite some of the legal elements of a cause of action for tortious interference. No actual or potential contract is identified, or even generally described. There are only vague allegations that Read made statements to unidentified "third parties" or interfered with Profeta's unspecified dealings with unnamed "others." I do not think that these allegations sufficiently give notice of what particular benefit the defendants expected and, but for Read's "remarks," would have reaped. The Counterclaims also fail to allege or demonstrate a "reasonable probability" of an expected benefit.[9] In short, the essential who, what, when, where, and how are lacking.

---

[9]   I accept *arguendo* Profeta's contention that the trend in this district is toward not requiring strictly that a plaintiff "identify specific lost business opportunities in its pleading for tortious interference." (Opp. 9 (quoting *N. Star Mgmt., Inc. v. Ins. Professionals, Inc.*, No. 12-CV-3839 JAP, 2013 WL 5334412, at *4 (D.N.J. Sept. 23, 2013)). Still, the relevant allegations in the cases cited by Profeta were much more specific and substantial than those in Profeta's counterclaim here. *See N. Star Mgmt., Inc.*, 2013 WL 5334412, at *1 (plaintiff alleged that, by writing insurance for business encompassed by an exclusive partnership program between the plaintiff and a non-party insurer, the defendant intentionally caused the third-party insurer to breach its

Accordingly, I find that the defendants fail to state a claim for either variety of tortious interference. I will grant Read's motion to dismiss on Counts 2 and 4 of the Counterclaim, without prejudice.

      3. <u>Defamation (Count 3)</u>

      Count 3 of the Counterclaim alleges the tort of defamation. As to Count 3, the motion to dismiss will be denied.

      The essential elements of defamation, aside from damages, are "'(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher.'" *G.D. v. Kenny*, 411 N.J. Super. 176, 186, 984 A.2d 921, 927–28 (App. Div. 2009), *aff'd*, 205 N.J. 275, 15 A.3d 300 (2011) (quoting *Leang v. Jersey City Bd. of Educ.*, 198 *N.J.* 557, 585, 969 *A.*2d 1097 (2009)). Profeta alleges only slander (oral defamation), not libel (written defamation). (*See* CC ¶ 29) Either way, however, a party must at a minimum "plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication.'" *Foy v. Wakefern Food Corp.*, No. CIV.A 09-1683(JLL), 2010 WL 147925, at *6 (D.N.J. Jan. 7, 2010) (quoting *Zoneraich v. Overlook Hosp.*, 212 N.J. Super. 83, 514 A.2d 53, 63 (N.J. Super. Ct. App. Div. 1986)).[10]

      Here, Count 3 alleges, *inter alia*, that Read told third parties that Profeta stole his magazine concept and business plan "in effort to forestall *Radius'* [s]

---

contract with the plaintiff); *Slim CD, Inc. v. Heartland Payment Sys., Inc.*, No. CIV. A. 06-2256, 2007 WL 2459349, at *3 (D.N.J. Aug. 24, 2007) (plaintiff alleged expectation of selling its company, notifying defendant that its failure to accept software and satisfy contractual provisions would undermine the sale, and that the defendant hurt the potential sale by expressing indifference to the plaintiff's notices and refusing to accept software). Unlike Profeta, the claimants in cited cases clearly alleged either an actual contract or the reasonable probability of a prospective contract.

[10]     Although New Jersey imposes a heightened pleading standard whereby a claimant must allege the specific defamatory words used, in this Court the ordinary federal pleading standard applies. *Mangan v. Corp. Synergies Grp., Inc.*, 834 F.Supp.2d 199, 204 (D.N.J.2011) (noting that a plaintiff "must allege the elements of defamation as applied by New Jersey law to a degree of sufficient specificity to satisfy the standards outlined in Rule 8.")

success and decimate its ability to turn a profit," and "intending to lower Defendants' reputation in the community and/or deter third parties from associating with them." (CC ¶¶ 17, 30) As a result, "Profeta has suffered and continues to suffer irreparable harm and damages." (*Id.* ¶ 32).

