UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARC J. GROSS, ESQ. (2648)
**GREENBAUM, ROWE, SMITH & DAVIS LLP**
75 Livingston Avenue, Suite 301
Roseland, New Jersey 07068-3701
(973) 535-1600
Attorneys for Defendants

| | |
|---|---|
| PHILIP READ,<br><br>     Plaintiff,<br><br>v.<br><br>PAUL PROFETA, PAUL V. PROFETA & ASSOCIATES, RADIUS: BRICK CITY & BEYOND, STEVEN COLEMAN and WILLIAM KOHN,<br><br>     Defendants. | Civil Action No: 2:15-cv-02637-KM-JBC<br><br>**CIVIL ACTION**<br><br>**AMENDED COUNTERCLAIM<br>AND JURY DEMAND** |

Defendants, Paul Profeta, Paul V. Profeta & Associates, Radius: Brick City & Beyond, Steven Coleman and William Kohn ("Defendants"), by way of Amended Counterclaim, say as follows:

## COUNTERCLAIM

Defendants Paul V. Profeta, Paul V. Profeta Associates, Inc. and PVP Radius, LLC (collectively "Profeta"), by way of Counterclaim against Philip Read ("Read"), allege as follows:

  1. Defendants/Counterclaimants repeat and reiterate their Answer and Affirmative Defenses to the Amended Complaint as if set forth fully herein.

4443833.1

2. Upon information and belief, Read is a resident of North Carolina.

3. Defendant/Counterclaimant Paul V. Profeta is an individual conducting business in Essex County, New Jersey.

4. Defendant/Counterclaimant Paul V. Profeta & Associates, Inc. is a New Jersey corporation, conducting business in Essex County, New Jersey.

5. Defendant/Counterclaimant PVP Radius, LLC is a New Jersey limited liability company, conducting business in Essex County, New Jersey.

## FACTUAL ALLEGATIONS

6. In or about 2010, Read approached Profeta regarding the creation of a Newark magazine concept with estimated monthly expenses approximating $40,000 per month.

7. Over the course of the next several years, Read and Profeta investigated the feasibility of launching a Newark-centric magazine concept, known as the "Downtowner", focused on Newark's downtown and intended to be a vehicle for the Military Park, Halsey and Broad Street neighborhoods to develop an identity and sense of liveliness.

8. After thoroughly exploring the feasibility of Read's business plan, Profeta made clear to Read in January of 2013 that the structure Read was trying to erect in the magazine proposal was not financially feasible in today's magazine world, especially given the overhead and salaries Read had hoped to draw.

9. Thus, Profeta indicated that he was essentially disinclined to move forward with Read and the vast overhead that Read proposed, but would be interested in more of a "freelance" business model, where magazine staff would be paid per article and/or issue with no office space and no equipment.

10. Unfortunately, Read declined Profeta's offer to move forward with a "freelance" model, insisting that he (and perhaps others) needed to "be on salary", and that Read would not work for freelance rates.

11. Thereafter, Read and Profeta separately pursued any interest that they might have had in creating a magazine.

12. In or about the Fall of 2013, Profeta proceeded to launch his magazine concept with the premiere issue of "*Radius*".

13. Unlike the "Downtowner" concept proposed by Read, *Radius* was neither intended as a vehicle for the Military Park, Halsey and Broad Street neighborhoods nor focused on Newark's downtown, and was based on a freelance business concept that Profeta had proffered to Read, but which Read rejected.

14. Additionally, *Radius* was largely targeted to and circulated among an affluent target market, residing outside of Newark in or about its radius, and distributed free of charge.

15. Although *Radius* was well-received, it was not and has not been, as of this filing, a commercial success.

16. Nevertheless, Read was incensed by the launch of *Radius* and commenced a campaign of callousness directed at Profeta and *Radius,* designed to defame and destroy Profeta's magazine concept so as to make room for Read's "Downtowner" in the Newark magazine marketplace.

17. Thus, Read began to communicate falsely to third-parties that Profeta had "stolen" Read's business plan and magazine concept in an effort to forestall *Radius*' success and decimate its ability to turn a profit.

