## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHILIP READ,<br><br>　　　　　　Plaintiff,<br><br><br>v.<br><br>PAUL PROFETA, PAUL V. PROFETA &<br>ASSOCIATES; RADIUS:BRICK CITY &<br>BEYOND; STEVEN COLEMAN; and<br>WILLIAM KOHN<br><br>　　　　　　Defendants. | :<br>:<br>:<br>:<br>:　Case No.:<br>: 2:15-cv-2637-KM-JBC<br>:<br>:<br>:　Civil Action<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**PLAINTIFF'S MOTION TO DISMISS FIRST, SECOND AND FOURTH COUNTS OF**
**THE DEFENDANTS' AMENDED COUNTERCLAIM**

Return Date:  May 1, 2017

**LAW OFFICES OF JAMES C. DEZAO, P.A.**
322 Route 46 West, Suite 120
Parsippany, New Jersey 07054
(973) 808-8900
James C. DeZao, Attorney ID: 019511985
*Attorney for Plaintiff*

# TABLE OF CONTENTS

PAGE

Table of Authorities . . . . . . . . . . . . . . . . . . ii, iii

Preliminary Statement . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . 1

Legal Argument . . . . . . . . . . . . . . . . . . . 5

    A. The First, Second, and Fourth Counts of the Amended
    Counterclaim Fail to Comply With the Court's Order or
    State a Claim . . . . . . . . . . . . . . . . . . . 5

    I. The First Count of the Amended Counterclaim Fails to
    Allege Any Misuse of Legal Process, Restating the Same
    Allegations Set Forth in the Original Counterclaim . . . 5

    II. Count 2 Should Be Dismissed Where the Defendants Give
    No More Particulars As to the Alleged Interference or
    Reasonable Expectation. . . . . . . . . . . . . . . . 10

    III. The Fourth Count Should Be Dismissed For Failure to
    Give Any Specifics Referenced by the Court. . . . . . . 16

    B. Counts One, Two, and Four Should Be Dismissed With
    Prejudice Where The Amended Counterclaim Evinces No
    Plausible Causes of Action. . . . . . . . . . . . . . 20

Conclusion . . . . . . . . . . . . . . . . . . . . . . 23

i

## TABLE OF AUTHORITIES

CASES:                                                                    PAGE(S)

*Advanced Oral Techs, LLC v. Nutrex Research, Inc.*, 2011 WL
1080204, 4 (D.N.J.) . . . . . . . . . . . . . . . . . . . 18

*Aschroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1955,
173 F.Ed.2d 868 (2009) . . . . . . . . . . . . . . . . . 21

*Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167
L.Ed.2d 929 (2007) . . . . . . . . . . . . . . . . . . . 21

*California Pub. Employees' Ret. Sys. v. Chubb Corp.*,
394 F.3d 126, 166 (3d Cir. 2004) . . . . . . . . . . . . 22

*Debjo Sales, LLC v. Houghton Mifflin Harcourt Publishing Co.*,
2015 WL 1969380, 7 (D.N.J.) . . . . . . . . . . . . . . . 16

*Finnerty v. U.S. Postal Service*, 2006 WL 54345, 5 (D.N.J.). . 21

*Flyte Tyme Tunes v. Riggers & Razzles*, 1988 WL 142403, 4-5
(D.N.J.) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Fowler v. UPMC Stadyside*, 579 F.3d 203, 210 (3d Cir. 2009). . 21

*Frelin Const. Co. v. Yundt*, 417 F.2d 312, 312
(3d Cir. 1969) . . . . . . . . . . . . . . . . . . . . . 21

*Graco, Inc. v. PMC Global, Inc.*, 2012 WL 762448,
17 (D.N.J.) . . . . . . . . . . . . . . . . . . . . . . . 18

*Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108
(3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . 21

*Lelina v. 1st 2nd Mortg. Co. of NJ, Inc.*, 2012 3079185, 6
(D.N.J.) . . . . . . . . . . . . . . . . . . . . . . . . 8

