UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHILIP READ,<br><br>    Plaintiff,<br><br>v.<br><br>PAUL PROFETA, PAUL V. PROFETA & ASSOCIATES, RADIUS: BRICK CITY & BEYOND, STEVEN COLEMAN and WILLIAM KOHN,<br><br>    Defendant. | 2:15-cv-02637-KM-JBC<br><br>CIVIL ACTION |

---

**DEFENDANTS' BRIEF IN OPPPOSITION TO PLAINTIFF'S MOTION TO DISMISS THE SECOND AND FOURTH COUNTS OF THE AMENDED COUNTERCLAIM**

---

GREENBAUM, ROWE, SMITH & DAVIS LLP
Marc J. Gross, Esq.
Christine F. Marks, Esq.
75 Livingston Avenue, Suite 301
Roseland, New Jersey 07068-3701
(973) 535-1600
Attorneys for Defendants Paul
Profeta, Paul V. Profeta &
Associates, Radius: Brick City &
Beyond, Steven Coleman and William
Kohn

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................1

COUNTER-STATEMENT OF FACTS .......................................................................2

LEGAL ARGUMENT ..............................................................................................5

      POINT I ........................................................................................................5

      PLAINTIFF'S MOTION TO DISMISS SHOULD BE DENIED
      BECAUSE DEFENDANTS HAVE PLEAD PLAUSIBLE CAUSES OF
      ACTION IN THE SECOND AND FOURTH COUNTS OF THE
      AMENDED COUNTERCLAIM. ..................................................................5

      POINT II .......................................................................................................9

      THE SECOND COUNT OF THE AMENDED COUNTERCLIAM
      PLEADS A COGNIZABLE CLAIM OF TORTIOUS
      INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE. ......................9

      POINT III .....................................................................................................12

      THE FOURTH COUNT OF THE AMENDED COUNTERCLAIM SETS
      FORTH A CONGNIZABLE CAUSE OF ACTION FOR TORTIOUS
      INTERFERENCE WITH CONTRACTUAL RELATIONS. ...........................12

      POINT IV .....................................................................................................16

      IN THE EVENT THAT ANY ONE OF THE ABOVE CLAIMS IS
      FOUND TO BE INSUFFICIENTLY PLEAD, DEFENDANTS
      REQUEST LEAVE TO AMEND. ..................................................................16

CONCLUSION ......................................................................................................17

TABLE OF AUTHORITIES

Page

**Cases**

Abdelhamid v. Altria Group, Inc.
  515 F.Supp.2d 384 (S.D.N.Y. 2007) .................................................. 7

ALA, Inc. v. CCAIR, Inc.
  29 F.3d 855 (3d Cir. 1994) .......................................................... 5

Ashcroft v. Iqbal
  129 S. Ct. 1937 (2009) .......................................................... 6, 7, 8

Bell Atl. Corp. v. Twombly
  550 U.S. 544 (2007) .......................................................... 7, 8, 9

Bell Atlantic Corp. v. Twombly
  550 U.S. 544 (2007) .......................................................... 6

Borelli v. City of Reading
  532 F.2d 950 n.1 (3d Cir. 1976) .................................................. 17

Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc.
  482 F.3d 247 (3d Cir. 2007) ...................................................... 16

Florian Greenhouse, Inc. v. Cardinal IG Corp.
  11 F.Supp.2d 521 (D.N.J. 1998) .................................................. 13

Grayson v. Mayview State Hosp.
  293 F.3d 103 (3d Cir. 2002) ...................................................... 16

Hedges v. United States
  404 F.3d 744 (3d Cir. 2005) ...................................................... 7

Kehr Packages, Inc. v. Fidelcor, Inc.
  926 F.2d 1406 (3d Cir. 1991) ..................................................... 7

Northern Star Management, Inc. v. The Insurance
    Professionals, Inc.
  2013 U.S. Dist. LEXIS 135286 (D.N.J. Sept. 23, 2013) ..................... 10

Phillips v. County of Allegheny
  515 F.3d 224 (3d Cir. 2008) .................................................. 8, 12, 16

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7
   (3d Cir. 2002) ............................................................................ 7

*Shane v. Fauver*
   213 F.3d 113 (3d Cir. 2000) ................................................ 16

