**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PHILIP READ,** | No. 15-cv-2637 (KM) |
| **Plaintiff,** | |
| **v.** | **OPINION & ORDER** |
| **PAUL PROFETA; PAUL V. PROFETA & ASSOCIATES; RADIUS: BRICK CITY & BEYOND; STEVEN COLEMAN; and WILLIAM KOHN,** | |
| **Defendants.** | |

This matter comes before the court on the motion (ECF no. 46) of the plaintiff, Philip Read, to dismiss Counts 1, 2, and 4 of the Amended Counterclaim ("ACC", ECF no. 41) The motion is granted as to Count 1 and denied as to Counts 2 and 4.

This state-law action arises out of the parties' ill-fated plans to develop a magazine focused on Newark, New Jersey. On April 15, 2016, this Court partly granted the defendants' motion to dismiss the complaint, without prejudice. (ECF nos. 23, 24) Read filed an amended complaint (ECF no. 25), which the defendants answered (ECF no. 30). On behalf of defendants Paul Profeta, Paul V. Profeta and Associates, and Radius: Brick City & Beyond, the Answer asserted a five-Count Counterclaim.[1] By Opinion and Order, I granted Read's motion to dismiss Counts 1, 2, and 4 of that Counterclaim, without prejudice. (ECF nos. 38, 39)

---

[1]     For simplicity, the defendants/counterclaim plaintiffs will be referred to collectively as "Profeta." Defendant Paul Profeta, the individual, will be referred to as "Mr. Profeta." Paul V. Profeta and Associates will be referred to as "Associates." Radius: Brick City & Beyond will be referred to as Radius.

Profeta responded by filing an Amended Counterclaim (ECF no. 41), intended to remedy the deficiencies that led to the dismissal of Counts 1, 2, and 4. Read now moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Counts 1, 2, and 4 of the Amended Counterclaim for failure to state a claim. (ECF no. 46) Profeta has filed an opposition (ECF no. 49), and Read a response (ECF no. 50). The matter is thus fully briefed and ripe for decision.

I have summarized the background of this matter in two prior opinions (ECF nos. 23, 38) Because I write for the parties, familiarity is assumed.

## Legal Standard

Mr. Read has moved to dismiss three Counts of the Amended Counterclaim for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) provides for the dismissal of a counterclaim, in whole or in part, if it fails to state a claim upon which relief can be granted. The plaintiff, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the pleading are accepted as true and all reasonable inferences are drawn in favor of the party asserting the claim. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a pleading contain detailed factual allegations. Nevertheless, "a [pleading party's] obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a counterclaim's factual allegations must be sufficient to raise a defendant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the [party] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

2

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).
While "[t]he plausibility standard is not akin to a 'probability requirement' . . .
it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

**Analysis**

      1. The Amended Counterclaim

The facts section of the Amended Counterclaim alleges as follows:

Read and Profeta explored the launching of the "Downtowner," a
magazine focused on the Military Park, Halsey, and Broad Street
neighborhoods. (ACC ¶¶6, 7) By January 2013, Profeta communicated to Read
that he did not think the business model was feasible; he proposed a freelance
model, but Read balked, saying that he and perhaps others needed to be on
salary. The two went their separate ways. (ACC ¶¶ 8–11)

In the fall of 2013, Profeta launched *Radius*. It embodied Profeta's
rejected "freelance" approach, did not focus primarily on the downtown
neighborhoods, and was circulated to a more suburban audience. (ACC ¶¶ 12–
14)

Read has communicated falsehoods to third parties in an effort to injure
the business of *Radius* and make room in the market for his own *Downtowner*
magazine concept. (ACC ¶17) More specifically, Read has contacted *Radius*'s
funding sources, including current and prospective advertisers. He has told
them that Profeta "stole" his business plan and concept, inhibiting *Radius*'s
ability to raise operating funds. (ACC ¶ 20) But for Read's interference, *Radius*
had a reasonable probability of raising funds from those sources, who now
have ceased dealing with, or opted not to deal with, Profeta and *Radius*. (ACC ¶
21) *Radius,* although well received, has not been a commercial success. (ACC ¶
15)

As before, the Counterclaim contains five counts. They are now clearly
labeled as Count 1 (abuse of process); Count 2 (tortious interference with
prospective economic advantage); Count 3 (defamation and slander); Count 4
(tortious interference with contractual relations); and Count 5 (false light). At
issue on this motion are Counts 1, 2, and 4.