Read replies that the defendants' allegations are "a textbook example of a conclusory claim for defamation." He argues in addition that the allegations of defamation are simply a repetition of what Read alleged in his complaint, and are therefore protected by the litigation privilege. (Br. 11–16).[11]

The defendants contend that because these statements concern theft, a crime, they are slanderous *per se*. And, they say, they have pleaded that Read communicated accusations of theft to third parties, with knowledge of falsity, and for the purpose of harming Profeta's reputation. (Opp. 11) I agree that the defendants have stated a defamation claim, albeit a thin one.

Turning to the first element, "[a] defamatory statement is one that is false and injurious to someone's reputation." *Paul v. United Parcel Serv.*, No. 05-CV-1918 DMC, 2005 WL 3307268, at *2 (D.N.J. Dec. 6, 2005). Whether a statement is defamatory is a fact-specific question: it requires an analysis of

---

[11]    Read's argument is good as far as it goes. The litigation privilege would shield the actual allegations of Read's complaint. *See Hawkins v. Harris*, 141 N.J. 207, 216, 661 A.2d 284, 289 (1995) ("The absolute privilege applies to 'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" (quoting *Silberg v. Anderson,* 50 Cal. 3d 205 (1990)); *Rainier's Dairies v. Raritan Val. Farms*, 19 N.J. 552, 563, 117 A.2d 889, 894 (1955) (holding that statements made in complaint filed in quasi-judicial proceeding had absolute immunity and thus could not serve as basis for libel, just as statements made in full judicial proceedings would be protected).

The defamation Counterclaims seem at times to parrot Read's complaint. (*Compare* CC ¶¶ 17, 19, 29 (alleging Read told third parties Profeta "stole" Read's concept and business plan, and providing no further facts) *with* AC ¶ 60 ("Defendants have stolen the Plaintiff's intellectual property for their own gain)) It is clear, however, that Profeta also bases his defamation claims on accusations of theft that Read allegedly made outside of legal proceedings. (*See, e.g.*, CC ¶ 17 ("Read began to communicate falsely to third-parties that Profeta has 'stolen' Read's business plan . . . .") *id.* ¶ 18 ("Additionally, Read filed and continued to maintain a meritless Complaint for the same improper purpose . . . .")) These statements, although they may resemble allegations made in the Complaint, are extrinsic to the Complaint.

"(1) the content, (2) the verifiability, and (3) the context" of the allegedly defamatory statement. *Leang v. Jersey City Bd. Of Educ.,* 969 A.2d 1097, 1113 (N.J. 2009). Factual statements are those capable of verification, *i.e.,* falsifiable in relation to external realities; statements of opinion thus are not actionable, because they reflect only one's state of mind. *See Ward v. Zelikovsky,* 643 A.2d 972, 979 (N.J.1994). New Jersey also recognizes a distinction "between genuinely defamatory communications as opposed to obscenities, vulgarities, insults, epithets, name-calling, and other verbal abuse." *Id.* Only where the allegedly defamatory statements imply reasonably specific assertions of fact will the claim be allowed to proceed. *See id.*

Stating that someone stole something—whether in a criminal or civil sense—is sufficiently capable of verification or falsification, particularly in the context of business dealings. Therefore, I think it is appropriate to allow the parties to develop the factual record on this element.

Second, to adequately allege the communication or publication element, a plaintiff should "plead facts sufficient to identify the defamer and the circumstances of publication." *Mangan,* 834 F. Supp. 2d at 204 (citing *Printing Mart–Morristown v. Sharp Elecs. Corp.,* 563 A.2d 31, 46 (N.J.1989)). Count 3 is vague concerning when, where, and to whom Read allegedly published his statements. A federal complaint, true, need not always set forth the names of the specific individuals to whom the allegedly defamatory statements were made. Most complaints, however, do a little better than this. *See Churchill Downs, Inc. NLR Entm't, LLC v. Carstanjen,* No. CV 14-03342(KM)(MAH), 2015 WL 5854134, at *8 (D.N.J. Oct. 5, 2015) (finding communication element established where defamatory statements were made to "third parties in the casino industry"); *DiAntonio v. Vanguard Funding LLC,* 2015 WL 3629539, at *4 (D.N.J. June 10, 2015) (sufficient to allege that named individuals, in a particular 6–month period, made the slanderous statement to high-level officers of plaintiff's new employer, and that he was forced to defend himself as a result). At this preliminary stage, the allegation that Read made statements