18. Additionally, Read filed and continued to maintain a meritless Complaint for the same improper purpose, contending without basis that Profeta had engaged in unlawful acts in connection with the publication of *Radius*.

19. Indeed, both prior to and after the issuance of process, Read has maintained and continued to maintain that Profeta "stole" Read's business plan and/or magazine concept and even filed an Amended Complaint essentially asserting those false claims.

20. Towards this end, Read communicated falsely to Radius' funding sources, including certain advertisers, that Radius is based upon his "stolen" magazine concept, thereby inhibiting Radius' ability to raise funds for its continued operations.

21. But for Read's interference, Radius had a reasonable probability to obtain funding from such sources, who have since ceased dealing with or elected not to deal with Profeta and/or Radius.

22. For these reasons, Defendants/Counterclaimants bring this Counterclaim to obtain redress and damages for Read's unlawful conduct.

## FIRST COUNT
### (Abuse of Process)

23. Defendants repeat and reiterate the allegations contained above as if set forth herein at length.

24. Read has instituted a lawsuit with an ulterior motive, for a purpose other than that which it was designed to accomplish, and has taken further action after the issuance of process, representing a perversion of a legitimate use of process.

25. Unquestionably, Read has an ulterior motive in pursuing claims he knows to be meritless and to which has no realistic potential damages to recover, particularly with Radius' lack of commercial success.

4443833.1

26. In fact, Read has used the issuance of process upon Profeta as a means to bolster Read's assertions that Radius is based upon a "stolen" business plan and Read's magazine concept. Towards this end, Read circulated his Complaint and Amended Complaint to third parties so as to further tarnish Profeta's goodwill and reputation.

27. Thus, Read's use of process here has been pursued with improper purpose, with ulterior motive in that after the filing of the Complaint and independent of the filing, Read has used the filing of this action to further defame Profeta, show him in false light, to interfere in his business relations, to further drain Profeta's resources, ruin his reputation and prohibit Radius' ability to turn a profit. Clearly, Read's actions have perverted and abused the use of process in order to satisfy his ulterior motive.

28. As a direct and proximate result of Read's abuse of process, Defendants have suffered and continue to suffer irreparable harm and damages.

**WHEREFORE,** Defendants/Counterclaimants demand judgment against Read for compensatory, consequential and punitive damages, interest, attorney's fees, costs of suit and such other and further relief as the Court deems equitable and just.

## SECOND COUNT
**(Tortious Interference with Prospective Economic Advantage)**

29. Defendants repeat and reiterate the allegations contained in the First Count as if set forth herein at length.

30. Read knew or should have known that Profeta has and had a reasonable expectation of economic advantage through the publication of a magazine.

31. By intentionally, willfully and maliciously interfering with Profeta's magazine business and the publication of *Radius*, Read has tortuously interfered with Profeta's prospective economic advantage.

5

4443833.1

32. Read's conduct was willful, intentional and with malice for the purpose of enriching himself and at the expense of Profeta, and there was a reasonable probability that but for Read's wrongful interference, Profeta would have realized an economic benefit.

33. As a direct and proximate result of Read's tortious interference with Profeta's prospective economic advantage, Defendants have suffered and continue to suffer irreparable harm and damages.

**WHEREFORE,** Defendants/Counterclaimants demand judgment against Read for compensatory, consequential and punitive damages, interest, attorney's fees, costs of suit and such other and further relief as the Court deems equitable and just.

### THIRD COUNT
### (Defamation and Slander)

34. Plaintiffs repeat and reiterate the allegations contained in the First and Second Counts of the Counterclaim as if set forth herein at length.

35. Based upon the foregoing, Read made defamatory and slanderous statements of fact with respect to Profeta, including, but not limited to, the statements that Profeta "stole" Read's magazine concept and/or business plan for a Newark magazine.

36. Read communicated such claims to third parties other than to the Defendants, intending to lower Defendants' reputation in the community and/or deter third parties from associating with them.

37. Read published his statements as statements of fact with negligence, actual knowledge of and/or in reckless disregard of their falsity.

38. As a direct and proximate result of Read's defamation and slander, Profeta has suffered and continues to suffer irreparable harm and damages.