*MZL Capital Holdings, Inc. v. TD Bank, N.A.*, 2016
WL 4163827, 12 (D.N.J.) . . . . . . . . . . . . . . . . . 22

*Phillips v. County of Allegheny*, 515 F.3d 224, 235 (3d Cir.
2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Plasticware, LLC v. Flint Hills Res., LP*, 852 F.Supp.2d 398
(S.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . 15

*Zebrowski v. Wells Fargo Bank, N.A.*, 657 F.Supp.2d 511, 518
(D.N.J. 2009) . . . . . . . . . . . . . . . . . . . . . . 10

## Preliminary Statement

The Plaintiff, Philip Read ("the Plaintiff"), submits this Memorandum of Law in Support of his Motion to Dismiss the First, Second, and Fourth Counts of the Defendants' Amended Counterclaim.  For the reasons that follow, the Plaintiff's Motion should be granted and those Counts of the Amended Counterclaim dismissed with prejudice.

## Statement of Facts

In the Court's January 11, 2017 Order on the Plaintiff's Motion to Dismiss the Defendants' original Counterclaim, the First, Second, and Fourth Counts of the Defendants' Counterclaim were Dismissed Without Prejudice (Document 38).

With regard to the First Count, Malicious Use Of Process, the Court ruled that the Plaintiff's alleged "oral statements" to third parties "did not involve any use of legal process, and did not depend on legal process, and were not enabled by the filing or issuance" thereof (*Id.* at p. 8).  The "Counterclaim itself seems to imply as much, alleging that after the Complaint was filed," the Plaintiff's "statements to other continued much as before" (*Id.*).  The Court determined that the Defendants "never plausibly" alleged that the Plaintiff "used process issued in this action for improper purposes or conducted this litigation in an improper manner" (*Id.* at p. 9).

1

While considering the allegation that the Plaintiff "has unlawfully used the filing of this action as a vehicle to further defame Profeta" (*Id.*), the Court found no "factual allegations [to] support that contention" (*Id.*).

> There is no allegation here of abusive pursuit or prolongation of litigation, . . . , that would bespeak some collateral agenda. Nor is there any indication here, . . . , that litigation was instituted as an indirect means of harming a business competitor who is not a party to the action. . . .
>
> What remains is the Counterclaim's allegation that, post-filing, Read is still going around telling others that Profeta stole his idea. Read's alleged failure to go silent after filing the action cannot itself establish malicious abuse of process. This tort is not a means of imposing a *de facto* litigation gag order.

(*Id.*).

The Defendants erred in characterizing the Plaintiff's action as "process" that was "abused" (*Id.* at pp. 9-10). The tort concerns "the misuse of the court's coercive power or writs" (*Id.* at p. 10). The Defendants' claim "does not allege further acts or a particular court-issued process that Read abused for ulterior purposes" (*Id.*).

With respect to Counts Two and Four, the Defendants failed to label their Counterclaims and did not distinguish between the claims in their briefing, but the Court read the Second Count to allege Tortious Interference with a Prospective Economic Benefit

2

and the Fourth to allege Tortious Interference with a Contract
(Document 38, p. 10).

It "agree[d]" that the Defendants' allegations were "mere
boilerplate recitations of elements of a claim for tortious
interference" (*Id.* at p. 11); that the Defendants made no
allegation that they had a reasonable expectation of economic
advantage; and that they did not claim that there was a
contractual relationship between them and a third party (*Id.*).

The contract or prospective contract identified in the
Counterclaim was "one which might have existed between Read and
Profeta" (*Id.*). Under principles of contract law, the Court
held, "interference with prospective relations does not come
into play"; and the Court "therefore set aside any claim of
interference with Read and Profeta's own business dealings" (*Id.*
at p. 12).