*Slim CD, Inc. v. Heartland Payment Sys, Inc.*,
   2007 U.S. Dist. LEXIS 62536 (D.N.J. Aug. 24, 2007) ............ 8

*Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts
   Inc.*
   140 F.3d 478 (3d Cir. 1998) ................................................ 5

*Zippertubing Co. v. Teleflex Inc.*
   757 F.2d 1401 (3d Cir. 1985) ............................................ 10


**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller, *Federal
   Practice and Procedure*
   §1182 (3d ed. 2004) ............................................................ 8


**Rules**

Fed. R. Civ. P. 12 (b)(6) ................................................ 6, 7

Fed. R. Civ. P. 8(a)(2) .................................................. 9

Fed. R. Civ. P. 8(e) ...................................................... 9

## PRELIMINARY STATEMENT

Plaintiff's initial motion to dismiss the Counterclaim was granted in part and denied in part. In accordance with the dictates of the Court's Opinion, Defendants filed an Amended Counterclaim. Rather than defend Defendants' well plead claims, plaintiff instead elects to further burden this Court with a meritless motion to dismiss.

Certainly, when the Court accepts all of the well plead factual allegations as true, Defendants have more than demonstrated a "plausible" right to relief for tortious interference with contractual relations and tortious interference with prospective economic advantage under the settled legal standard set forth by our Supreme Court.

For these reasons the Court should deny Read's motion to dismiss the Second and Fourth Counts of the Amended Counterclaim.[1]

---

[1] Defendants do not oppose that portion of plaintiff's motion seeking to dismiss the First Count of the Amended Counterclaim asserting a cause of action for abuse of process.

## COUNTER-STATEMENT OF FACTS

In or about 2010, plaintiff Philip Read ("Read") approached Paul Profeta ("Profeta") regarding the creation of a Newark magazine concept with estimated monthly expenses approximating $40,000 per month. Over the course of the next several years, Read and Profeta investigated the feasibility of launching a Newark-centric magazine concept, known as the "Downtowner", focused on Newark's downtown and intended to be a vehicle for the Military Park, Halsey and Broad Street neighborhoods to develop an identity and sense of liveliness. [Amended Counterclaim ¶¶6-7].

After thoroughly exploring the feasibility of Read's business plan, Profeta advised Read in January of 2013 that his magazine proposal was not financially feasible, especially given the overhead and salaries Read had hoped to draw. Profeta therefore advised Read that he would not move forward with Read's proposed magazine. Profeta would, however, be interested in more of a "freelance" business model, where magazine staff would be paid per article and/or issue with no office space and no equipment. [Amd. Counterclaim ¶¶8-9].

Read rejected Profeta's offer to move forward with Profeta's proposed "freelance" model, insisting that he (and perhaps others) needed to "be on salary", and that Read would not work for freelance rates. As a result, Read and Profeta

separately pursued their interests in creating a magazine. In or about the Fall of 2013, Profeta proceeded to launch his magazine concept with the premiere issue of "*Radius*". [Amd. Counterclaim ¶¶10-12].

Unlike Read's proposed "Downtowner", *Radius* was neither intended as a vehicle for the Military Park, Halsey and Broad Street neighborhoods nor focused on Newark's downtown. Additionally, *Radius* was largely targeted to and circulated among an affluent target market, residing outside of Newark but in or about its radius, and distributed free of charge. Moreover, *Radius* was based on the freelance business concept that Profeta had proffered to Read, but which Read rejected. Although initially well-received, *Radius* was not and has not been, as of this filing, a commercial success due to Read's intentional and malicious interference with Profeta's funding sources and advertisers. [Amd. Counterclaim ¶¶13-14].

Apparently incensed by the launch of *Radius,* Read commenced a campaign designed to defame and destroy *Radius* so as to make room for Read's proposed "Downtowner" in the Newark magazine marketplace. Thus, Read began to communicate falsely to third-parties that Profeta had "stolen" Read's business plan and magazine concept in an effort to forestall *Radius'* success and inhibit or decimate its ability to turn a profit. [Amd. Counterclaim ¶¶15-17].