1. Malicious abuse of process (Count 1)

Profeta's brief in response to the motion to dismiss states that "Defendants do not oppose that portion of plaintiff's motion seeking to dismiss the First Count of the Amended Counterclaim asserting a cause of action for abuse of process." (ECF no. 49, Def. Brf. 1 n.1) The concession is apt; as to Count 1, the Amended Counterclaim does not appreciably differ from its predecessor. The motion to dismiss Count 1 of the Amended Counterclaim is therefore granted on consent, this time with prejudice.[2]

2. Tortious interference with prospective economic advantage and with contractual relations (Counts 2 and 4)

Under New Jersey law, a claimant alleging tortious interference with contractual relations must allege, in addition to an existing contract: "(1) that plaintiff had a reasonable expectation of an economic benefit or advantage; (2) that defendant knew of plaintiff's expectancy; (3) that defendant wrongfully and intentionally interfered with this expectancy; (4) a reasonable probability that but for defendant's wrongful interference, plaintiff would have realized the economic benefit; and (5) that plaintiff was injured as a result of defendant's conduct." *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n, Inc.*, 256 F.Supp.2d 249, 288 (D.N.J. 2003) (citing *Printing Mart–Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 563 A.2d 31 (1989), and *Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 186 (3d Cir. 1992)); *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n, Inc.*, 256 F. Supp. 2d 249, 288 (D.N.J. 2003). Where the claimant alleges tortious interference with *prospective* economic relations, the requirements are identical except that the claimant must demonstrate a "reasonable probability" of a prospective, rather than actual, economic or contractual relation. *See Alvord–Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1015 (3d Cir. 1994).

---

[2]    The facts section of the Amended Complaint alleges that "[b]oth prior to and after the issuance of process," Read has circulated his falsehoods, and has "even filed an Amended Complaint essentially asserting those false claims." (ACC ¶ 19) It is unclear whether this allegation is intended to relate solely to the now-dismissed malicious prosecution claim.

4

I dismissed Counts 2 and 4 of the original Counterclaim because they recited something like the legal elements of a claim, but did not contain the necessary factual allegations. The only contract specifically identified was the actual or potential contract between Read and Profeta themselves. As I pointed out, however, "the rule of tortious interference was not meant to upset the rules governing the contractual relationship itself. Where a person interferes with the performance of his or her own contract, the liability is governed by principles of contract law." *Printing Mart-Morristown*, 116 N.J. at 753, 563 A.2d at 38. As to other actual or potential contractual relations, the original Counterclaim alleged only that Read had made statements intending to prevent unidentified "others" from dealing or conducting unidentified business with Profeta and *Radius*. This I found inadequate. The Counterclaim did not allege, even generally, the nature of the expected economic benefit that Profeta expected, or the contracts or dealings that Read allegedly interfered with.

The question, then, is whether the Amended Counterclaim has remedied the deficiencies in Counts 2 and 4 that were identified in my earlier Opinion. I think it has.

The claims no longer rely on contracts between the parties themselves, *i.e.*, Profeta and Read. As pointed out above, such a claim between contractual parties is insufficient as a matter of law.

What is being alleged here is a whispering campaign involving third parties. Profeta may not be in a position to identify specific conversations between Read and advertisers or funding sources. The allegation is not implausible, however. The whole point of the Complaint is that these two magazines would compete for the same resources. It is natural that Read would be speaking to the same funding sources as Profeta within the relatively small Newark business community. Moreover, Read is anything but reticent about attributing misconduct to Profeta in connection with their dealings. The Amended Counterclaim states specifically—or specifically enough—that both existing advertising contracts and prospective contracts and funding are involved.

5

At this, the early, Rule 12(b)(6) stage, this district's case law has trended toward not requiring strictly that a plaintiff "identify specific lost business opportunities in its pleading for tortious interference." *See N. Star Mgmt., Inc. v. Ins. Professionals, Inc.*, No. 12-CV-3839 JAP, 2013 WL 5334412, at *4 (D.N.J. Sept. 23, 2013)); *Teva Pharm. Indus., Ltd. v. Apotex, Inc.*, No. CIV.07-5514 GEB JJH, 2008 WL 3413862, at *9 (D.N.J. Aug. 8, 2008) ("This Court agrees with those recent opinions from this District that conclude that Rule 8(a) does not require a party to identify a specific prospective customer or contract."); *Slim CD, Inc. v. Heartland Payment Sys., Inc.*, No. CIV. A. 06-2256, 2007 WL 2459349, at *3 (D.N.J. Aug. 24, 2007). The Amended Counterclaim, unlike its predecessor, alleges at least the substance of the falsehoods (that the idea for *Radius* was "stolen") and the nature of the economic advantage that Profeta enjoyed or expected (advertising and funding).

As pled, these claims are thin. Unless discovery reveals particulars, as well as specific evidence of economic loss, they may not withstand summary judgment. But for now, they are sufficient to go forward to the discovery phase.


### ORDER

Accordingly, IT IS this 31st day of July, 2017

ORDERED that the plaintiff's motion (ECF no. 46) to dismiss Counts 1, 2, and 4 of the Amended Counterclaim is GRANTED IN PART AND DENIED IN PART, as follows:

1.     The motion is granted on consent as to Count 1 of the Amended Counterclaim, which is dismissed with prejudice.

2.     The motion is denied as to Counts 2 and 4 of the Amended Counterclaim.

KEVIN MCNULTY
United States District Judge