15

"to third parties other than to the Defendants," as part of a "campaign of callousness . . . designed to defame and destroy Profeta's magazine concept so as to make room for Read's 'Downtowner' . . . ." will nevertheless suffice. It conveys the nature of the statements, their purpose, and, at least impliedly, the business community in which they were made.

The third element of defamation is a sufficient degree of fault. Defamation requires a showing of actual malice "when the alleged defamatory statement concerns a public figure or a public official or involves a matter of public concern," *Senna v. Florimont*, 196 N.J. 469, 496, 958 A.2d 427, 443 (2008), but only negligence for a private figure. *Costello v. Ocean Cnty. Observer*, 643 A.2d 1012, 1021 (N.J. 1994); *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S. Ct. 710, 725–26 (1964).[12] Regardless of which standard applies here—negligence or malice— I am satisfied that Profeta's allegations of fault are sufficient. The Counterclaim alleges that "Read published his statements as statements of fact with negligence, actual knowledge of and/or in reckless disregard of their falsity," because he "was incensed by the launch of *Radius*." (*id.* ¶ 16) The statements concerned face-to-face business dealings between Read and Profeta. (*See* CC ¶¶ 6–10) The necessary implication is that, if they were false, Read would have been in a position to know that. And knowing falsehood meets even the higher malice standard. *See Senna v. Florimont*, 196 N.J. 469, 474, 958 A.2d 427, 430 (2008) (actual malice means "that the speaker made a false and defamatory statement either knowing it was false or in reckless disregard of the truth.").

Finally, I turn to the element of damages. General defamation does not have a special or particularized damages element. Slander, however, may

---

[12]   "Whether [the person alleging defamation] is a public figure is 'a question of law for the court's determination.'" *Costello*, 136 N.J. at 612 (quoting *Lawrence v. Bauer Pub. & Printing Ltd.*, 89 N.J. 451, 462, 446 A.2d 469, 474 (1982)). *See generally Senna*, 196 N.J. 490–498 (discussing factors to consider in determining whether the actual malice standard applies). Neither party argues that Profeta is a public figure or that the parties' dispute constitutes a matter of public concern and the facts alleged are otherwise insufficient for the court to rule on this issue at this early stage.

require a showing of special damages: proof of items such as "the loss of particular customers by name, or a general diminution in its business and extrinsic facts showing that such special damages were the natural and direct result of the false publication." *Juliano v. ITT Corp.*, 1991 WL 10023, at *6 (D.N.J. Jan. 22, 1991).[13]

   Count 3 alleges that "Profeta has suffered and continues to suffer irreparable harm and damages." (CC ¶ 32) That statement may not be enough standing alone. But it must be taken together with Profeta's background allegations that "*Radius* . . . has not been, as of this filing, a commercial success," and that Read made his accusations as part of a campaign to "make room" in the market for *The Downtowner. (Id.* ¶¶ 15, 16) In that context, it is possible to infer an allegation that Read's statements impaired *Radius*'s commercial success. Thus, I find the defendants' allegations of damages adequate.

   The motion to dismiss is denied as to Count 3 of the Counterclaim.