6

**WHEREFORE,** Defendants/Counterclaimants demand judgment against Read for compensatory, consequential and punitive damages, interest, attorney's fees, costs of suit and such other and further relief as the Court deems equitable and just.

## FOURTH COUNT
### (Tortious Interference with Contractual Relations)

39. Plaintiffs repeat and reiterate the allegations contained in the First through Third Counts as if set forth herein at length.

40. Read knew of or should have known of Defendants' contracts with funding sources and/or advertisers.

41. Read engaged in the publication of certain material, derogatory and disparaging remarks as to the quality of Profeta's business and products of a kind calculated and intending to interfere in Profeta's contracts with funding sources and/or advertisers, or to otherwise interfere in Profeta's contractual relations with potential funding sources and/or advertisers.

42. Read's publication constituted communications to third parties that were false and played a material and substantial part in leading others to and/or constituting a proximate cause for others to cease their contractual relations or cease dealings with or not to deal with Profeta.

43. Read's conduct was willful, intentional, knowing and/or reckless motivated by malice, and but for Read's unlawful interference with Profeta's contractual relations, Profeta would have obtained an economic benefit.

44. As a direct and proximate result of Read's tortious interference with Profeta's contractual relations, as set forth above, Profeta has suffered and continues to suffer irreparable harm, and damages.

**WHEREFORE,** Defendants/Counterclaimants demand judgment against Read for compensatory, consequential and punitive damages, interest, attorney's fees, costs of suit and such other and further relief as the Court deems equitable and just.

## FIFTH COUNT
### (False Light)

45. Plaintiffs repeat and reiterate the allegations contained in the First through Fourth Counts as if set forth herein at length.

46. By repeatedly and falsely claiming that Profeta had "stolen" Read's Newark magazine concept and/or magazine business plan, among other statements as aforesaid, such statements were and are objectionable to ordinary reasonable persons under the circumstances.

47. Indeed, Read published such statements with knowledge of their falsity and/or in reckless disregard as to their falsity.

48. Thus, Read published to third parties certain false facts that are and/or would be highly offensive to reasonable persons and placed Profeta and *Radius* in a false light.

49. As a direct and proximate result of Read's unlawful conduct, as aforesaid, Profeta and *Radius* have suffered and continue to suffer irreparable harm and damages.

**WHEREFORE,** Defendants/Counterclaimants demand judgment against Read for compensatory, consequential and punitive damages, interest, attorney's fees, costs of suit and such other and further relief as the Court deems equitable and just.

## SIXTH COUNT
### (Trade Libel)

50. Plaintiffs repeat and reiterate the allegations contained in the First through Fifth Counts as if set forth herein at length.

51.     Read engaged in the publication of certain material, derogatory and disparaging remarks to the quality of Profeta's business and products of a kind calculated and intending to prevent others from dealing with or conducting business with Profeta, or to otherwise interfere adversely with business relations with others.

52.     Read's publication of such material constituted communications to third parties that were false and played a material and substantial part in leading others to and/or constituting approximate cause for others to cease dealings with or not to deal with Profeta.

53.     Read's communications were false and such false communications were made intentionally knowing or recklessly, constituting a trade liable.

54.     As a direct and proximate result of Read's unlawful conduct, as aforesaid, Profeta and *Radius* have suffered and continues to suffer irreparable harm, special damages and damages.

**WHEREFORE,** Defendants/Counterclaimants demand judgment against Read for compensatory, consequential and punitive damages, interest, attorney's fees, costs of suit and such other and further relief as the Court deems equitable and just.

GREENBAUM, ROWE, SMITH & DAVIS LLP  
Attorneys for Defendants\Counterclaimants

By: /s/ Marc J. Gross  
MARC J. GROSS

Dated: January 27, 2017

9

4443833.1

## JURY DEMAND

Defendants, Paul Profeta, Paul V. Profeta & Associates, Radius: Brick City & Beyond, Steve Coleman and William Kohn, hereby demand a trial by jury as to all issues so triable.

**GREENBAUM, ROWE, SMITH & DAVIS LLP**
Attorneys for Defendants

By: /s/ Marc J. Gross
      MARC J. GROSS

Dated: January 27, 2017