The Court looked to Paragraphs 25, 34, and 35 of the
Counterclaim, alleging that the Plaintiff tortuously interfered
with the Defendants' prospective economic advantage, made
remarks "intending to prevent others from dealing with or
conducting business with" the Defendants, or to otherwise
interfere adversely with business relations with others; and
"played a material and substantial part in leading others and/or
constituting a proximate cause for others to cease dealing with

or not to deal with" them, respectively (*Id.*).  It found that

such "allegations essentially recite some of the legal elements

of a cause of action for tortious interference.

> No actual or potential contract is identified, or even
> generally described. There are only vague allegations
> that Read made statements to unidentified "third
> "parties" or interfered with Profeta's unspecified
> dealings with unnamed "others."  I do not think that
> these allegations sufficiently give notice of what
> particular benefit the defendants expected and, but
> for Read's "remarks," would have reaped.  The
> Counterclaims also fail to allege or demonstrate
> a "reasonable probability" of an expected benefit.
> In short, the essential who, what, when, where, and
> how are lacking. . . .

(*Id.*).

The Defendants timely filed an Amended Counterclaim.

Therein, they made the following additions to the factual

allegations in their Counterclaim only:  They added Paragraph

20, alleging that the Plaintiff "communicated falsely to Radius'

funding sources, including certain advertisers, that Radius is

based on his stolen magazine concept, thereby" harming the

Defendants' "ability to raise funds" (Document 41, p. 4); and

Paragraph 21, alleging that, but for the Plaintiff's

"interference," they "had a reasonable probability to obtain

funding from such sources, who have since ceased dealing with or

elected not to deal with" them (*Id.*).

Aside from these added facts, and other than those

allegations specified below appearing within each challenged Count, the Defendants have made no substantive changes to their pleading so as to meet with the Court's directive.  Instead, they have re-filed Counterclaims that recite the "bare bones" legal elements, while asserting no facts to sustain claims for Malicious Use of Process (the only new allegation being that the Plaintiff "shared" his filed, public Complaint with "third parties"), Tortious Interference With Prospective Economic Relations (there being no mores specific identity of unnamed "third parties" and "others"), or Tortious Interference with Contract (there being no details as to alleged contracts). Given that these details evidently do not exist, the Plaintiff respectfully submits that dismissal of the First, Second, and Fourth Amended Counterclaims should be with prejudice.

### Argument

**A.   The First, Second, and Fourth Counts of the Amended Counterclaim Fail to Comply With the Court's Order or State a Claim.**

**I.   The First Count of the Amended Counterclaim Fails to Allege Any Misuse of Legal Process, Restating the Same Allegations Set Forth in the Original Counterclaim.**

The Defendants' amendment of the Second Count betrays that there are no facts to support a Malicious Abuse of Process claim.  Instead, they try to amplify their theory that this

5

entire action is premised upon an improper motive (*see*, Document 41, ¶¶24-25).  In this regard, Paragraph 21 of the original Counterclaim is identical to Paragraph 24 of the Amended Counterclaim ("Read has instituted a lawsuit with an ulterior motive, for a purpose other than that which it was designed to accomplish, and has taken further action after the issuance of process, representing a perversion of a legitimate use of process")(*c.f.*, Document 30, ¶22 with Document 41, ¶24).  To "bolster" that conclusory allegation, the Defendants have added Paragraph 25– to wit, that the Plaintiff "had an ulterior motive in pursuing claims he knows to be meritless and to which has [sic] no realistic" chance of success (Document 41, p. 5). The Defendants' amended claim emphasizing the Plaintiff's "ulterior motive" alone hints at the inapplicable cause of action of Malicious Use Of Process that the Court noted could not "be pursued as a counterclaim to the very complaint being challenged" because it requires "favorable termination" of the lawsuit (Document 5, n. 6). As recognized in the Court's Order, it is "rare" to assert even the Malicious Abuse Of Process claim as a counterclaim because such claim "cannot escape the gravitational pull of the main claim and establish that some ulterior purpose or further acts are being pursued" (Document 38, pp. 6-7).