-3-

As part of his devious campaign, Read filed and continued to maintain a meritless Complaint for the same improper purpose, contending without basis that Profeta had engaged in unlawful acts in connection with the development and publication of *Radius*. In furtherance of his plan, Read circulated his Complaint and Amended Complaint to third parties so as to further tarnish Profeta's goodwill and reputation. [Amd. Counterclaim ¶18; ¶26].

Indeed, both prior to and after the issuance of process, Read has maintained and continued to maintain that Profeta "stole" Read's business plan and/or magazine concept and even filed an Amended Complaint essentially asserting those false claims. Specifically, Read communicated falsely to *Radius'* funding sources, including certain advertisers, that *Radius* is based upon his "stolen" magazine concept, thereby inhibiting *Radius'* ability to raise funds for its continued operations. [Amd. Counterclaim ¶¶19-20].

Indeed, but for Read's intentional and malicious interference, *Radius* had a reasonable probability of obtaining funding from such sources, who have since ceased dealing with or have elected not to deal with Profeta and/or *Radius* after hearing Read's malicious falsehoods and statements. [Amd. Counterclaim ¶21].

For these reasons, Defendants/Counterclaimants filed a counterclaim to obtain redress and damages for Read's unlawful and injurious conduct. [Amd. Counterclaim ¶¶18-20].

## LEGAL ARGUMENT

### POINT I

**PLAINTIFF'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE DEFENDANTS HAVE PLEAD PLAUSIBLE CAUSES OF ACTION IN THE SECOND AND FOURTH COUNTS OF THE AMENDED COUNTERCLAIM.**

Motions to dismiss are disfavored and should be granted sparingly and cautiously and then only where it appears to a certainty that no set of facts could be proven which would entitle the pleader to any relief. ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (Dismissal is appropriate only if after accepting all allegations as true and drawing all inferences in plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations). In deciding a motion to dismiss, all allegations in the complaint, or in this instance, the Amended Counterclaim, must be taken as true and viewed in the light most favorable to Profeta. See Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998).

So long as the allegations of the Second and Fourth Counts of the Amended Counterclaim demonstrate a "plausible entitlement

to relief" dismissal is inappropriate. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citation omitted) (quoting Twombly, 550 U.S. at 570)). Here, Read cannot meet his heavy burden of showing that the Second and Fourth Counts do not state claims to relief that are plausible on their face, and his motion must be denied.

Federal Rule of Civil Procedure 8(a)(2) governs the adequacy of pleadings and requires only "a short and plain statement of the claim showing that the pleader is entitled to relief". Stating a claim requires only "enough factual matter (taken as true) to suggest" the required element. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d. Cir. 2008) (quoting Twombly, 550 U.S. at 555 n.3.

In considering a motion to dismiss under Fed. R. Civ. P. 12 (b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."'

*Id.* at 231 (*quoting* <u>Pinker v. Roche Holdings Ltd.</u>, 292 <u>F.</u>3d 361, 374 n.7 (3d Cir. 2002)); <u>Hedges v. United States</u>, 404 <u>F.</u>3d 744, 750 (3d Cir. 2005). The moving party "bears the burden of showing that no claim has been presented." <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 <u>F.</u>2d 1406, 1409 (3d Cir. 1991)); <u>Animal Science Products, Inc. v. China Minmetals Corp.</u>, 654 <u>F.</u>3d 462, 469 n. 9 (3d Cir. 2011). This same standard applies to counterclaims. <u>Syncsort Inc. v. Innovative Routines Int'l, Inc.</u>, 2005 U.S. Dist. LEXIS 15432, *3 n.1. (D. N.J. May 6, 2005).

Dismissal is inappropriate so long as the allegations demonstrate a "plausible" right to relief. <u>See</u> <u>Twombly</u>, 550 <u>U.S.</u> 544; <u>Ashcroft v. Iqbal</u>, 129 <u>S.Ct.</u> 1937, 1949 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citation omitted) (*quoting* <u>Twombly</u>, 550 <u>U.S.</u> at 570)).

The "plausibility" standard embraced in <u>Twombly</u> and <u>Iqbal</u> does not require that a complaint "provide 'detailed factual allegations.'" <u>Abdelhamid v. Altria Group, Inc.</u>, 515 <u>F.Supp.</u>2d 384, 391 (S.D.N.Y. 2007) (*quoting* <u>Twombly</u>, 550 <u>U.S.</u> at 555).