   4. <u>False Light (Count 5)</u>

   Finally, Count 5 of the Counterclaim asserts the tort of false light. The

---

[13]    The New Jersey Supreme Court has explained:

>   [S]lander cases generally require proof of special damage—an economic or pecuniary loss. Charles T. McCormick, *Damages* 415 (1935). However, if the slander is per se (e.g., accusation of a crime, a loathsome disease, misfeasance in business, or serious sexual misconduct, *Biondi v. Nassimos,* 300 *N.J.Super.* 148, 154, 692 *A.2d* 103 (App.Div.1997)), the requirement of proving special or economic damage in a slander case drops away, *Ward, supra,* 136 *N.J.* at 540, 643 *A.2d* 972. In that case, slander per se, like libel, permits the jury to consider presumed damages.

*W.J.A. v. D.A.,* 210 *N.J.* 229, 240, 43 *A.3d* 1148, 1154 (2012).

   Because I am satisfied that Profeta has sufficiently alleged damages, I need not undertake to explore the complexities of special damages or the state of the law on slander *per se.* I will note, however, that Profeta argues that Read's accusation that his idea was stolen falls into the slander *per se* category of an imputation of crime. (*See* Opp. 11 (citing *Hall v. Heavey,* 195 *N.J. Super.* 590, 597, 481 *A.2d* 294, 298 (App. Div. 1984); *Murphy v. Johns-Manville Prod. Corp.,* 45 *N.J. Super.* 478, 488, 133 *A.2d* 34, 39 (App. Div. 1957))). I am not wholly persuaded that "stealing" Read's idea necessarily would be taken by the hearer as an accusation of crime, but I leave that issue for further factual development.

New Jersey Supreme Court has explained the false light tort thus:

> The tort of false light has two elements: (1) "the false light in which the other was placed would be highly offensive to a reasonable person"; and (2) "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Id.* at 294, 537 *A.2d* 284 (quoting *Restatement (Second) of Torts,* § 652E).

*Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 588–89, 969 A.2d 1097, 1115–16 (2009). "[A] fundamental requirement of the false light tort is that the disputed publicity be in fact false, or else at least have the capacity to give rise to a false public impression as to the plaintiff." *Romaine v. Kallinger*, 109 N.J. 282, 294, 537 A.2d 284, 290 (1988) (internal quotation marks and citations omitted).

False light is a form of defamation, but one that implicates privacy interests. "There are differing interests protected by the law of defamation and the law of privacy, which account for the substantive gradations between these torts." *Id.* An action for defamation protects a person's interest in reputation, whereas an action for false light protects an individual's privacy and peace of mind. *Id.* Such "substantive gradations," however, are too factual and subtle to be dispositive of a motion to dismiss. For the same reasons that the defendants have stated a claim of defamation, they have also stated a claim of false light.

Read's argument for dismissal of Count 5 is that Profeta does not allege that his false statements were made "publicly". (Br. 19–20; Reply 5–6). It is true that the false light doctrine quintessentially applies to objectionable falsities "presented to the general public." 52 N.J. Prac., Elements of Action § 45:1 (2016-2017 ed.) Profeta correctly points out, however, that in this district false light claims have survived a motion to dismiss where the statements were made within a limited circle. *See, e.g., Torrey v. New Jersey*, No. CIV.A. 13-1192 PGS T, 2014 WL 941308, at *20–21 (D.N.J. Mar. 11, 2014) (statements allegedly made to a representative of the sheriff's office); *Gibbs v. Massey*, No. CIV.A.07-3604(PGS), 2009 WL 838138, at *2, 11–12 (D.N.J. Mar. 26, 2009) (statement made to persons at plaintiff's place of employment). (Opp. 12)

18

Profeta's allegation that "Read published to third parties certain false facts . . . ." is quite sparse and will need significant bolstering to survive summary judgment. It is, however, enough for now. As to Count 5, the motion to dismiss is denied.

## **Conclusion**

For the foregoing reasons, the defendants' motion to dismiss (No. 33) will be granted as to Counts 1, 2, and 4, without prejudice to the submission of a proposed amended counterclaim within 30 days. The motion will be denied as to Counts 3 and 5. A separate order will issue.

Dated: January 11, 2017

KEVIN MCNULTY
United States District Judge