The Court also cited to *Flyte Tyme Tunes v. Riggers & Razzles,* 1988 WL 142403, 4-5 (D.N.J.), noting that even if the defendants had "some basis" for alleging that the plaintiffs brought the lawsuit with an "ulterior motive," they "could not overcome the hurdle of showing that plaintiffs" committed an action perverting the use of process in order to satisfy it (*Id.* at p. 7).

The only "act" that the Defendants allege in the Amended Counterclaim is that "Read circulated his Complaint and Amended Complaint to third parties so as to further tarnish Profeta's goodwill and reputation" (Document 41, ¶26). In an effort to establish the validity of their claim, the Defendants insert what can best be dubbed legal argument into their pleading, writing:

> Thus, Read's use of process here has been pursued with improper purpose, with ulterior motive in that after the filing of the Complaint and independent of the filing, Read has used the filing of this action to further defa[m]e Profeta, show him in a false light, to interfere in his business relations, to further drain Profeta's resources, ruin his reputation and prohibit Radius' ability to turn a profit. Clearly, Read's actions have perverted and abused the use of process in order to satisfy his ulterior motive.

(*Id.* at ¶27).

This type of legal recitation of the elements of a cause of action is insufficient to state a cause of action.

*See, Lelina v. 1st 2nd Mortg. Co. of NJ, Inc.,* 2012 3079185, 6
(D.N.J.)("Here, Plaintiffs' Complaint is almost entirely a
recitation of legal conclusions closely mirroring the language
of the statutes Defendants are claimed to have violated.
Indeed, the Complaint does more to inform this Court of the
state of the law than it does to inform the Court of the facts
upon which Plaintiffs' claims are based. . . . the Court is left
with the impression that either Plaintiffs are unable to
identify the true nature of the causes of action they allege, or
that Plaintiffs allege that Defendants have violated each
statute in virtually every way conceivable.  Plaintiffs must
provide some grounds upon which this Court may assess the
sufficiency of each of the claims asserted, yet they have failed
to do more than vaguely allege" such).

The Defendants' amendment falls squarely within the type of
alleged conduct that the Court found not to allege Malicious
Abuse of Process = – failure to observe a "gag" order on things
related to an action. Even accepting the Defendants' allegations
as true, the Plaintiff's Complaint is on a public docket that
may be accessed by anyone. If the Plaintiff circulated it to
*anyone*, he was simply providing them with a copy of a document
they could access anyway. There was no Court-initiated or
permitted action allegedly misused.  According to the

8

Defendants, any plaintiff who shares his or her publicly-filed complaint with a third party could be "misusing" or "perverting" process if a court independently finds such action to be taken with an "ulterior motive." According to such theory, it is a party's subjective intent – e.g., desire to hurt a defendant (as opposed to an altruistic or benign desire to just "share" a pleading with a third-party) – that should render a non-legal and perfectly permissible action a "perversion" of "process." This would so allow the "counterclaim of malicious use of process to sale under the false flag of malicious abuse of process" (Document 38, p. 5, n. 6).

The Court addressed the Defendants' allegation of post-filing alleged false statements when it wrote, "Profeta may consider such statements to third parties (whether pre- or post-filing) to be false or unfair.

> Regardless, those oral statements did not involve any use of legal process, did not depend on legal process, and were not enabled by the filing or issuance of process. Indeed, the Counterclaim itself seems to imply as much, alleging that after the Complaint was filed, Read's statements to others continued much as before.

(Document 38, p. 8)[emphasis added]. The Defendants' attempt to reframe these same allegations as the Plaintiff having circulated the Complaint no more cures this deficiency than the assertion that the Plaintiff continued to make allegedly false

statements. The Court noted that the Plaintiff's assertion "in
his complaint" that the Defendants "stole his idea surely cannot
constitute a further act in furtherance of an ulterior, improper
purpose; . . . ." (Document 38, p. 9).  If the allegation within
the Complaint cannot form the basis for a further act, then
sharing that allegation within the Complaint itself cannot
either.