Rather, it "must amplify a claim with some factual allegations…to render the claim *plausible*." <u>Id.</u> (emphasis in original); <u>see</u> <u>also</u>, <u>Phillips</u>, 515 F.3d at 234 ("'[S]tating…a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." (citations omitted) (*quoting* <u>Twombly</u>, 550 <u>U.S.</u> at 556)).

In fact, the fundamental function of a federal pleading is "to inform the opposing party and the court of the nature of the claims and defenses being asserted by the pleader and, in the case of an affirmative pleading, the relief being demanded." <u>Slim CD, Inc. v. Heartland Payment Sys, Inc.</u>, 2007 U.S. Dist. LEXIS 62536 (D.N.J. Aug. 24, 2007) (*quoting* 5 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> §1182 (3d ed. 2004)). Federal notice pleading merely requires the pleader to provide an adversary with fair notice of a claim and the grounds on which that claim is based.

Here, the Second and Fourth Counts of the Amended Counterclaim offer far more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" <u>Iqbal</u>, 129 <u>S.Ct.</u> at 1949 (*quoting* <u>Twombly</u>, 550 <u>U.S.</u> at 555). Nor do these Counts of the Amended Counterclaim merely "tender[

] 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). Rather, the Second and Fourth Counts of the Amended Counterclaim do more than provide Read with "fair notice" of each claim as well as the grounds upon which each claim is based. Indeed, the factual allegations supporting these claims, which, on a motion to dismiss, must be accepted as true, render Profeta's claims more than plausible.

When accepting all the factual allegations of the Amended Counterclaim as true, construing the Second and Fourth Counts of the Amended Counterclaim in the light most favorable to Profeta, and consistent with the requirement of Fed. R. Civ. P. 8(e) that pleadings must be construed as to do justice, the Court should determine that under a reasonable reading of the Second and Fourth Counts of the Amended Counterclaim, Profeta may be entitled to relief from Read. Accordingly, Profeta has satisfied the pleading requirements of Fed. R. Civ. P. 8(a)(2) and Read's motion to dismiss should be denied in its entirety.

### POINT II

**THE SECOND COUNT OF THE AMENDED COUNTERCLIAM PLEADS A COGNIZABLE CLAIM OF TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE.**

In order to state a claim for tortuous interference with prospective economic advantage, Defendants must allege: (1) a

-9-

reasonable expectation of economic benefit or advantage; (2) that Read knew of Defendants' expectancy; (3) Read's wrongful and intentional interference; (4) a reasonable probability that but for Read's wrongful interference, Defendants would have realized the economic advantage; and (5) that Defendants were injured as a result of Read's conduct. See Carpet Group, Inc. v. Oriental Rug Importers Ass'n, 256 F.Supp.2d 249, 288 (citing Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739 (1989)).

In order to plead a plausible claim for tortious interference with prospective advantage claim, "[c]ertainty of economic advantage need not be shown; reasonable probability of that advantage absent interference suffices." Zippertubing Co. v. Teleflex Inc., 757 F.2d 1401, 1409 (3d Cir. 1985).

As recognized by the Court in connection with Read's prior motion to dismiss, Defendants "need not identify the specific lost business opportunities in its pleading" to adequately plead claim for tortious interference. See Northern Star Management, Inc. v. The Insurance Professionals, Inc., 2013 U.S. Dist. LEXIS 135286 (D.N.J. Sept. 23, 2013); see also Slim CD, Inc. v. Heartland Payment Sys, Inc., 2007 U.S. Dist. LEXIS 62536 (D.N.J. Aug. 24, 2007) (applying Twombly standard and denying motion to dismiss tortious interference claim for failure to plead specificity). [Document 38, p. 12, n.9].

Specifically, the Court had found that Defendants had failed to provide specific notice of the benefit defendants expected and, but for Read's remarks, would have reaped. [Document 38, p. 12]. This perceived insufficiency has been cured in the Amended Counterclaim, which alleges as follows:

19. Indeed, both prior to and after the issuance of process, Read has maintained and continued to maintain that Profeta "stole" Read's business plan and/or magazine concept and even filed an Amended Complaint essentially asserting those false claims.