The alleged circulation of the Complaint to third parties
does not fall within the ambit of "attachment, execution,
garnishment, sequestration proceedings, arrest of the personal
and criminal prosecution" or "use of a subpoena" (Document 38,
p. 6), each of which directly involves the actual use of court
processes.  *See, Zebrowski v. Wells Fargo Bank, N.A.,* 657
F.Supp.2d 511, 518 (D.N.J. 2009)(abuse of process claim refers
not to "all proceedings in a legal action," but rather to
"certain products of litigation that a court issues, . . . .").

The Defendants' First Count neither states a claim  nor
meets the Court's clear directives in its Order.  There being no
factual basis for it, the First Count should be dismissed.

## II.   Count 2 Should Be Dismissed Where the Defendants Give No More Particulars As to the Alleged Interference or Reasonable Expectation.

The Court noted that the Defendants "have failed to
label their counterclaims and do not distinguish between Counts

10

2 and 4 in their briefing" (Document 38, p. 10).  It "read Count 2 to allege tortious interference with a prospective economic benefit and Count 4 to allege tortious interference with a contract" (*Id.*).

> Read argues that the defendants' allegations are mere boilerplate recitations of elements of a claim for tortious interference.  Further, he says, the defendants make no allegations that the defendants had a "reasonable expectation of economic advantage" . . . , as is needed for Count 2, nor any allegations of a contractual relationship between the defendants and third party, as is needed for Count 4 . . . . I agree.

(*Id.* at p. 11).

While the contract or prospective contract identified in the Counterclaim is the one that might have existed between the Plaintiff and Profeta, "the rule of tortious interference was not meant to upset the rules governing the contractual relationship itself" (*Id.* at p. 11).  The Court thus "set aside any claim of interference with Read and Profeta's own business dealings" (*Id.*).

As to any other actual or potential contractual relations, the Court found the only potentially relevant allegations to be that "Read has tortuously interfered with Defendants' prospective economic advantage"; and the Plaintiff made remarks "intending to prevent others from dealing with or conducting business with Profeta and *Radius*, or to otherwise interfere

11

adversely with" business relations with them that played a part "in leading others . . . to cease dealing with or not to deal with Profeta and *Radius*" (*Id.* at p. 11).

While those "allegations essentially recite some of the legal elements of a cause of action for tortious interference[,]" the Court held that no "actual or potential contract is identified, or even generally described" (*Id.*). Instead, only "vague allegations" exist that the Plaintiff made "unspecified statements to identified third parties or interfered with Profeta's unspecified dealings with unnamed others" (*Id.*).

> . . . . I do not think that these allegations
> sufficiently give notice of what particular
> benefit the defendants expected and, but for
> Read's "remarks," would have reaped. The
> Counterclaims also fail to allege or demonstrate
> a "reasonable probability" of an expected benefit.
> In short, the essential who, what when, where,
> and how are lacking. Accordingly, I find that the
> defendants fail to state a claim for either variety
> of tortious interference . . . .

(*Id.* at pp. 12-13).

In their Amended Counterclaim, the Defendants now label their claims, the Second Count being Tortious Interference With Prospective Economic Advantage (Document 41, p. 5). Once again, however, they allege the basic legal elements without giving the particulars the Court demanded:

30. Read knew or should have known that Profeta has and had a reasonable expectation of economic advantage through the publication of a magazine.

31. By intentionally, willfully, and maliciously interfering with Profeta's business and the publication of *Radius*, Read has tortuously interfered with Profeta's prospective economic advantage.

32. Read's conduct was willful, intentional, and with malice for the purpose of enriching himself and at the expense of Proefta, and there was a reasonable probability that but for Read's wrongful interference, Proefta would have realized an economic benefit.