20. Towards this end, Read communicated falsely to *Radius'* funding sources, including certain advertisers, that *Radius* is based upon his "stolen" magazine concept, thereby inhibiting *Radius'* ability to raise funds for its continued operations.

21. But for Read's interference, *Radius* had a reasonable probability to obtain funding from such sources, who have since ceased dealing with or elected not to deal with Profeta and/or *Radius*.

\*          \*          \*          \*

30. Read knew or should have known that Profeta has and had a reasonable expectation of economic advantage through the publication of a magazine.

31. By intentionally, willfully and maliciously interfering with Profeta's magazine business and the publication of *Radius*, Read has tortuously interfered with Profeta's prospective economic advantage.

32. Read's conduct was willful, intentional and with malice for the purpose of enriching himself and at the expense of Profeta, and there was a reasonable probability that but for Read's wrongful interference, Profeta would have realized an economic benefit.

33. As a direct and proximate result of Read's tortious interference with Profeta's prospective

-11-

economic advantage, Defendants have suffered and continue to suffer irreparable harm and damages.

[Amended Counterclaim, ¶¶19-21; ¶¶30-33].

Accordingly, the Amended Counterclaim contains sufficient facts to form the basis of a plausible claim for tortious interference with prospective economic advantage, including notice of the benefits (funding and economic benefits arising from issuance of *Radius*, including advertising) that would have been received, "but for" the intentional and malicious conduct of Read.

Simply put, the Second Count of the Amended Counterclaim contains "enough factual matter (taken as true) to suggest" the required elements of tortious interference with prospective economic advantage, see Phillips, 515 F.3d at 234, and, therefore meets the liberal pleading requirements of Fed. R. Civ. P. 8(a), requiring denial of plaintiff's motion to dismiss the Second Count of the Amended Counterclaim.


## POINT III

**THE FOURTH COUNT OF THE AMENDED COUNTERCLAIM SETS FORTH A CONGNIZABLE CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS.**

A prima facie claim for tortious interference with contractual relations requires a showing that: (1) there was an existing contract; (2) Read knew of the contract; (3) Read

-12-

wrongfully interfered with that contract; (4) it is reasonably probable that the loss of the contract was a result of the interference; and (5) damages resulted from the interference. See Florian Greenhouse, Inc. v. Cardinal IG Corp., 11 F.Supp.2d 521 (D.N.J. 1998).

The Amended Counterclaim plainly alleges that Defendants have existing contracts with funding sources and advertisers and that Read's intentional and malicious actions have interfered with its contractual relations with those funding sources and advertisers. Specifically, the Fourth Count of the Amended Counterclaim alleges:

> 20. Towards this end, Read communicated falsely to *Radius'* funding sources, including certain advertisers, that *Radius* is based upon his "stolen" magazine concept, thereby inhibiting *Radius'* ability to raise funds for its continued operations.

> 21. But for Read's interference, *Radius* had a reasonable probability to obtain funding from such sources, who have since ceased dealing with or elected not to deal with Profeta and/or *Radius*.

>        *          *          *          *

> 40. Read knew of or should have known of Defendants' contracts with funding sources and/or advertisers.

> 41. Read engaged in the publication of certain material, derogatory and disparaging remarks as to the quality of Profeta's business and products of a kind calculated and intending to interfere in Profeta's contracts with funding sources and/or advertisers, or to otherwise interfere in Profeta's contractual relations with potential funding sources and/or advertisers.

42. Read's publication constituted communications to third parties that were false and played a material and substantial part in leading others to and/or constituting a proximate cause for others to cease their contractual relations or cease dealings with or not to deal with Profeta.

43. Read's conduct was willful, intentional, knowing and/or reckless motivated by malice, and but for Read's unlawful interference with Profeta's contractual relations, Profeta would have obtained an economic benefit.

44. As a direct and proximate result of Read's tortious interference with Profeta's contractual relations, as set forth above, Profeta has suffered and continues to suffer irreparable harm, and damages.

[Amended Counterclaim, ¶¶10-21; ¶¶40-44].