33. As a direct and proximate result of Read's tortious interference with Profeta's prospective economic advantage, Defendants have suffered and continue to suffer irreparable harm and damages.

(*Id.* at pp. 5-6).

All the Defendants have done is expand the same legally loaded language in their original Counterclaim, making the Count longer but no less sparse with details. There is no "when, where, who," or what type of prospective economic advantage was allegedly lost. The Amended claim recites the elements of the cause of action without any facts to support it.

A comparison of the original with their Amended Counterclaim reveals that the Defendants changed some language, but that the Second Count remains the same. The Second Count in the original Counterclaim alleges:

25.   By intentionally, willfully, and maliciously
      interfering with Defendants' business and the
      publication of *Radius*, Read has tortuously
      interfered with Defendants' prospective
      economic advantage.

26.   Read's conduct was willful, intentional, and with
      malice for the purpose of enriching himself and
      at the expense of Defendants.

27.   As a direct and proximate result of Read's
      tortious interference with Defendants'
      prospective economic advantage, Defendants have
      suffered and continue to suffer irreparable
      harm and damages.

(Document 30, p. 18).

The Defendants add the allegation that the Plaintiff

subjectively "knew or should have known" that they had a

reasonable expectation of economic advantage "through the

publication of a magazine" (Document 41, ¶30). The Defendants

indicate that the prospective economic advantage was just

general – that they published "a magazine" (*Id.*).

Paragraph 25 of the original Counterclaim is unaltered in

Paragraph 31 of the Amended Counterclaim (*c.f.,* Document 30, p.

18 with Document 41, p. 6). The only change the Defendants made

to Paragraph 26 of the original claim is the boilerplate

contention that "there was a reasonable probability that but

for" the Plaintiff's alleged interference, the Defendants would

have "realized an [still unspecified] economic benefit"

(Document 41, ¶32).

14

Paragraph 27 of the original Counterclaim appears, unaltered, in Paragraph 33 of the Amended Counterclaim (*c.f.*, Document 30, p. 18 with Document 41, p. 6).

The Defendants hence have amended to use the language the Court did, but without any facts behind it.  Because the premise of their claim is evidently that the publication of the magazine itself was the "prospective economic advantage," the Defendants allege no advantage that was actually lost.  In fact, they do not even allege that they lost profits as a result of the alleged "tortious interference."  Because their claim is premised on the act of publishing itself, the Defendants lack details of who, what, and where was allegedly involved.  It is a vague allegation on their part that the economic advantage was not with a particular person or entity but in an act (publication).  They have no "actual or potential contract" to identify (Document 38, p. 12).  These claims do not even demonstrate a "reasonable probability" of any particular "expected benefit" (*Id.*).

In *Plasticware, LLC v. Flint Hills Res., LP*, 852 F.Supp.2d 398 (S.D.N.Y. 2012), the plaintiff alleged that it had "agreements" with its customers, without providing specifics about any of those agreements.  *Id.* at 404.  The court held that the plaintiff's failure to allege "adequate details about a

15

specific contract" justified dismissing the claim for tortious interference with contract.   *Id.*   And see, *Debjo Sales, LLC v. Houghton Mifflin Harcourt Publishing Co.*, 2015 WL 1969380, 7 (D.N.J.)(even where plaintiff provided a list of 23 school districts with which it had "agreements," it did not give adequate specifics regarding them, including whether they paid or the effective date, hence failing to identify valid relevant contracts with reasonable specificity).

The Second Count of the Amended Counterclaim fails to meet any of the particulars specified in the Court's Order or state a claim; therefore, it should be dismissed.

### III. The Fourth Count Should Be Dismissed For Failure to Give Any Specifics Referenced by the Court.

The Defendants label the Amended Fourth Count Tortious Interference With Contractual Relations (Document 41, p. 7). The Defendants offer the following allegations:

41.    Read engaged in the publication of certain material, derogatory and disparaging remarks as to the quality of Profeta's business and products of a kind calculated and intending to interfere with Profeta's contracts with funding sources **and/or** advertisers, or to otherwise interfere in Proefta's contractual relations with potential Funding sources **and/or** advertisers.