Accordingly, it is clear in the Amended Counterclaim that Defendants have pleaded existing contractual relationships, have identified the nature of those contractual relationships, and have alleged that Read's intentional and malicious actions have interfered with those contractual relationships, causing damage to the Defendants.  Further specificity or factual detail is not required under the liberal Federal notice pleading requirement. See Fed. R. Civ. P. 8(a); Teva Pharm. Indus. v. Apotex, Inc., 2008 U.S. Dist. LEXIS 60418, 28-29 (D. N.J. Aug. 7, 2008) ("This Court agrees with those recent opinions from this District that conclude that Rule 8(a) does not require a party to identify a specific prospective customer or contract") (citing Slim CD, Inc. v. Heartland Payment Sys., Inc., 2007 U.S. Dist. LEXIS 62536 *4 (D. N.J. Aug. 24, 2007); Syncsort Inc. v. Innovative

Routines Int'l, Inc., 2005 U.S. Dist. LEXIS 15432, at *12 (D. N.J. May 6, 2005)).[2]

In fact, the Court previously had granted Read's motion with regard to this claim because the only contract it had found plead in the prior counterclaim was between Profeta and Read. [Document 38, p. 11]. The Court dismissed the claim because "the rule of tortious interference was not meant to upset the rules governing the contractual relationship itself." Id. This deficiently was cured in the Fourth Count of the Amended Counterclaim in which Defendants clearly have plead existing contractual relationships with funding sources and advertisers.

---

[2] Read's reliance upon Graco, Inc. v. PMC Global, Inc., 2012 U.S. Dist. LEXIS 188865 (D. N.J. February 15, 2012) and Advanced Oral Tech., LLC v. Nutrex Research, Inc., 2011 U.S. Dist. LEXIS 28625 (D. N.J. March 21, 2011), is misplaced. Graco concerns a failure to provide evidence of damages sufficient to survive a motion for summary judgment, not the pleading standard applicable to a motion to dismiss which does not impose a "probability" standard. See Twombly, 550 U.S. at 556. Further, Advanced Oral, recognized this District's trend not to require the names of specific customers but did not permit an amended pleading because the plaintiff failed to allege more than hypothetical lost business. That same deficiency does not exist here, where Defendants have alleged damages as a result of funding and advertising lost due to plaintiff's intentional and malicious conduct.

## POINT IV

**IN THE EVENT THAT ANY ONE OF THE ABOVE
CLAIMS IS FOUND TO BE INSUFFICIENTLY PLEAD,
DEFENDANTS REQUEST LEAVE TO AMEND.**

In the event that this Court were to find that either the Second or Fourth Counts of the Amended Counterclaim has failed to have been plead with the required specificity, the appropriate relief is not a dismissal with prejudice as requested by plaintiff. To the contrary, the Third Circuit has "instructed that if a claim is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips, 515 F.3d at 236 (*citing* Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)).

Thus in the Third Circuit, litigants' whose pleadings fail to adequately state a cause of action are entitled to amend their complaint unless doing so would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc., 482 F.3d 247, 252 (3d Cir. 2007). In Shane v. Fauver, 213 F.3d 113 (3d Cir. 2000), the Third Circuit stated:

> [W]e suggest that district judges expressly state, where appropriate, that the plaintiff has leave to amend within a specified period of time, and that application for dismissal of the action may be made if a timely amendment is not forthcoming within that time.

*Id.* at 116 (*quoting* Borelli v. City of Reading, 532 F.2d 950, 951 n.1 (3d Cir. 1976)).

Thus, should the Court find that either the Second or Fourth Count of the Amended Counterclaim have been insufficiently pled, it should not dismiss them outright or with prejudice, but should grant Defendants leave to amend to more fully set forth the basis of their entitlement to relief.

## CONCLUSION

For all of the foregoing reasons, plaintiff's motion to dismiss the Second and Fourth Counts of the Amended Counterclaim should be denied in its entirety.  Alternatively, to the extent that the Court finds that any of these counts lack the necessary specificity, Defendants respectfully request that he be granted leave to amend to cure the alleged deficiency.

Respectfully submitted,

GREENBAUM, ROWE, SMITH & DAVIS LLP
Attorneys for Defendants


By:  s/ Marc J. Gross
     MARC J. GROSS

Dated:  May 1, 2017

-17-