42.    Read's publication constituted communications to **third parties** that were false and played a material and substantial part in leading **others** to and/or constituting a proximate cause for **others** to cease their contractual relations or

16

cease dealings with or not deal with Profeta.

43.   Read's conduct was willful, intentional, knowing
and/or reckless motivated [sic] by malice, and
but for Read's unlawful interference with
Profeta's contractual relationships, Profeta
Would have obtained an economic benefit.

(*Id.* at p. 7) [**emphasis added**].

The Defendants also added Paragraphs 20-21 to the factual

recitation in their Amended Counterclaim.   Those facts are

significant not because they make out – but because they belie –

the claim.   Specifically, those allegations reference "funding

sources" and "certain advertisers" (Document 41, p. 4), without

identifying the "funding sources" or "certain advertisers" with

any particularity.

The Defendants left out "who, what, where," only mentioning

that "third parties" or "others" ceased to do business with

them.   So vague are the Defendants' claims that they do not

specify whether it was "funding sources **and/or** advertisers" with

whom they purportedly would have done business. Though the Court

noted that the original claim referenced "unnamed" "others"

(Document 38, p. 12), the Defendants have failed to give any

names now, leading to the conclusion that they have none.

Certainly, the Defendants should know whether it was funding

sources or advertisers, or both, that allegedly stopped doing

business with them.   This vague reference to "others" fails to

17

make out the elements of a cause of action.  *See, e.g., Graco, Inc. v. PMC Global, Inc.,* 2012 WL 762448, 17 (D.N.J.)("Claimed loss of . . . unknown customers is insufficient"); *Advanced Oral Techs, LLC v. Nutrex Research, Inc.,* 2011 WL 1080204, 4 (D.N.J.)("Plaintiffs must allege an injury that is more concrete than lost business of unknown, unsolicited, or hypothetical customers").

A comparison of the Defendants' original Counterclaim with the Amended Counterclaim exposes the addition of just a few words in the latter.  In Paragraph 34 of the original Counterclaim, the Defendants alleged:

> Read engaged in the publication of certain material, derogatory and disparaging remarks to the quality of Profeta's and *Radius'* business and their products of a kind calculated and intending to prevent others from dealing with or conducting business with Profeta and *Radius*, or to otherwise interfere adversely with business relations with others.

(Document 30, p. 19).

In amended Paragraph 41, the Defendants have added "funding sources and/or advertisers" twice, otherwise leaving the allegation alone (Document 41, p. 7).  Even assuming, *arguendo,* that these "funding sources and/or advertisers" are not "third parties" or "others," the Defendants still give no "notice of what particular benefit the defendants expected" and would have received; nor do they demonstrate the "reasonably probability of

18

an expected benefit" (Document 38, p. 12).

In this way, Paragraph 35 of the original Counterclaim is restated without any addition, subtraction, or other alteration in Paragraph 42 of the Amended Counterclaim (*c.f.,* Document 30, p. 19 with Document 41, p. 7).

The Defendants add Paragraph 43 to their Amended Counterclaim to parrot the language – but not reflect the spirit – of the Court's Order.  They allege that, but for the Plaintiff's alleged interference, they "would have obtained an economic benefit" (Document 41, ¶43).

In using these "buzz words," the Defendants expose the fact that they have no specific relations that were allegedly interfered with, and cannot specify what was lost. That the amendment gives no greater specificity but expands on the "trigger" words associated with the cause of action underscores the infirmity of the claim.

In short, the Plaintiff is given no more substantive information in the Fourth Count of the Amended Counterclaim than he was given in the Fourth Count of the original Counterclaim; the lack of detail is simply couched more comfortably behind conclusory statements of legal elements designed to "fill in" the lack of fact.

19

Because the Defendants have failed to meet with the Court's Order, the Fourth Count should be dismissed.

**B.   Counts One, Two, and Four Should Be Dismissed With Prejudice Where The Amended Counterclaim Evinces No Plausible Causes of Action.**

While it is recognized that courts generally grant Motions to Dismiss without prejudice, the Defendants' repetitive and conclusory Amended Counterclaim – that either duplicates the original or parrots the language in the Court's Order without giving any additional facts – evinces that they have no facts upon which to state claims for Malicious Use of Process or Tortious Interference.  It is respectfully submitted that the Defendants' inability to adequately amend these claims underscores that further leave to amend would be futile and unnecessarily delay this process. Given the inadequacy of the Amended Counterclaim, further leave would most certainly result in the Plaintiff being forced to again move to dismiss.

For these reasons, the Plaintiff respectfully posits that any further leave to amend would be futile and should be denied. *See, Phillips v. County of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008)("We have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a court must permit a curative amendment, unless an amendment would be inequitable or futile")(*citing,*

*Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). *See, e.g., Finnerty v. U.S. Postal Service*, 2006 WL 54345, 5 (D.N.J.)·("Thus, even if this Court were to grant Finnerty an oppor<sup></sup>ɨnity to further amend his pleading . . . , the amended pleading would be futile, as the proposed claims could not withstand a motion to dismiss"); *Frelin Const. Co. v. Yundt*, 417 F.2d 312, 312 (3d Cir. 1969)(denying complaint with prejudice for failure to state cause of action where appellate court agreed "with the district court that the appellant failed, after ample opportunity to amend his complaint, adequately allege facts which would" make out a claim").

Counts One, Two and Four of the Defendants' Amended Counterclaim run directly afoul of the rule announced in *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), where "pleading standards . . . shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief" to state a claim. *Fowler v. UPMC Stadyside*, 579 F.3d 203, 210 (3d Cir. 2009). In *Aschroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1955, 173 F.Ed.2d 868 (2009), the Court made clear that the *Twombly* "facial plausibility" pleading requirement applies to all civil suits in federal court. After *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to

21

dismiss: "threadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, do not
suffice." *Fowler, supra*, 578 F.3d at 210.

In *Twombly*, the Supreme Court rejected exactly what the
Defendants have done — and then redone — here, holding that a
pleading offering only "labels and conclusions" or "a formulaic
recitation of the elements of a cause of action, will not do."
550 U.S. at 555; *Fowler*, 578 F.3d at 210.

The Defendants' failure to remedy the First, Second, and
Fourth Counts of the Counterclaim despite the Court's clear
directive warrants denial with prejudice. *See, MZL Capital
Holdings, Inc. v. TD Bank, N.A.,* 2016 WL 4163827, 12
(D.N.J.)("Dismissal with prejudice, however, may be an
appropriate exercise of discretion where the court has
previously provided the plaintiffs with a detailed roadmap for
curing the deficiencies in their claims" and the plaintiffs
still fail to remedy those deficiencies in the amendment");
*California Pub. Employees' Ret. Sys. v. Chubb Corp.,* 394 F.3d
126, 166 (3d Cir. 2004)(affirming district court's dismissal of
second amended complaint with prejudice where district court had
previously dismissed first amended complaint with leave to amend
and "provided plaintiffs with a detailed blueprint of how to
remedy the defects in their claims" but plaintiffs "utterly

failed to comply with the District Court's directives").

Hence, dismissal of Counts One, Two, and Four with prejudice is appropriate.

### Conclusion

For the reasons set forth above, the First, Second, and Fourth Counts of the Amended Counterclaim should be dismissed with prejudice.

Law Offices of James C. DeZao, P.A.

Dated: 3-30-17          By: _____

JAMES C. DEZAO, ESQ.
Attorney for Plaintiff

23